UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x
ROBERT L. GARBER, Derivatively on Behalf :
of LEHMAN BROTHERS HOLDINGS INC., :
                                      :
            Plaintiff,                :
                                      :
      vs.                             :
                                      :
RICHARD S. FULD, JR., et al.,         :
                                      :
            Defendants,               :
                                      :
      – and –                         :
                                      :
LEHMAN BROTHERS HOLDINGS INC.,        :
                                      :
            Nominal Defendant.        :
————————————————————— x

Civil Action No. 07-CV-2990 (DAB)

MEMORANDUM IN SUPPORT OF THE
MOTION OF LOCALS 302 AND 612 OF
THE INTERNATIONAL UNION OF
OPERATING ENGINEERS-EMPLOYERS
CONSTRUCTION INDUSTRY
RETIREMENT TRUST FOR
CONSOLIDATION, APPOINTMENT AS
LEAD PLAINTIFF AND FOR APPROVAL
OF SELECTION OF LEAD COUNSEL

[Caption continued on following page.]

---------------------------------------------- x

DORIS STAEHR, Derivatively on Behalf of   :    Civil Action No. 07-CV-3562 (DAB)
LEHMAN BROTHERS HOLDINGS INC.,

                : 

               Plaintiff,    : 

                : 

       vs.    : 

                : 

RICHARD S. FULD, JR., et al.,    : 

                : 

             Defendants,    : 

                : 

       – and –    : 

                : 

LEHMAN BROTHERS HOLDINGS INC., a    : 
Delaware corporation,

                : 

           Nominal Defendant.    : 

----------------------------------------------

LOCALS 302 & 612 OF THE    :    Civil Action No. 07-CV-3950 (DAB)
INTERNATIONAL UNION OF OPERATING
ENGINEERS-EMPLOYERS    : 
CONSTRUCTION INDUSTRY    : 
RETIREMENT TRUST, Derivatively on Behalf    : 
of LEHMAN BROTHERS HOLDINGS INC.,    : 

                : 

               Plaintiff,    : 

                : 

       vs.    : 

                : 

RICHARD S. FULD, JR., et al.,    : 

                : 

             Defendants,    : 

                : 

       – and –    : 

                : 

LEHMAN BROTHERS HOLDINGS INC., a    : 
Delaware corporation,

                : 

           Nominal Defendant.    : 

                : 

---------------------------------------------- x

# TABLE OF CONTENTS

**Page**

I.     PROCEDURAL HISTORY ........................................................................1

II.    FACTUAL BACKGROUND .................................................................1

III.   ARGUMENT ........................................................................................5

      A.    Consolidation of the Lehman Shareholder Actions Is Proper Under Rule 42(a) ...............................................................................................5

      B.    The Retirement Trust Is the Most Adequate Lead Plaintiff ...................6

      C.    The Retirement Trust Is a Sophisticated Institutional Investor with a Large Financial Interest in This Shareholder Derivative Action.....................7

      D.    Lerach Coughlin is Uniquely Qualified to Serve as Lead Counsel ........9

IV.   CONCLUSION ...................................................................................13

# TABLE OF AUTHORITIES

Page

## CASES

*Barry v. Cotsakos, et al.*
("*E*Trade Group, Inc. Derivative Action*"), No. CIV419804
(Cal. Super. Ct. 2001) .................................................................................................... 12

*Biondi v. Scrushy*,
820 A.2d 1148 (Del. Ch. 2003) ........................................................................................ 8

*Central Laborers' Pension Fund v. Chellgren, et al.*,
No. 02-CI-02714 (Kenton. Cir. Ct. Ky. 2004) ............................................................. 11

*Cohen v. Beneficial Indus. Loan Corp.*,
337 U.S. 541 (1949) ......................................................................................................... 6

*Dollens v. Zionts*,
No. 01 C5931, 2001 U.S. Dist. LEXIS 19966
(N.D. Ill. Dec. 4, 2001) ............................................................................................... 7, 9

*Fields v. Wolfson*,
41 F.R.D. 329 (S.D.N.Y. 1967) ....................................................................................... 5

*Goldberger v. PXRE Group, Ltd.*,
Case No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925
(S.D.N.Y. March 30, 2007) .............................................................................................. 5

*Horn v. Raines*,
227 F.R.D. 1 (D.D.C. 2005) .......................................................................................... 6, 7

