UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x :
ROBERT L. GARBER, Derivatively on Behalf : 
of LEHMAN BROTHERS HOLDINGS, INC., :
: 
                                   Plaintiff, :
:
                    v. :    Case No.: 07-CV-02990 (DAB)
:
RICHARD S. FULD, JR., MICHAEL L. :
AINSLIE, JOHN F. AKERS, ROGER S. :
BERLIND, THOMAS H. CRUIKSHANK, :
MARSHA JOHNSON EVANS, SIR :
CHRISTOPHER GENT, JOHN L. CECIL, :
ROLAND A. HERNANDEZ, JOHN D. :
MACOMBER, DINA MERRILL, JONATHAN :
BEYMAN, DAVID GOLDFARB, JOSEPH M. :
GREGORY, JEREMY M. ISAACS, :
CHRISTOPHER O'MEARA, THOMAS A. :
RUSSO, BRADLEY H. JACK, HENRY :
KAUFMAN, STEPHEN M. LESSING, :
MICHAEL F. MCKEEVER, JEFFREY :
VANDERBEEK, :
:
                                Defendants, :
:
                   - and - :
:
LEHMAN BROTHERS HOLDINGS, INC., :
:
                       Nominal Defendant. :
-----------------------------------------------------------x :

## **DECLARATION OF DAVID R. SCOTT**

      I, David R. Scott, Esq., declare under penalty of perjury, that the following is true to the best of my knowledge and belief:

1. I am a member in good standing in the Bar of this Court and am a partner at the law firm of Scott + Scott, LLP ("Scott + Scott"). I make this declaration in support of the Motion to Intervene as a Plaintiff by Saginaw Police and Fire Pension Board ("Saginaw") and the Motion For Selection as Lead Plaintiffs and Approval of Lead Counsel filed by proposed lead plaintiffs Robert L. Garber ("Garber") and Saginaw.

2. Saginaw is a multi-employer pension fund that provides pension, disability, and survivor benefits to the City of Saginaw's police officers and firefighters as well as their eligible beneficiaries and sponsors health care benefits for eligible benefit recipients. Saginaw strives to provide the highest quality of service to its member officers and firefighters with the highest professional and ethical standards to ensure each member has the best opportunity for a successful retirement. As fiduciaries, Saginaw trustees are tasked with professionally managing its resources and are dedicated to ensuring that they maximize the assets and financial returns of their hardworking members who put their lives on the line each day to make their local communities and neighborhoods safe and attractive places to live and raise their families. Saginaw therefore invests in corporations on behalf of the member officers and firefighters and has owned shares of Lehman Brothers Holdings, Inc. ("Lehman") since at least 1999.

3. At present, Saginaw owns almost 5,000 Lehman shares with a present value of almost $300,000.00. Saginaw has requested to intervene as a plaintiff in this case and has asked to be appointed lead plaintiff with Garber.

4. Scott + Scott has been involved in investigating and litigating derivative suits based on "backdating" since 2006. I have personally been directly involved in this effort.

5. The possibility that something was amiss with the stock option awards at certain companies first came to light in a March 18, 2006 Wall Street Journal article entitled "The Perfect Payday: Some CEOs reap millions by landing stock options when they are most valuable." In this article, the Journal highlight the work of a small group of finance professors who had used statistics to determine that the top executives at certain companies were likely "backdating" their stock option grants.

6. According to the Journal, these professors noticed a very disturbing pattern when studying stock option grant dates and stock movements at several large companies. Many of these companies had widely improbable stock option granting patterns in that, year after year, top executives at certain companies recieved options on one of the lowest possible trading dates.

7. The Journal article focused on six companies -- United Healthcare, Affiliated Computer Services, Vitesse Semiconductor, Comverse Technology, Brooks Automation and Jabil Circuit -- explaining that the executives at these companies had received their stock option awards on the best possible days, a phenomenon that could not possibly be due simply to chance. The Journal concluded that the executives at these companies were backdating their stock option grants. The Journal article did not, however, reference Lehman.

8. Following the publication of the Journal's "Perfect Payday" article, Scott + Scott retained an expert who had used statistical analysis to identify the fact that certain companies were backdating their stock option grants. This expert has spent years researching stock option backdating patterns and practices.

3

9. Scott + Scott's expert then spent the next several months reviewing information for instances where the odds that a particular company was backdating its stock option grants was astronomically high.

10. In late 2006, Scott + Scott's expert identified Lehman Brothers as one of the companies that had backdated its stock option grants. After several more months of follow-up work on Lehman Brothers' stock option granting dates and patterns, Scott + Scott filed a complaint in the spring of 2007 in the Southern District of New York. Scott + Scott's complaint alleged that several of the top executives at Lehman Brothers had illegally backdated their stock option grants. The filing of the Scott + Scott complaint was the first time that Lehman Brothers had been identified as a company that engaged in illegal stock option backdating practices

11. Attached hereto as Exhibit A is Scott + Scott's firm resume which provides a detailed description of Scott + Scott's extensive experience and expertise in handling securities, derivative, and other complex class action matters and outlines how, as lead counsel, Scott + Scott has participated in the recovery of billions of dollars in settlements and achieved precedent-setting reforms in corporate governance on behalf of its clients.

12. Scott + Scott has served as lead or co-lead counsel in important derivative suits such as *In Re: Qwest Communications Int'l, Inc.*, 01-1451 (CBS) (D. Colo.), *In Re: Lattice Semiconductor Derivative Litig.*, No. 04-3327, *Knowles v. Gemstar-TV Guide*, No. 02-8440 (MRP) (C.D. Cal.), *Tucker v. Scrushy,* 2006 WL 37028 (Ala. Cir. Ct., Jan. 3, 2006); and *In re: Healthsouth Corp. Derivative Litig.*, 02-2565 (N.D. Ala.) in which it

obtained far-reaching corporate governance and internal control reforms on behalf of shareholders.

13. The attorneys who are presently working on the derivative suits such as this one are highly accomplished attorneys who have experience in securities and derivative suits. These attorneys have worked at several of the nations top law firms, the U.S. Attorney's Office for this District, and clerked for federal judges, to name a few of their accomplishments. The backgrounds of the particular attorneys who will be prosecuting this case, should Scott + Scott be appointed lead counsel, Ms. Kaswan, Ms. Lawrence, and Mr. Johnson are more fully described in Exhibit A.

14. Scott + Scott has agreed to serve as co-counsel with RUF, a firm that Scott + Scott has worked with extensively in the past. RUF, as its resume (attached hereto as Exhibit B) reflects, likewise has extensive experience in litigating derivative and class actions in federal and state courts across the nation

15. Accordingly, I respectfully submit that appointing Scott + Scott as co-lead counsel with RUF in this case is appropriate. If appointed co-lead counsel, Scott + Scott and RUF will responsibly lead the prosecution and resolution of all claims asserted, or which may be asserted, in this action and each future related action that may be filed in or transferred or removed to this Court.

Dated: Colchester, CT
      August 14, 2007.

/s/ David R. Scott

David R. Scott (DS 8053)
Scott + Scott, LLP
108 Norwich Avenue
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2007, a copy of the foregoing Declaration of David R. Scott was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                            /s/ Beth A. Kaswan
                                                          Beth A. Kaswan (BK-0264)