*In re Cardinal Health, Inc. Sec. Litig.*,
226 F.R.D. 298 (S.D. Ohio. 2005) ................................................................................ 10

*In re Conseco, Inc. Sec. Litig.*,
120 F. Supp. 2d 729 (S.D. Ind. 2000) .......................................................................... 7, 8

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) ............................................................................. 10, 11

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
MDL-1446, 2006 U.S. Dist. LEXIS 43146
(S.D. Tex. June 5, 2006) ................................................................................................ 10

**Page**

*In re Guidant Corp. S'holders Deriv. Litig.*,
    No. 1:03-CV-00955-SEB-WTL, 2003 U.S. Dist. LEXIS 19880
    (S.D. Ind. Nov. 5, 2003) ...................................................................................7

*In re Storage Tech. Corp. Sec. Litig.*,
    No. 92-B-750 (D. Colo.)..................................................................................11

*In re Versata, Inc.*,
    No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270
    (N.D. Cal. Aug. 20, 2001)..............................................................................10

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ..........................................................................................5

*Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*,
    No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712
    (D.N.J. Nov. 16, 2000) ...................................................................................10

*MacAlister v. Guterma*,
    263 F.2d 65 (2d Cir. 1958).................................................................................6

*Pirelli Armstrong v. Hanover Compressor*,
    No. 4:02-cv-00410 (S.D. Tex. 2007)...............................................................12

*Schriver v. Impac Mortg. Holdings, Inc.*,
    No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607
    (C.D. Cal. May 2, 2006) .............................................................................6, 10

*TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*,
    No. 18336, 2000 Del. Ch. LEXIS 147
    (Del. Ch. Oct. 17, 2000)...............................................................................8, 9


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(3)(B) .................................................................................................7

Federal Rules of Civil Procedure
    Rule 42(a)......................................................................................................5, 6

Institutional Investor Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust (the "Retirement Trust" or "Plaintiff") hereby respectfully requests that this Court consolidate the Actions, appoint it as Lead Plaintiff and approve its selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as Lead Counsel for the class.

## I.    PROCEDURAL HISTORY

On April 13, 2007, Plaintiff Robert L. Garber ("Garber") filed his verified shareholder derivative complaint entitled *Garber ex rel. Lehman Brothers Holdings, Inc. v. Fuld, et. al.,* Civil Action No. 07-cv-02990 (DAB). Two additional derivative complaints were filed against certain officers and/or directors of Lehman Brothers Holdings, Inc. ("Lehman" or the "Company"): (i) *Staehr ex rel. Lehman Brothers Holdings, Inc. v. Fuld, et. al.,* Civil Action No. 07-cv-03562 (DAB); and (ii) *Locals 302 & 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust ex rel. Lehman Brothers Holdings, Inc. v. Fuld, et. al.,* Civil Action No. 07-cv-03950 (DAB) (the "*Retirement Trust* Action").

All three of the actions involve allegations of stock option backdating by certain top officers of the Company. These actions allege that this backdating caused Lehman to issue materially false and misleading financial statements in violation of federal securities laws. Additionally, each of the complaints alleges that the defendants breached their fiduciary duties owed to the Company and its shareholders. By Order dated July 10, 2007, the Court granted Plaintiffs the Retirement Trust and Garber's request to move for consolidation and for appointment as Lead Counsel.

## II.    FACTUAL BACKGROUND

Lehman is primarily engaged in providing financial services. The Company provides an array of equity and fixed income sales, trading and research, investment banking services, and investment

management and advisory services, serving the financial needs of corporations, governments and municipalities, institutional clients and high-net-worth individuals worldwide.

The Retirement Trust's shareholder derivative action is brought on behalf of Lehman against its directors and certain senior executives for breach of fiduciary duty and violations of federal securities law and state corporation law.  Specifically, during every December from 1997-2001, defendants granted stock options to certain officers and directors at or near the low point of Lehman stock's trading value for the month. ¶50.[1]  To date, the members of Lehman's Board of Directors refuse to take any remedial actions against their fellow board members and business allies responsible for the improper reporting of the Company's stock-based compensation since 1997.

"Backdating" is a practice by which a stock option is publicly reported as having been granted on a certain date, but is actually granted weeks or months later when the stock was trading at a higher price.  Such backdating allows company executives and stock option grantees to realize immediate unearned and undisclosed financial gains at the expense of the company's shareholders. Lynn Turner, the former Chief Accountant for the Securities and Exchange Commission ("SEC"), described backdating as follows:  "It's like allowing people to place bets on a horse race after the horses have crossed the finish line. . . ."  Rudman Decl.[2] Ex. A.  Arthur Levitt, former Chairman of the SEC, said that backdating "represents the ultimate in *greed*. It is *stealing*, in effect. It is ripping off shareholders in an ***unconscionable*** way."  Rudman Decl. Ex. B.[3]  To be certain, option

---

[1]    References to "¶___" are to the Complaint filed in the *Retirement Trust* Action.

[2]    References to "Rudman Decl." are to the Declaration of Samuel H. Rudman in Support of the Motion of Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel dated August 1, 2007.

[3]    All emphasis is added and citations and quotations are omitted unless otherwise noted.

backdating violates both the federal securities laws and state corporate fiduciary laws. Former SEC

Chairman Harvey Pitt has opined:

> Options backdating calls a company's internal controls into question. Many discussions of backdating options start with the observation that backdating is not, per se, illegal. *That is wrong.* Options backdating frequently involves falsification of records used to gain access to corporate assets. That conduct violates the Foreign Corrupt Practices Act and its internal controls requirements. If corporate directors were complicit in these efforts, state law fiduciary obligations are violated. *Backdating is not only illegal and unethical, it points to a lack of integrity in a company's internal controls.*

Rudman Decl. Ex. C.

Defendants' backdating scheme not only surreptitiously and illegally lined their own pockets

and caused the Company to issue false financial statements, but it undermined the key purpose of

option based executive compensation, which is to provide an incentive to improve the Company's

performance and increase the Company's stock price. By backdating options such that they carry a

strike price lower than the trading price of the stock at the time of option issuance, executives profit

immediately upon the award of the option without doing anything to improve the Company's

business or financial condition – a situation which President Bush has declared as "bad for

America":

> [O]vercompensating or trying to backdate things is bad for America, and there ought to be consequences when people don't tell the truth and are not transparent.

Rudman Decl. Ex. D.

The Complaint further alleges that the illegal backdating caused the Company to materially

understate publicly reported compensation expenses in violation of Generally Accepted Accounting

Principles ("GAAP"), thereby artificially inflating Lehman's publicly reported financial results. ¶58.

The publication of Lehman's false financial statements also caused the Company's stock to trade at

artificially inflated prices.

While the price of the Company's stock was artificially inflated and its financials materially misstated, Lehman's officers and directors engaged in insider trading, selling more than **$777 million** worth of Lehman stock in violation of the federal securities and state fiduciary laws. ¶¶3, 6, 59. The Complaint illustrates the suspect timing of the option grants:

- Defendants dated many of their 1997 stock option grants as of December 11, 1997 at $12.14 per share – ***nearly the low of the month***. In December 1997, the stock traded between $11.94 per share and $13.30 per share with an average trading price of $12.57 per share.

- Defendants dated many of their 1998 stock option grants as of December 14, 1998 at $10.22 per share – ***the low of the month***. In December 1998, the stock traded between $10.22 per share and $12.19 per share with an average trading price of $11.18 per share.

- Defendants dated many of their 1999 stock option grants as of December 1, 1999 at $19.22 per share – ***the low of the month***. In December 1999, the stock traded between $19.22 per share and $21.25 per share with an average trading price of $20.36 per share.

- Defendants dated many of their 2000 stock option grants as of December 1, 2000 at $25.56 per share – ***the low of the month***. In December 2000, the stock traded between $25.56 per share and $35.22 per share with an average trading price of $31.33 per share.

- Defendants dated many of their 2001 stock option grants as of December 3, 2001 at $31.70 per share – ***the low of the month***. In December 2001, the stock traded between $31.70 per share and $34.76 per share with an average trading price of $33.06 per share.

¶50.

Here, the Retirement Trust is a significant shareholder of Lehman, holding 36,490 shares of the Company's stock. The Retirement Trust seeks a leadership structure that will place a significant Lehman shareholder in charge of the litigation. By placing control of this case with an experienced, sophisticated institutional plaintiff, absent shareholders can be assured that Lehman's interests will be protected by the zealous prosecution of this case on behalf of the Company. No other institutional plaintiff has filed suit on behalf of Lehman against its errant fiduciaries.

- 4 -

## III.    ARGUMENT

### A.    Consolidation of the Lehman Shareholder Actions Is Proper Under Rule 42(a)

Pursuant to Fed. R. Civ. P. 42(a), the Retirement Trust seeks an order consolidating the above-referenced actions, and ordering that any other actions filed in or transferred to this Court which arise out of or relate to the same facts as alleged in the above-referenced actions should be consolidated for all purposes.

Each of the Lehman shareholder actions currently pending in this District (the "Related Actions") seeks to remedy defendants' breaches of their fiduciary duties and alleges that defendants have been unjustly enriched as a result of the Company's stock option granting practices.  The Related Actions thus involve common questions of law and fact.  The power to consolidate related actions falls within the broad inherent authority of every court "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  Rule 42(a) provides that:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a); *Goldberger v. PXRE Group, Ltd.*, Case No. 06-CV-3410 (KMK), 2007 U.S. Dist. LEXIS 23925, at *5 (S.D.N.Y. March 30, 2007).  "'In determining the propriety of consolidation, district courts have broad discretion, and generally favor the view that considerations of judicial economy favor consolidation.'" *Id.*  Under these circumstances, consolidation is not only proper, but it is also necessary to avoid prejudice to the parties.  *See Fields v. Wolfson*, 41 F.R.D. 329, 330 (S.D.N.Y. 1967) ("serious prejudice could result to the parties from a failure to consolidate").

The Second Circuit has held that derivative actions are particularly amenable to consolidation to avoid imposing duplicative defense costs on the corporation on whose behalf the action is brought. *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958). "[W]hen consolidation is appropriate, the Court has the discretion to order the consolidation of subsequently-filed or transferred cases that allege similar facts as those alleged in the current shareholder derivative suits." *Horn v. Raines*, 227 F.R.D. 1, 2 (D.D.C. 2005) (ordering consolidation of all related derivative actions); *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 U.S. Dist. LEXIS 40607, at *6 (C.D. Cal. May 2, 2006).

Accordingly, the Retirement Trust respectfully submits that the Related Actions should be consolidated for all purposes under Rule 42(a).

**B.    The Retirement Trust Is the Most Adequate Lead Plaintiff**

In the seminal shareholder derivative litigation case *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), the United States Supreme Court concluded that a plaintiff who leads a shareholder derivative suit occupies a position "of a fiduciary character." *Id*. at 549. As the Supreme Court explained, "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon his diligence, wisdom and integrity." *Id*. As a result, courts are frequently guided in their selection of the lead plaintiff by consideration of which proposed lead plaintiff is most capable of diligently and responsibly discharging his fiduciary obligations. The Retirement Trust believes that as a sophisticated institutional investor experienced in shareholder litigation with an ownership interest in Lehman that dwarfs those of the other proposed lead plaintiffs, it is the most appropriate – and most capable – Lead Plaintiff.

C.     **The Retirement Trust Is a Sophisticated Institutional Investor with a Large Financial Interest in This Shareholder Derivative Action**

Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA") over a decade ago. In enacting the PSLRA, Congress emphasized its desire to have shareholder litigations directed by institutional investors for the benefit of shareholders, not entrepreneurial plaintiffs' lawyers. The process for determining the most appropriate lead plaintiff in securities class actions is now well-established in federal courts. In securities lawsuits, the appointment of the lead plaintiff – and the proper criteria for the court to consider in making the appointment – is statutorily directed. *See* S. Rep. No. 104-98, at 10-11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689-90. As part of that direction, Congress stated an express preference for institutional investors with a substantial financial interest in the outcome of the litigation and the resources and sophistication required to manage and supervise counsel. *See* 15 U.S.C. §78u-4(a)(3)(B); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors . . . will ultimately benefit shareholders and assist courts by improving the quality of representation . . . .").

State and federal courts across the country regularly apply these principles by Congress to shareholder derivative litigations. *See, e.g.*, *In re Guidant Corp. S'holders Deriv. Litig.*, No. 1:03-CV-00955-SEB-WTL, 2003 U.S. Dist. LEXIS 19880, at *3-*4 (S.D. Ind. Nov. 5, 2003); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729 (S.D. Ind. 2000); *Dollens v. Zionts*, No. 01 C5931, 2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001); *Horn*, 227 F.R.D. 1. For instance, in *Guidant*, where the court appointed an institutional investor, an Alaska pension fund, as the sole lead derivative plaintiff, Judge Sarah Evans Barker observed that "[p]ersuasive authority counsels in favor of naming a large, institutional investor such as Alaska lead plaintiff." *Guidant*, 2003 U.S. Dist. LEXIS 19880, at *3-*4. Likewise, in the *Conseco* derivative action, the court noted, before

applying the PSLRA lead plaintiff standards to a pending derivative action, that Congress hoped in enacting the PSLRA that "'institutional investors, who tend to have by far the largest financial stakes in [the] litigation, would step forward to represent [shareholders] and exercise effective management and supervision of the . . . lawyers.'" *Conseco*, 120 F. Supp. 2d at 732.

Following Congress' logic that shareholder litigation should be controlled by sophisticated plaintiffs with a significant financial interest in the litigation, Delaware courts – which are perhaps most familiar with shareholder actions for breach of fiduciary duty – have consistently held that the decision of which plaintiff should control the litigation should be analyzed via objective factors that are most likely to demonstrate which plaintiff will serve the best interests of the corporation and shareholder base as a whole. *See TCW Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, No. 18336, 2000 Del. Ch. LEXIS 147, at *10 (Del. Ch. Oct. 17, 2000); *see also Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003). Importantly, "[t]he mere fact that a lawyer filed first for a representative client is scant evidence of his adequacy and may, in fact, support the contrary inference." *Biondi*, 820 A.2d at 1159.

The following are among the objective criteria that the courts look to in determining who should control shareholder litigation involving Delaware corporations like Lehman:

- "First, this Court should consider the quality of the pleading that appears best able to represent the interests of the shareholder class . . . ."

- "Second, the Court should give weight to the shareholder plaintiff that has the greatest economic stake in the outcome of the lawsuit."[4]

---

[4]   "This factor, of course, is similar to the federal system that now uses a model whereby the class member with the largest economic interest in the action is given responsibility to control the litigation. . . . [I]t seems appropriate, at least, to give recognition to large shareholders or significant institutional investors who are willing to litigate vigorously on behalf of an entire class of shareholders, provided no economic or other conflicts exist between the institutional shareholder and smaller, more typical shareholders." *TCW*, 2000 Del. Ch. LEXIS 147, at *10.

- "Finally, the Court should accord some weight in the analysis to whether a particular litigant has prosecuted its lawsuit with greater energy, enthusiasm or vigor than have other similarly situated litigants."

*TCW*, 2000 Del. Ch. LEXIS 147, at *10-*11; *Dollens*, 2001 U.S. Dist. LEXIS 19966, at *18 (adopting both the PSLRA and the *TCW* factors to determine lead plaintiff in a derivative action).

Here, each of the *TCW* factors strongly favor the appointment of the Retirement Trust as Lead Plaintiff to oversee this important litigation. The Retirement Trust did not race to the courthouse to file a case against Lehman's officers and directors upon the mere announcement of a potential backdating scandal. Instead, the Retirement Trust directed counsel to undertake a detailed investigation and analysis of all the facts surrounding defendants' misconduct before filing a lawsuit. The quality of the investigation is reflected in the quality of the pleadings. The Retirement Trust's Complaint, which is 50 pages in length, consists of 128 paragraphs, and alleges 10 separate counts of violations. *See generally* the Retirement Trust's Complaint. As noted above, the Retirement Trust also has far and away the greatest financial interest in this litigation. The Retirement Trust's active pursuit of this litigation demonstrates its desire to earnestly pursue shareholder litigation to achieve the best possible result for aggrieved shareholders. Accordingly, the Retirement Trust should be appointed Lead Plaintiff to represent Lehman's interest in this case.

### D.    Lerach Coughlin is Uniquely Qualified to Serve as Lead Counsel

The Retirement Trust has selected Lerach Coughlin to serve as its counsel and Lead Counsel on behalf of Lehman shareholders because of its unique qualifications and resources to pursue recovery on behalf of Lehman shareholders. Lerach Coughlin is a national law firm with over 180 lawyers. Moreover, Lerach Coughlin and its shareholder derivative litigation department possess

extensive experience litigating complex shareholder actions.[5] Over the past several years, they have recovered hundreds of millions of dollars for corporations and shareholders and obtained ground-breaking corporate governance reforms.

Lerach Coughlin has earned a reputation for aggressively and skillfully pursuing recoveries and corporate reform on behalf of shareholders. Many federal courts have noted the depth of Lerach Coughlin's resources and the firm's ability to benefit plaintiffs in similar representative shareholder actions. *See, e.g.*, *In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, MDL-1446, 2006 U.S. Dist. LEXIS 43146, at *77 (S.D. Tex. June 5, 2006) (Lerach Coughlin is "comprised of probably the most prominent securities class action attorneys in the country"); *Schriver*, 2006 U.S. Dist. LEXIS 40607, at *36 ("Lerach Coughlin has extensive experience litigating [shareholder] actions . . . [and that] [t]here is no real dispute among the movants regarding Lerach Coughlin's qualifications to prosecute this action"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio. 2005) (finding that Lerach Coughlin "will represent deftly the class's interests").[6]

When faced with multiple lead plaintiff motions in the largest, most complex shareholder action in United States history, U.S. District Judge Melinda Harmon of the Southern District of Texas appointed Lerach Coughlin as sole lead counsel to coordinate the efforts of other counsel and direct the prosecution of the *Enron* case, concluding:

---

[5]    *See* Rudman Decl. Ex. E (Lerach Coughlin's firm resume) and the firm's website available at http://www.lerachlaw.com.

[6]    *See also In re Versata, Inc.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *25 (N.D. Cal. Aug. 20, 2001) (Lerach Coughlin chosen based on its strong national reputation in handling large and complex securities class actions); *Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *16 (D.N.J. Nov. 16, 2000) ("This firm has experience in prosecuting complex securities actions, has been appointed lead counsel in numerous consolidated litigations, and is qualified to represent the Local 144 Group in the instant action.").

> [T]he Court has found that the submissions of [Lerach Coughlin] stand out in the breadth and depth of its research and insight. . . .

> [T]he Court has reviewed in careful detail the submissions of [Lerach Coughlin] regarding its competency to serve as Lead Counsel and finds it fully capable of representing Lead Plaintiff and the class. . . .

*In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002). In June 2006, after more than four years of hard-fought litigation resulting in partial settlements of more than $7 billion, Judge Harmon's high regard for Lerach Coughlin attorneys has not changed: Lerach Coughlin "is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate." *Enron*, 2006 U.S. Dist. LEXIS 43146, at *77.

In addition to its experience and resources to pursue and litigate shareholder actions, Lerach Coughlin has recovered substantial money damages and achieved corporate governance reforms in shareholder representative actions. For example, Lerach Coughlin was responsible for recovering $55 million in *In re Storage Tech. Corp. Sec. Litig.*, No. 92-B-750 (D. Colo.). The firm also prosecuted a shareholder derivative action on behalf of Sprint Corporation which resulted in governance changes that were heralded by Robert Monks, the founder of LENS Governance Advisors: "There has never been an occasion in American corporate history when a company has agreed to so many groundbreaking corporate governance reforms in one fell swoop." *See Sprint Settlement Includes Groundbreaking Changes for Independent Directors*, 19 Andrews Corp. Officers & Directors Liab. Litig. Rep. 7 (Apr. 7, 2003). Rudman Decl. Ex. F.

Similarly, Lerach Coughlin achieved significant corporate governance reforms in the *Ashland* shareholder derivative litigation, *Central Laborers' Pension Fund v. Chellgren, et al.*, No. 02-CI-02714 (Kenton. Cir. Ct. Ky. 2004), including the establishment of enhanced director independence standards, the imposition of both minimum director stock ownership requirements and a minimum

- 11 -

stock option holding period, and the appointment of a shareholder nominated director. *See generally* Bruce Schreiner, *Ashland Agrees to Corporate Governance Changes to Settle Shareholder Lawsuit*, Associated Press, Jan. 28, 2005 (noting the extensive corporate governance reforms achieved in the shareholder action that placed Ashland Inc. "at the forefront of corporate governance"). Rudman Decl. Ex. G.

Likewise, Lerach Coughlin successfully prosecuted *Barry v. Cotsakos, et al.* ("*E\*Trade Group, Inc. Derivative Action*"), No. CIV419804 (Cal. Super. Ct. 2001), a shareholder derivative action which resulted in groundbreaking corporate governance changes at E\*Trade, including an $800,000 reduction in the Chief Executive Officer's ("CEO") base salary and the return to E\*Trade of $6 million in cash and 2 million shares of E\*Trade stock previously granted to the CEO, as well as the appointment of a new outside director to serve as the Chair of E\*Trade's executive compensation committee. Rudman Decl. Ex. H.

Lerach Coughlin was also recently able to restructure a board of directors and obtain pervasive corporate governance changes as part of a resolution of the *Pirelli Armstrong v. Hanover Compressor*, No. 4:02-cv-00410 (S.D. Tex. 2007), shareholder litigation that was hailed as "a model for corporate reform in the post-Enron era." Rudman Decl. Ex. I. Corporate governance groups lauded the settlement, which granted shareholders with more than 1% of company stock the right to nominate two independent directors to the company's slate of candidates, among other reforms, as "groundbreaking" and stated that the settlement "goes to the heart of corporate power." *Id.* In sum, there is simply no question that Lerach Coughlin attorneys have an unparalleled record of success in the achievement of significant, meaningful results in shareholder derivative actions.

Accordingly, Lerach Coughlin has the resources and experience to lead this action toward recovery and governance measures for the Company and its shareholders.

## IV. CONCLUSION

For the foregoing reasons, the Retirement Trust respectfully requests that the Court (i) consolidate the Actions; (ii) appoint it as Lead Plaintiff; (iii) approve its selection of Lerach Coughlin as Lead Counsel; and (iv) grant such order and further relief as the Court may deem just and proper.

DATED:  August 1, 2007                    LERACH COUGHLIN STOIA GELLER
                                                                RUDMAN & ROBBINS LLP


                                                                _____/s/ *Samuel H. Rudman*_____
                                                                          SAMUEL H. RUDMAN

                                                                SAMUEL H. RUDMAN (SR-7957)
                                                                DAVID A. ROSENFELD (DR-7564)
                                                                MARIO ALBA JR. (MA-7240)
                                                                58 South Service Road, Suite 200
                                                                Melville, NY  11747
                                                                Telephone:  631/367-7100
                                                                631/367-1173 (fax)

                                                                *[Proposed] Lead Counsel for Plaintiffs*

- 13 -

## CERTIFICATE OF SERVICE

I, Samuel H. Rudman, hereby certify that on August 1, 2007, I caused a true and correct copy of the attached:

Notice Of Motion For Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel;

Memorandum In Support Of The Motion Of Locals 302 And 612 Of The International Union Of Operating Engineers-Employers Construction Industry Retirement Trust For  Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel; and

Declaration of Samuel H. Rudman in Support of the Motion of Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Trust for Consolidation, Appointment as Lead Plaintiff and for Approval of Selection of Lead Counsel.

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to all additional counsel on the attached service list.

*/s/ Samuel H. Rudman*
Samuel H. Rudman

LEHMAN BROTHERS HOLDINGS SERVICE LIST

Geoffrey M. Johnson, Esq.
Scott & Scott, LLP
33 River Street
Chagrin Falls, OH  44022
Telephone:  440/247-8200
440/247-8275 (fax)

Beth Ann Kaswan, Esq.
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
49th Floor
New York, New York  10119
Telephone:  212/594-5300
212/868-1229 (fax)

David R. Scott, Esq.
Scott & Scott, LLC
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone:  860/537-5537
860/537-4432 (fax)

Arshan Amiri, Esq.
Robbins Umeda & Fink, LLP
610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3990 (fax)

Felipe J. Arroyo, Esq.
Jeffrey P. Fink, Esq.
Brian James Robbins, Esq.
Robbins Umeda & Fink, LLP
610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone:  619/525-3990
619/525-3991 (fax)

Thomas G. Amon, Esq.
Law Offices of Thomas G. Amon
500 Fifth Avenue, Suite 1650
New York, NY  10110
Telephone:  212/810-2430
212/810-2427 (fax)

Samuel H. Rudman, Esq.
David A. Rosenfeld, Esq.
Mario Alba Jr., Esq.
Lerach Coughlin Stoia Geller Rudman & Robbins
LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

Michael J. Chepiga, Esq.
James G. Gamble, Esq.
Eric M. Albert, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY  10017
Telephone:  212/455-2000
212/455-2502 (fax)