**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
                                                             :
                                                             :
IN RE LEHMAN BROTHERS HOLDINGS, INC.   :  Case No.:  07-CV-2990 (DAB/HBP)
DERIVATIVE LITIGATION                  :  ECF Case
                                                             :
                                                             :
-------------------------------------------------------------x
```

---

**MEMORANDUM OF LAW IN SUPPORT OF NOMINAL DEFENDANT'S
MOTION TO DISMISS THE VERIFIED CONSOLIDATED
SHAREHOLDER DERIVATIVE COMPLAINT**

---

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
E-mail: mchepiga@stblaw.com

*Attorneys for Nominal Defendant
Lehman Brothers Holdings, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................................................... 1

SUMMARY OF THE ALLEGATIONS ..................................................................................... 3

ARGUMENT ................................................................................................................................ 6

    I.      LEGAL STANDARD ...................................................................................... 6

    II.    THE COURT SHOULD DISMISS THE CONSOLIDATED
             COMPLAINT BECAUSE PLAINTIFFS FAILED TO MAKE A
             DEMAND ON THE BOARD OR TO PLEAD DEMAND FUTILITY
             WITH PARTICULARITY ............................................................................... 10

          A.     Plaintiffs' Generic Allegations Directed at All Director Defendants
                  Fail to Establish That They Are Interested............................................. 10

                1.     The Allegations That the Director Defendants May Have
                          Received Backdated Options Are Insufficient as a Matter of
                          Law to Excuse Demand ............................................................ 10

                2.     The Allegations That the Director Defendants Signed False
                          Financial Disclosures Are Insufficient as a Matter of Law
                          to Excuse Demand.................................................................... 12

          B.     At Least Seven of the Ten Directors Are Disinterested and Can
                  Consider a Demand............................................................................... 16

                  1.     The Post-2002 Director Defendants and Mr. Kaufman Are
                          Disinterested ........................................................................... 16

                  2.     The Audit Committee Defendants Are Disinterested .................. 17

                3.     The Compensation Committee Defendants Are Also
                          Disinterested ........................................................................... 19

          C.     Plaintiffs Do Not Challenge the Independence of Any of the
                  Director Defendants............................................................................... 21

    III.   THE COURT SHOULD DISMISS THE CONSOLIDATED
             COMPLAINT AS TO GRANT DATES THAT OCCURRED BEFORE
             PLAINTIFFS PURPORTEDLY OWNED LEHMAN STOCK.......................... 22

CONCLUSION ........................................................................................................................... 24

i

## <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Allison ex rel. General Motors Corp. v. General Motors Corp.*, 604 F. Supp. 1106 (D. Del. 1985) ................................................................................................ 7

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) ................................................... 7, 8, 9

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961 (Del. Ch. 2003) ............................................................................................... 21

*Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040 (Del. 2004) ...................................................................................................... 21

*Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) .................................................... 7, 21

*Desimone ex rel. Sycamore Networks, Inc. v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) ........................................................................................................ *passim*

*Ferre ex rel. EVCI Career Colls. Holding Corp. v. McGrath*, No. 06-CV-1684, 2007 WL 1180650 (S.D.N.Y. Feb. 16, 2007) ............................................... 9

*Fink ex rel. Citigroup, Inc. v. Weill*, No. 02-CV-10250, 2005 WL 2298224 (S.D.N.Y. Sept. 19, 2005) .......................................................................... 8, 10

*Franklin Balance Sheet Investment Fund v. Crowley*, No. 888, 2006 WL 3095952 (Del. Ch. Oct. 19, 2006) ................................................................................ 14

*Guttman ex rel. Nvidia Corp. v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ............... 14, 18

*Halpert Enterprises, Inc. ex rel. J.P. Morgan Chase & Co. v. Harrison*, 362 F. Supp. 2d 426 (S.D.N.Y. 2005) .................................................................... 10

*In re Bank of New York Derivative Litigation*, 320 F.3d 291 (2d Cir. 2003) ............... 22

*In re CNET Networks, Inc. Shareholder Derivative Litigation*, 483 F. Supp. 2d 947 (N.D. Cal. 2007) ................................................................................ 11, 16, 20

*In re Coca-Cola Enterprises, Inc. Derivative Litigation*, 478 F. Supp. 2d 1369 (N.D. Ga. Mar. 12, 2007) ............................................................................... 17

*In re Computer Sciences Corp. Derivative Litigation*, No. 06-CV-5288, 2007 WL 1321715 (C.D. Cal. Mar. 26, 2007) ..................................................... 6, 16, 17, 18

*In re F5 Networks, Inc. Derivative Litigation*, No. 06-CV-794, 2007 WL 2476278 (W.D. Wash. Aug. 6, 2007) ........................................................................... 11

*In re MIPS Technologies, Inc. Derivative Litigation*, No. 06-CV-6699, 2008 WL 131915 (N.D. Cal. Jan. 11, 2008) ................................................................. 8, 12

*In re VeriSign, Inc. Derivative Litigation*, No. 06-CV-4165, 2007 WL 2705221 (N.D. Cal. Sept. 14, 2007) ................................................................. *passim*

*In re Zoran Corp. Derivative Litigation*, 511 F. Supp. 2d 986 (N.D. Cal. 2007) ........................ 11

*Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991) ................................................. 7

*Loveman ex rel. Estee Lauder Companies, Inc. v. Lauder*, 484 F. Supp. 2d 259 (S.D.N.Y. 2007) ................................................................................................. 9

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) ................................................................. *passim*

*Risberg ex rel. Aspen Technology, Inc. v. McArdle*, No. 07-CV-10354, 2008 WL 54815 (D. Mass. Jan. 4, 2008) ................................................................................. 8

*Roth ex rel. Metal Managment, Inc. v. Jennings*, 489 F.3d 499 (2d Cir. 2007) ........................... 4

*Ryan ex rel. Maxim Integrated Products v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) ................. 22

*Seminaris v. Landa*, 662 A.2d 1350 (Del. Ch. 1995) ........................................................... 15, 16

*Stoll ex rel. Glenayre Technologies, Inc. v. Ardizzone*, No. 07-CV-608, 2007 WL 2982250 (S.D.N.Y. Oct. 9, 2007) ......................................................................... 4

**Statutes**

8 Delaware Code § 141 ................................................................................................. 19

10 Delaware Code § 8106 ................................................................................................. 14

**Federal Rules**

Federal Rule of Civil Procedure 8 ................................................................................. 7, 22

Federal Rule of Civil Procedure 23.1 ................................................................. *passim*

Nominal Defendant Lehman Brothers Holdings, Inc. ("Lehman" or the "Company") respectfully submits this Memorandum of Law, together with the Declaration of James G. Gamble, dated March 4, 2008 ("Gamble Decl."), in support of its Motion to Dismiss Plaintiffs' Verified Consolidated Shareholder Derivative Complaint (the "Consolidated Complaint") for failure to comply with the requirements of Federal Rule of Civil Procedure 23.1.

## PRELIMINARY STATEMENT

Plaintiffs seek to assert derivative claims on Lehman's behalf against a number of the Company's current and former directors and officers in connection with allegedly "backdated" stock option grants made by the Company between 1997 and 2002. But, it is a fundamental precept of corporate law that the decision to pursue litigation on behalf of a public company belongs to its directors. Therefore, before filing a derivative suit, shareholders are required to make a demand on the directors to take action. Plaintiffs here have not made a demand, claiming it is excused because a majority of Lehman's Board could not evaluate a demand impartially. Plaintiffs are wrong and the Consolidated Complaint should be dismissed.

Under applicable Delaware law, demand is excused only if Plaintiffs plead specific facts sufficient to show that at least half of the board members are not disinterested or independent. Lehman has ten directors. Plaintiffs make the following generic allegations against all ten: (i) certain unspecified directors must have received backdated options; and (ii) each signed allegedly false and misleading financial statements. Neither of these allegations is sufficient.

First, Lehman's public disclosures, which the Court can consider on this motion to dismiss, show that Lehman's nine outside directors received options only on dates specified in Lehman's incentive compensation plans. As such, those grants could not have been backdated. Delaware law is clear that such "specified date" grants do not render a director incapable of

considering a demand relating to backdating.  Second, Delaware law is also clear that merely signing an allegedly false financial statement is insufficient to render a director interested in the outcome of the case.  This flows logically from the basic requirements of Delaware law.  A director can be found liable for a breach of duty only if he or she acted knowingly or with an egregious degree of recklessness.  Plaintiffs must therefore allege not only that a director signed an allegedly false financial statement, but must also provide specific allegations as to how a director knew or was reckless in not knowing that the financial statements were false.  Here, Plaintiffs have made no such allegations.

With respect to four Lehman directors—Sir Christopher Gent, Marsha Johnson Evans, Roland Hernandez and Henry Kaufman—Plaintiffs make only these generic allegations. As such, these four directors can properly consider a demand on the board.  Moreover, three of those directors—Sir Gent, Ms. Johnson Evans and Mr. Hernandez (the "Post-2002 Director Defendants")—joined the Board after July 23, 2002, the date of the last challenged option grant. The case law in options backdating cases consistently holds that directors who joined the board after the last option grant date at issue are disinterested for purposes of considering a demand.

For three other directors, Michael Ainslie, Roger Berlind and Thomas Cruikshank (the "Audit Committee Defendants"), Plaintiffs' only addition to the generic allegations discussed above is the conclusory observation that they served on the Audit Committee.  The case law is clear that merely serving on an audit committee during a period of alleged backdating does not interfere with a director's ability to disinterestedly consider a demand.

The Court need go no further.  Taken together, the three Post-2002 Director Defendants, Mr. Kaufman, and the three Audit Committee Defendants form a seven-member majority of the ten-member Board.  The allegations against them could not support a finding that

they are interested in the outcome of litigation. Plaintiffs make no specific allegations that any of these directors lack independence. As a result, the allegations fail to support a finding that a majority of the Board is unable to properly consider a demand regarding the subject matter of this lawsuit and demand is not excused.

While it is not necessary to the Court's decision, it is nonetheless true that the allegations made against the two remaining outside directors, John Akers and John Macomber, both of whom served on Lehman's Compensation Committee (the "Compensation Committee Defendants"), are also insufficiently particularized to establish that they are interested or lack independence. Therefore, all nine of Lehman's outside directors are capable, as a matter of law, of disinterestedly and independently considering a demand.

Apart from failing to adequately allege demand futility, Plaintiffs' claims relating to alleged misstatements in the financial disclosures fail because such claims already have been released as part of a settlement in another recent derivative action in this Court against Lehman and its directors.

Finally, Plaintiffs do not satisfy the contemporaneous ownership requirement of Rule 23.1, which requires that a derivative plaintiff actually have owned shares of the company at the time of the challenged conduct. Courts have applied this requirement strictly in connection with stock option backdating allegations, and Plaintiffs, by their own admissions, clearly lack standing to assert claims relating to three of the nine option grants at issue.

For these reasons, the Consolidated Complaint should be dismissed.

## SUMMARY OF THE ALLEGATIONS

From 1997 to 2002, Lehman granted stock option and restricted stock unit ("RSU") compensation pursuant to its 1994 Management Ownership Plan ("1994 Plan") and

3

1996 Management Ownership Plan ("1996 Plan").  ¶¶ 17, 44;[1] *see also* Consol. Compl., Ex. A; Gamble Decl., Ex. A.[2]  The 1996 Plan provides for the "grant of stock-based incentive compensation, including stock options and RSU's [restricted stock units] . . . on a sporadic basis, to Lehman's executive management, including the Officer Defendants."  ¶ 44; *see also* Consol. Compl., Ex. A.  The 1994 Plan provides for Lehman's non-management directors to receive stock options or RSUs on the pre-established date of Lehman's annual shareholder meeting.  ¶ 44; Gamble Decl., Ex. A at § 9.4.

Plaintiffs claim that the stock options and RSUs granted during this period were "backdated."  ¶¶ 2–4, 6–11, 47, 49, 66–67, 73–87.  They allege that the Director Defendants and Officer Defendants of Lehman "engineered, authorized or permitted the award of Lehman stock options with exercise prices below the fair market value of Lehman's stock in violation of Lehman's stock option plans and have engaged in certain transactions, including the exercise of back-dated options, to reap hundreds of millions of dollars in unlawful windfall profits at the expense of the Company."  ¶ 3.  Plaintiffs also improperly lump all defendants together and conclusorily allege that the Individual Defendants "have . . . received misdated RSUs which were fraudulently concealed and falsely reported on Lehman's financial statements and federal tax returns."  *Id.*

---

[1]    Unless otherwise stated, all references herein to "¶" refer to a paragraph in the Consolidated Complaint.

[2]    The 1994 Plan was attached as an exhibit to Lehman's Form 10-K for the fiscal year ended November 30, 2002, filed with the Securities and Exchange Commission ("SEC") on February 28, 2003.  In evaluating a motion to dismiss, the Court may take judicial notice of Lehman's SEC filings and consider the documents relied on by Plaintiffs in the Consolidated Complaint.  *See, e.g.*, *Roth ex rel. Metal Mgmt., Inc. v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Stoll ex rel. Glenayre Techs., Inc. v. Ardizzone*, No. 07-CV-608, 2007 WL 2982250, at *3 (S.D.N.Y. Oct. 9, 2007).

Plaintiffs specifically challenge nine stock option grants made from January 8, 1997 through July 23, 2002 and related financial disclosures through at least 2007. ¶¶ 7, 10, 40, 73–94. As proof of this alleged backdating, Plaintiffs purport to have conducted "statistical analyses" of Lehman option grants during this time period. ¶¶ 10, 28, 74, 85, 114; Consol. Compl., Ex. B. However, Plaintiffs provide absolutely no details about these analyses other than to attach as an exhibit a self-serving one-page chart purporting to show an "odds ratio" for each grant date, with no explanation as to how these numbers were calculated. *See* Consol. Compl., Ex. B.

Plaintiffs made no pre-suit demand on Lehman's Board. ¶ 103. The Board, on the date the Consolidated Complaint was filed (as well as today), is comprised of 10 members— Michael Ainslie, John Akers, Roger Berlind, Thomas Cruikshank, Marsha Johnson Evans, Richard Fuld, Sir Christopher Gent, Roland Hernandez, Henry Kaufman, and John Macomber— all of whom are named as defendants in this action. ¶ 95; *see also* ¶¶ 30–38.[3] Of the ten members of Lehman's Board, only Mr. Fuld is an officer and employee of the Company. ¶ 19. The remaining nine directors are outside directors. Plaintiffs allege that demand would have been futile on the basis of three main theories: (1) certain unspecified Board members received allegedly backdated stock options or RSUs, ¶¶ 40, 95; (2) all current Board members signed allegedly false financial statements, ¶¶ 7, 48–49, 66, 73, 96, 104, 141; and (3) certain Directors were members of the Compensation or Audit Committees during the period of "backdated"

---

[3]     Plaintiffs mistakenly include Dina Merrill and omit Henry Kaufman from the list of Lehman Directors at the time the Consolidated Complaint was filed. ¶ 95. Ms. Merrill retired from Lehman's Board in April 2006. ¶ 39. Mr. Kaufman has served as a director of Lehman from 1995 to the present. ¶ 34.

grants and thus are complicit in the alleged wrongdoing, ¶¶ 55–68, 98, 99.[4]  Messrs. Akers and

Macomber served on the Compensation Committee for the entirety of the 1997–2002 period.  ¶¶

31, 35, 56.  Messrs. Ainslie, Berlind, and Cruikshank have been members of the Audit

Committee from 1997 to the present.  ¶¶ 30, 32–33, 61.  Sir Gent, Ms. Evans, and Mr.

Hernandez joined Lehman's Board in 2003, 2004, and 2005, respectively, all at least a year after

the last stock option grant at issue in the Consolidated Complaint.  ¶¶ 36–38.  Messrs. Fuld,

Kaufman, Hernandez, Sir Gent and Ms. Evans were not members of the Audit or Compensation

Committees during the relevant period.  ¶¶ 19, 34, 36–38, 56, 61.  While Plaintiffs allege that

several (unspecified) Director Defendants benefited personally from conduct challenged in the

Consolidated Complaint, ¶¶ 40, 95, Plaintiffs provide no details concerning any stock option or

RSU grant to any Director other than Mr. Fuld.  ¶¶ 75–80, 82, 97.

## ARGUMENT

### I.    LEGAL STANDARD

Plaintiffs have violated the clear text of Federal Rule of Civil Procedure 23.1 by

failing to make a pre-suit demand on Lehman's Board and failing to allege with particularity

why a demand should be excused.  In order for a shareholder to maintain a derivative action:

> The complaint shall . . . state with particularity:  (A) any effort by
> the plaintiff to obtain the desired action from the directors or
> comparable authority and, if necessary, from the shareholders or

---

[4]    Although Plaintiffs refer only to the Audit and Compensation Committees in their
demand futility allegations, Plaintiffs also include information on the membership of the
Governance and Executive Committees in the body of the Consolidated Complaint.
¶¶ 55, 69–72.  To the extent that Plaintiffs intended to allege that service on those
Committees makes the member directors interested, courts have held that membership on
committees uninvolved in the alleged wrongdoing is insufficient to destroy the
presumption of disinterest for purposes of the demand futility analysis.  *See, e.g.*, *In re
VeriSign, Inc. Derivative Litig.*, No. 06-CV-4165, 2007 WL 2705221, at *16 (N.D. Cal.
Sept. 14, 2007); *In re Computer Scis. Corp. Derivative Litig.*, No. 06-CV-5288, 2007 WL
1321715, at *10 (C.D. Cal. Mar. 26, 2007).

members; and (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(3).  The demand doctrine is a matter of substantive law, and state law provides the applicable standards for a demand futility determination.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108–09 (1991) (holding that a federal court "must apply the demand futility exception as it is defined by the law of the State of incorporation").  Here, Delaware's demand futility standards apply because Lehman is a Delaware corporation.  ¶ 15.[5]

Under *Aronson*, the seminal Delaware case on demand futility, demand is excused only if a plaintiff alleges specific facts that create a reasonable doubt (1) as to the disinterestedness or independence of a majority of the directors, or (2) that a challenged transaction was a valid exercise of business judgment.  *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).  The second prong of the *Aronson* test does not apply where, as here, a plaintiff alleges that the board breached its duty by failing to take some action (as opposed to an alleged breach arising from an affirmative act of the board).  *See Rales v. Blasband*, 634 A.2d 927, 933–34 (Del. 1993) ("[A] court should not apply the *Aronson* test for demand futility where the board that would be considering the demand did not make a business decision which is being challenged in the derivative suit.").  Instead, in such cases, a court must apply the *Rales* test and assess "whether or not the particularized factual allegations of a derivative stockholder complaint create a

---

[5]    In applying Delaware's test for demand futility, courts give heightened scrutiny to plaintiffs' allegations, applying "stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by . . .  Rule 8(a)."  *Brehm v. Eisner*, 746 A.2d 244, 254 and n.24 (Del. 2000) (noting that Delaware's pleading rules parallel the Federal Rules); *see also Allison ex rel. Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1112 (D. Del. 1985) (noting that Rule 23.1 represents "a marked departure from the 'notice' pleading philosophy" of the Federal Rules generally).

reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales*, 634 A.2d at 934.

Courts have consistently applied the *Rales* test for demand futility in recent backdating cases. *See, e.g.*, *In re MIPS Techs., Inc. Derivative Litig.*, No. 06-CV-6699, 2008 WL 131915, at *7 (N.D. Cal. Jan. 11, 2008); *Risberg ex rel. Aspen Tech., Inc. v. McArdle*, No. 07-CV-10354, 2008 WL 54815, at *4 (D. Mass. Jan. 4, 2008); *Desimone ex rel. Sycamore Networks, Inc. v. Barrows*, 924 A.2d 908, 913–14 (Del. Ch. 2007); *cf. Fink ex rel. Citigroup, Inc. v. Weill*, No. 02-CV-10250, 2005 WL 2298224, at *1, *3 n.6 (S.D.N.Y. Sept. 19, 2005) (applying *Rales* where plaintiff alleged that directors "failed to take action to prevent" the company from entering into "a series of unlawful or fraudulent transactions").

*Rales* is also the appropriate standard here as the only allegation against any of the Director Defendants that could be construed as a specific Board act or decision for purposes of the second prong of *Aronson* is the Compensation Committee's alleged involvement in granting the stock options at issue. *See* ¶¶ 17, 98, 118, 133. Only two current directors, Messrs. Akers and Macomber, were members of the Compensation Committee during the 1997–2002 time period alleged in the Consolidated Complaint. *See* ¶¶ 31, 35, 56, 98. For the seven other outside directors, Plaintiffs complain solely of the *lack of any specific act* by the Director Defendants and not a decision of the Board or the majority of its members. *See* ¶ 7 (Director Defendants "*failed to act* to question, verify, and investigate" the alleged wrongdoing, causing the Company to violate accounting principles, rules, regulations and laws); *see also* ¶¶ 53, 68, 96, 110, 113. Thus, the *Rales* test applies. *See, e.g.*, *Loveman ex rel. Estee Lauder Cos., Inc. v. Lauder*, 484 F.

Supp. 2d 259, 265–66 (S.D.N.Y. 2007) (noting that a claim of "director *in*action . . . triggers the more exacting *Rales* . . . standard").

Under *Rales*, the Court must determine whether Lehman's directors could have *disinterestedly* and *independently* responded to a shareholder demand. *See Rales*, 634 A.2d at 934. A director is considered "interested" where a decision to pursue litigation will have a materially detrimental impact on a director, but not on the corporation or its shareholders. *Rales*, 634 A.2d at 936. Thus, a director would be considered "interested" where the facts alleged show that he faces a substantial likelihood of liability in connection with the alleged wrongdoing or where he would receive a financial benefit from the challenged transaction that is not shared equally by all stockholders. *Id.* A director is considered "independent" where that "director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." *Id.* (citing *Aronson*, 473 A.2d at 816).

To excuse demand, Plaintiffs must allege facts "on a director-by-director basis" showing that at least five of the ten Lehman directors are incapable of disinterestedly or independently considering that demand. *Ferre ex rel. EVCI Career Colls. Holding Corp. v. McGrath*, No. 06-CV-1684, 2007 WL 1180650, at *3 (S.D.N.Y. Feb. 16, 2007); *see also Desimone*, 924 A.2d at 943 (rejecting plaintiff's "contention that knowledge on the part of any one board member can be imputed to other board members as a result of their shared board or committee service"). As discussed below, the Consolidated Complaint does not allege facts (let alone particularized facts) that challenge either (1) the disinterestedness or (2) the independence of a majority of the directors of the Board. Accordingly, Plaintiffs cannot satisfy the *Rales* test for demand futility and the Consolidated Complaint should be dismissed pursuant to Rule 23.1.

## II.  THE COURT SHOULD DISMISS THE CONSOLIDATED COMPLAINT BECAUSE PLAINTIFFS FAILED TO MAKE A DEMAND ON THE BOARD OR TO PLEAD DEMAND FUTILITY WITH PARTICULARITY

### A.  Plaintiffs' Generic Allegations Directed at All Director Defendants Fail to Establish That They Are Interested

Plaintiffs make two generalized allegations against the Director Defendants: (1) certain unspecified directors personally benefited from allegedly backdated grants of stock options or RSUs, ¶¶ 40, 95; and (2) all signed one or more of Lehman's allegedly false financial statements, ¶¶ 7, 48–49, 66, 73, 96, 104, 141.[6]  These general allegations are insufficient as a matter of law to support a finding that a director is not disinterested.

### 1.  The Allegations That the Director Defendants May Have Received Backdated Options Are Insufficient as a Matter of Law to Excuse Demand

The Consolidated Complaint alleges that the Director Defendants may have "profited from the back-dating scheme" by receiving backdated stock options and/or RSUs.  ¶ 95.  This, according to Plaintiffs, renders the Director Defendants incapable of disinterestedly considering a demand.  *Id.*; *see also* ¶¶ 40, 95.  But, Plaintiffs provide absolutely no specifics about stock option or RSU grants to any of the nine outside Director Defendants and do not even specifically allege that any in fact did receive backdated stock options or RSUs.

This is fatal to Plaintiffs' claims because, in assessing demand futility in an options backdating case, "the Court examines whether plaintiffs have pleaded facts with particularity creating reasonable doubt at the pleading stage that the Director Defendants are not

---

[6]     Plaintiffs also allege that demand would be futile because the "insurance policies covering the liability of a company's directors and officers purport to exclude legal claims asserted directly by the Company against such persons."  ¶ 109.  These types of naked, boilerplate allegations are found in most derivative complaints and are routinely dismissed as insufficient to establish interestedness.  *See, e.g.*, *VeriSign*, 2007 WL 2705221, at *11 n.11; *Fink*, 2005 WL 2298224, at *4; *Halpert Enters., Inc. ex rel. J.P. Morgan Chase & Co. v. Harrison*, 362 F. Supp. 2d 426, 433 (S.D.N.Y. 2005).

disinterested because they received backdated option grants." *In re F5 Networks, Inc. Derivative Litig.*, No. 06-CV-794, 2007 WL 2476278, at *8 (W.D. Wash. Aug. 6, 2007). Because the Consolidated Complaint contains no facts about options or RSUs granted to the outside Director Defendants, Plaintiffs have failed to create such a reasonable doubt and Plaintiffs' allegations regarding profiting are insufficient.

        For example, in *In re CNET Networks, Inc. Shareholder Derivative Litigation*, the court analyzed each of the eight option grants alleged to have been backdated. 483 F. Supp. 2d 947, 959–62 (N.D. Cal. 2007). The court concluded that the timing of three of these grants supported an inference of backdating. *Id.* at 962. But, only one current CNET director received stock options on one of those three dates. *Id.* While the court considered that single director interested for purposes of the demand futility analysis, the remaining CNET directors were not considered interested. *Id.*; *see also F5 Networks*, 2007 WL 2476278, at *12 (finding that "plaintiffs have failed to establish reasonable doubt that the Director Defendants are disinterested based on receipt of backdated options" where the dates on which director defendants received options did not support an inference of backdating); *cf. In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1008 (N.D. Cal. 2007) (finding director interested where "plaintiff has shown particular facts that would warrant the conclusion, at the pleading stage, that [the] grant [received by the director] was backdated").

        In fact, all options and RSUs received by the outside directors were awarded on plan-specified dates as required by the 1994 Plan. ¶ 44. The 1994 Plan states:

> Each Non-employee Director shall receive 2,500 Restricted Stock Units on the day of the Company's annual meeting for each year that the Plan is in effect. At the election of each Non-employee Director, Options in an amount equal to three times the number of Restricted Stock Units paid, may be paid in place of the Restricted Stock Units.

*See* Gamble Decl., Ex. A at § 9.4.  Therefore, the options and/or RSUs received by the nine

outside Director Defendants could not possibly have been backdated and Plaintiffs have provided

no facts to suggest that they were.  *See, e.g.*, *MIPS*, 2008 WL 131915, at *9 (finding directors

disinterested where their "stock options were awarded pursuant to a plan that tied stock option

grants to specific dates, preventing backdating").

       The Consolidated Complaint fails to allege that any outside director received

backdated options in any of the nine challenged option grants.  Also, Lehman's publicly filed

option plan for directors—which this Court can take notice of on this motion to dismiss—proves

that the directors *did not and could not* have received backdated options or RSUs.  Thus, the

Court cannot conclude that the Director Defendants are unable to disinterestedly consider a

demand based on Plaintiffs' allegations.

       **2.**    **The Allegations That the Director Defendants Signed False Financial Disclosures Are Insufficient as a Matter of Law to Excuse Demand**

       Plaintiffs also claim that demand is futile because "all of the Director Defendants

signed one or more of the Company's annual reports on Form 10-K between 1998 and 2006

containing the Company's financial statements, which failed to account for the back-dated stock

option grants as compensation and as an expense of the Company incurred as the options

vested."  ¶ 104; *see also* ¶¶ 7, 48–49, 66, 73, 96, 141.  The disclosure-based claims fail for two

reasons.  First, claims relating to Lehman's stock options disclosures already have been released

pursuant to a settlement approved by this Court in an earlier derivative action.  Second, even if

the claims had not been released, they are insufficient as a matter of law to sustain a demand

futility argument.

On August 3, 2006, a purported shareholder brought a derivative action against Lehman and its directors in this Court, captioned *Bader v. Ainslie, et al.*, No. 06-CV-5884, before Hon. William H. Pauley III.  *See* Gamble Decl., Ex. B.  In *Bader*, the plaintiff alleged that Lehman's 2002–2006 proxy statements contained misstatements related to executive compensation, including its reporting of option grants during those years.  While *Bader* did not specifically allege backdating of stock options, it alleged that the valuation of the options was calculated and disclosed improperly.  *See id.*

Approximately five months after the case was filed, the parties entered into a settlement agreement, which was submitted to the Court for approval.  *See* Gamble Decl., Ex. C. The settlement was approved by Judge Pauley after a preliminary hearing on February 9, 2007, proper shareholder notice and a final settlement approval hearing on April 5, 2007.  *See* Gamble Decl., Exs. D, E.  The release included in the settlement and approved by the Court released

> any statutory or common law claims, rights, demands, suits, matters, issues or causes of action under federal, state, local, foreign law, or any other law, rule or regulation that were, could have been, or might have been asserted against [Lehman or its directors] by Plaintiff or any other holder of Lehman securities, derivatively on behalf of Lehman . . . , in any court of competent jurisdiction or any other adjudicatory tribunal, in connection with, arising out of, related to, based upon, in whole or in part, directly or indirectly, in any way, the facts, transactions, events, occurrences, acts, disclosures, oral or written statements, representations, filings, publications, disseminations, press releases, presentations, accounting practices or procedures, omissions or failures to act . . . including both known claims and unknown claims that were or that could have been alleged in the Action.

*See* Gamble Decl., Ex. C at ¶ 1.14.  The settlement was publicized pursuant to its terms to satisfy the requirements of Federal Rule of Civil Procedure 23.1 and, in approving the settlement, Judge Pauley found that the Federal Rule requirements were met and that the settlement was "fair,

reasonable and adequate (procedurally and substantively) to Lehman and its shareholders . . ."

Gamble Decl., Ex. E at ¶ 3.  In addition, Judge Pauley's Final Order stated that:

> All Persons are permanently and forever barred and enjoined from filing, commencing, instituting, prosecuting or maintaining, either directly, indirectly, representatively or in any other capacity, any derivative claim, against any of the Released Parties [which included Lehman and its directors] arising out of, based upon or relating to the transactions and occurrences referred to in the facts and allegations contained in the Action.  All such claims and actions are hereby extinguished, satisfied and unenforceable.

*Id*. at ¶ 8.

Accordingly, Lehman shareholders, including Plaintiffs here, received notice of the *Bader* settlement and release, had the opportunity to object to the settlement and chose not to. Therefore, they are bound by the terms of the *Bader* release and Judge Pauley's Final Order Approving Settlement and are precluded as a matter of law from bringing additional claims relating to Lehman's disclosures of its options and RSU grants between 2002 and 2006.[7]  As a result, the disclosure claims in the Consolidated Complaint should be dismissed.

Separate and apart from the *Bader* release, Plaintiffs' allegations regarding purportedly false financial disclosures do not adequately plead demand futility.  In order to show that a director is interested based on signing false financial statements, a plaintiff must include "well-pled, particularized allegations of fact detailing the precise roles that these directors played at the company, the information that would have come to their attention in those roles, and any indication as to why they would have perceived the accounting irregularities."  *Guttman ex rel. Nvidia Corp. v. Huang*, 823 A.2d 492, 503–04 (Del. Ch. 2003) (plaintiffs' failure to "provide[]

---

[7]    In addition, disclosure claims relating to pre-2002 disclosures are barred by the statute of limitations.  *See, e.g.*, *Franklin Balance Sheet Investment Fund v. Crowley*, No. 888, 2006 WL 3095952, at *7 n.44 (Del. Ch. Oct. 19, 2006) ("The statute of limitations for a breach of fiduciary duty is three years."); 10 Del. C. § 8106.

any particularized basis to infer that [the] outside directors had any idea about the questionable accounting practices . . . [was] fatal to the plaintiffs' effort to show demand excusal"); *see also Seminaris v. Landa*, 662 A.2d 1350, 1354 (Del. Ch. 1995) (allegation that directors signed allegedly misleading financial statements was insufficient to show that they were not disinterested).

Because the Consolidated Complaint contains no such well-pled allegations, Plaintiffs cannot establish that the Director Defendants are interested because they signed financial statements.  For example, in *VeriSign*, the court dismissed securities claims against directors where the plaintiffs did not "specify the roles that . . . each of the director defendants played in the alleged backdating scheme or in the alleged scheme to issue false financial reports."  2007 WL 2705221, at *30.  As here, the complaint in *VeriSign* failed to identify how each director would have become aware of backdating at the company:  "[The complaint] contains no specific allegations of contemporaneous reports or data supporting the assertions of scienter—not a single fact showing what each defendant knew, when he/she knew it, or how he/she acquired that knowledge."  *Id.*

Similarly, in *Desimone*, another recent backdating case, the Delaware Chancery Court held that demand was not excused because the plaintiff made only blanket allegations regarding directors' roles in approving and reporting allegedly backdated options.  924 A.2d at 914.  Even though the court assumed that options were backdated in evaluating the motion to dismiss, the complaint failed to meet the high standard for demand futility because details regarding individual directors' roles in the process were not provided.  *Id.* at 942.  As here, the *Desimone* court could "infer nothing from the pled facts about whether and to what extent any

director was involved in the mechanics by which the options were issued or the dates on which that administrative task was carried out." *Id.*

The Consolidated Complaint does not identify a single fact suggesting that any of the Director Defendants were aware of backdating, much less that they knew the accounting ramifications of any such backdating and therefore knowingly signed a false disclosure. The unsupported assertion that the Director Defendants must have known of the alleged backdating and thus are culpable of signing false disclosures fails to establish demand futility. *See, e.g.*, *VeriSign*, 2007 WL 2705221, at *30; *Seminaris*, 662 A.2d at 1354.

**B.    At Least Seven of the Ten Directors Are Disinterested and Can Consider a Demand**

      **1.    The Post-2002 Director Defendants and Mr. Kaufman Are Disinterested**

The generic allegations discussed above are the sole demand-related allegations made against four of the directors—the Post-2002 Director Defendants and Mr. Kaufman. Those allegations are insufficient as a matter of law to establish that these directors are not disinterested. Sir Gent, Ms. Evans, and Mr. Hernandez joined Lehman's Board in 2003, 2004, and 2005, respectively, all at least a year after the last stock option grant alleged to have been backdated. ¶¶ 36–38, 73. They could not have had any involvement in the stock option granting process between 1997 and 2002. The case law is clear that directors who joined the board after the last challenged grant can disinterestedly consider a demand in a backdating case. *See, e.g.*, *Computer Scis.*, 2007 WL 1321715, at *8 (finding that plaintiffs' allegations concerning a director who joined the board after the alleged wrongdoing "are conclusory and lack particularity in connecting [the director] to backdating transactions"); *CNET*, 483 F. Supp. 2d at 963 (finding

a director disinterested where "[t]he latest backdated grant that plaintiffs even attempt[ed] to plead with particularity occurred . . . a full two years before [the director] joined the board").[8]

   The sole distinction Plaintiffs make between Mr. Kaufman and the Post-2002 Director Defendants is that he was a member of the Board at the time the challenged grants were made.  But mere board membership—without more—makes no difference to the demand futility analysis.

     **2.**  **The Audit Committee Defendants Are Disinterested**

   Plaintiffs make the same insufficient generic allegations against Messrs. Ainslie, Berlind, and Cruikshank.  The sole additional allegation made against these three directors is that they were members of Lehman's Audit Committee from 1997 to the present.  ¶¶ 30, 32–33, 61. Plaintiffs claim that, merely by virtue of their Audit Committee membership, these directors are unable to consider a demand.  ¶ 99.

   Plaintiffs are wrong.  "Courts applying Delaware caselaw have consistently held . . . that a director is not interested merely by virtue of sitting on an Audit Committee while the corporation faces accounting and audit irregularities."  *In re Coca-Cola Enters., Inc. Derivative Litig.*, 478 F. Supp. 2d 1369, 1378 (N.D. Ga. Mar. 12, 2007); *see also Desimone*, 924 A.2d at 940 ("Desimone has not alleged any facts to suggest that Sycamore's internal controls were deficient, much less that the board, the Audit Committee, or Sycamore's auditors had any reason to suspect that they were or that backdating was occurring."); *Computer Scis.*, 2007 WL

---

[8]  Plaintiffs also allege that Sir Gent should be considered interested based on his Audit Committee membership from 2004 to the present.  ¶ 99.  But, he clearly had no involvement in the stock option granting process during the period in question (1997–2002), and Plaintiffs allege no facts suggesting that Sir Gent was made aware of any alleged wrongdoing after he joined the Board.  As discussed above, conclusory allegations concerning a director's knowledge of alleged financial statements are insufficient to impugn that director's impartiality.  *See, e.g.*, *VeriSign*, 2007 WL 2705221, at *30.

1321715, at *9 ("Plaintiffs' simple allegation that the Audit Committee members must have done their statutory duties in communicating information relevant to the backdating while knowing and concealing its wrongful aspects, is not particularized.").

To establish that audit committee members cannot consider a demand, Plaintiffs must allege that they "had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation." *Guttman*, 823 A.2d at 507. In the backdating context, in *Computer Sciences*, a federal court applying Delaware law rejected allegations that "the Audit Committee Defendants 'colluded' with the Compensation Committee Defendants in generating, approving and disseminating improper and false accounting and financial statements that concealed backdated options." *Computer Scis.*, 2007 WL 1321715, at *9. The court held that to establish demand futility, the plaintiff must allege "the likely or actual time, place and manner of specific communications related to the wrongful backdating as well as facts supporting the alleged knowledge of the Audit Committee Defendants of the backdating." *Id*.

Plaintiffs here do not allege any facts about how the stock option granting process operated at Lehman, the role of the Audit Committee Defendants in this process, or any other details that could support an inference that the Audit Committee Defendants were knowingly involved in any alleged backdating scheme. Indeed, rather than implicate the Audit Committee, the Consolidated Complaint specifically alleges that the Compensation Committee—*not* the Audit Committee—"had the responsibility and authority to administer the [1996] Plan, select the executives to receive stock option awards and determine the terms of the awards subject to the provisions of and limitations in the [1996] Plan." ¶ 45; *see also* ¶¶ 56–60. This allegation completely undermines any suggestion of involvement or knowing approval by the members of

the Audit Committee, who are permitted under Delaware law to rely on the actions of the

Compensation Committee.  *See* 8 Del. Code § 141(e) ("A member of the board of directors . . .

shall, in the performance of such member's duties, be fully protected in relying in good faith . . .

upon such information, opinions, reports or statements presented to the corporation by . . .

committees of the board of directors.").  Absent particularized allegations of wrongdoing or

awareness of others' wrongdoing, Messrs. Ainslie, Berlind, and Cruikshank (and Sir Gent, who

joined the Committee in 2004, two years after the last alleged backdating) cannot be considered

incapable of disinterestedly evaluating a shareholder demand based on their Audit Committee

membership.

*    *    *

Therefore, a seven-member majority of the Board, namely Mr. Kaufman, the

three Post-2002 Director Defendants, and the three Audit Committee Defendants, are able to

disinterestedly consider a demand and the Consolidated Complaint should be dismissed.

### 3.    The Compensation Committee Defendants Are Also Disinterested

The Consolidated Complaint also fails to allege that the Compensation Committee

Defendants are not disinterested.  Two of the directors—Messrs. Akers and Macomber—were

members of the Compensation Committee during the period at issue.  ¶¶ 31, 35, 56.  Plaintiffs

allege that they improperly approved the issuance of stock options and RSUs below their Fair

Market Value.  *See, e.g.*, ¶¶ 5, 17, 47, 49, 56–60, 118.  Here too, Plaintiffs' allegations regarding

the role of the Compensation Committee are general and conclusory and do not meet the

heightened demand futility pleading standards.  *See, e.g.*, ¶ 17 ("Directors who served on the

Lehman Compensation Committee had the authority and responsibility to determine the awards .

. . in compliance with the terms of the Plan."); ¶ 98 ("Current Board members who served on the

Compensation Committee during the Grant Period, and who were responsible for administering

19

the Plan in accordance with its terms (Akers and Macomber) are particularly complicit in the

wrong-doing . . ."); ¶ 118 ("Stock options were issued to the Officer Defendants in violation of

the Plan.  Lehman's Compensation Committee's approval of the stock options issued below Fair

Market Value constituted *ultra vires* acts.").

   Courts have held that a "vague and conclusory statement" that the incentive

compensation plan in question was "administered by the Compensation Committee . . . does not

suggest in any way that the Compensation Committee was involved in or had knowledge of any

backdating."  *Desimone*, 924 A.2d at 938; *see also CNET*, 483 F. Supp. 2d at 954–55 (holding

that plaintiff's unsupported allegation that the three members of the company's compensation

committee backdated option grants did not show that demand on the company's six-member

board would have been futile).  Because Plaintiffs make only such vague and conclusory

statements, they have not adequately pled that Messrs. Akers and Macomber are interested based

on their Compensation Committee membership.

*  *  *

   In sum, Plaintiffs are not able to establish that a majority of Lehman's Board is

unable to disinterestedly consider a demand.  Plaintiffs do not set forth how the three Post-2002

Director Defendants are to have known of the alleged wrongdoing, and similarly, do not attribute

any knowledge to Mr. Kaufman.  With regard to the Audit and Compensation Committee

Defendants, Plaintiffs make only the broadest generalizations without any details to establish that

these directors are interested.  Such allegations are insufficient to impugn the Director

Defendants' disinterestedness under *Rales*.  Therefore, all nine of Lehman's outside Director

Defendants are able to *disinterestedly* consider a demand.

**C.    Plaintiffs Do Not Challenge the Independence of Any of the Director Defendants**

Plaintiffs also fail to plead that the Director Defendants are unable to *independently* consider a demand. *See Rales*, 634 A.2d at 935. In order "[t]o create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1052 (Del. 2004). For example, in the Chancery Court decision affirmed by *Beam*, the court found that a director who also served as president and chief operating officer of the company in question, was not able to independently consider a demand where a director already found to be interested had "the ability to affect [the first director's] employment and compensation." *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 833 A.2d 961, 978 (Del. Ch. 2003).

There are no such allegations in the Consolidated Complaint. Here, Plaintiffs generically allege that the Director Defendants are not able to independently consider a demand, without providing any specific allegations. For example, Plaintiffs claim that the Director Defendants "are hopelessly conflicted and are unable to make an independent determination on a demand," ¶ 104, and that "[d]emand is futile because half or more of the current members of the Lehman Board cannot be presumed to exercise independent judgment in assessing the merits of a demand due to their personal and financial interest in the subject matter of many of the claims raised in the Complaint," ¶ 111. But, there are no specific allegations regarding any of the Director Defendants. This type of generalized pleading does not meet the heightened level of scrutiny required by the demand futility analysis. *See, e.g.*, *Brehm*, 746 A.2d at 254 (noting that

21

derivative pleadings are subject to "stringent requirements of factual particularity that differ substantially from the permissive notice pleadings governed solely by . . . Rule 8(a)").

Because Plaintiffs have failed to set forth particularized allegations impugning either the disinterestedness or the independence of a majority of the Director Defendants, Plaintiffs have not established that a pre-suit demand would have been futile, and the Consolidated Complaint should be dismissed in its entirety. A summary of Plaintiffs' allegations as to why demand is futile and the reasons why the allegations fail is set forth in Appendix A.

## III. THE COURT SHOULD DISMISS THE CONSOLIDATED COMPLAINT AS TO GRANT DATES THAT OCCURRED BEFORE PLAINTIFFS PURPORTEDLY OWNED LEHMAN STOCK

Separate and apart from the demand futility analysis detailed above, the Consolidated Complaint should be dismissed as it relates to claims arising before Plaintiffs purportedly became Lehman shareholders. In order for a shareholder to maintain a derivative action, the complaint must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of." Fed. R. Civ. P. 23.1(b)(1); *see also In re Bank of N.Y. Derivative Litig.*, 320 F.3d 291, 298 (2d Cir. 2003) ("[I]n order to invoke derivative standing pursuant to Federal Rule of Civil Procedure 23.1 . . . , a plaintiff must have owned stock in the corporation *throughout* the course of the activities that constitute the *primary basis* of the complaint."). In the context of alleged backdating, courts have routinely held that "[a] derivative plaintiff has no standing to challenge option transactions that occurred prior to the time that plaintiff owned company stock." *VeriSign*, 2007 WL 2705221, at *24; *see also Desimone*, 924 A.2d at 927 ("[B]ecause Desimone did not buy Sycamore stock until February 2002, he lacks standing to challenge all of the options Grants that occurred before he became a Sycamore stockholder."); *Ryan ex rel. Maxim Integrated Prods. v. Gifford*, 918 A.2d 341, 359 (Del. Ch. 2007) ("[Plaintiff]

became a shareholder on April 11, 2001. . . .  Therefore, he lacks standing to assert claims arising before April 11, 2001.").

The Consolidated Complaint alleges that options granted on nine dates between January 1997 and July 2002 were backdated.  ¶ 73.  However, of the three Plaintiffs named in the Consolidated Complaint, two (Robert  L. Garber and the Saginaw Police & Fire Pension Board) claim to have continuously owned Lehman shares only since January 2007—long after all of the stock options at issue were granted.  ¶¶ 12–13.  The other named Plaintiff, IBEW, claims to have continuously owned shares only since October 19, 1999.  ¶ 14.  Despite these admissions, Plaintiffs surprisingly and misleadingly still claim that they "are and were owners of Lehman stock during times relevant to Defendants' wrongful course of conduct . . . and remain stockholders of the Company."  ¶ 102.  On the contrary, Federal Rule of Civil Procedure 23.1 requires that a derivative plaintiff own shares continuously from the date of the first alleged wrongdoing.  *See, e.g.*, *VeriSign*, 2007 WL 2705221.

At best, Plaintiffs can establish ownership of Lehman stock since October 19, 1999.  ¶ 14.  Therefore, all claims based on the three option grants that occurred prior to October 19, 1999, as well as the corporate disclosures and any other events relating thereto occurring prior to that date, must be dismissed for this independent reason.

## CONCLUSION

For the reasons set forth above, Lehman respectfully requests that the Court enter an order dismissing this action with prejudice and granting any other relief the Court deems appropriate.

Dated: New York, New York
March 4, 2008

SIMPSON THACHER & BARTLETT LLP

By: *Michael J. Chepiga*

Michael J. Chepiga
James G. Gamble
Eric M. Albert
Amanda G. Motsinger

425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
E-mail: mchepiga@stblaw.com

*Attorneys for Nominal Defendant*
*Lehman Brothers Holdings, Inc.*

24

**APPENDIX A**

| Outside Director(s) | Plaintiffs' Allegations as to Why Demand is Futile | Why Plaintiffs' Allegations Fail |
|---|---|---|
| Marsha Johnson Evans<br>Sir Christopher Gent<br>Roland A. Hernandez | Allegedly received backdated options and/or RSUs. ¶ 40.<br><br>Allegedly signed false financial disclosures. ¶ 104. | No particularized allegations as to timing of director options/RSUs; grants made only on scheduled dates.<br><br>No particularized allegations as to how or why directors would have known financial disclosures were false.<br><br>Joined Board after alleged wrongdoing occurred. |
| Henry Kaufman | Allegedly received backdated options and/or RSUs. ¶ 40.<br><br>Allegedly signed false financial disclosures. ¶ 104. | No particularized allegations as to timing of director options/RSUs; grants made only on scheduled dates.<br><br>No particularized allegations as to how or why directors would have known financial disclosures were false. |
| Michael L. Ainslie<br>Roger S. Berlind<br>Thomas H. Cruikshank | Allegedly received backdated options and/or RSUs. ¶ 40.<br><br>Allegedly signed false financial disclosures. ¶ 104.<br><br>Member of Audit Committee, 1997 to present. ¶ 61. | No particularized allegations as to timing of director options/RSUs; grants made only on scheduled dates.<br><br>No particularized allegations as to how or why directors would have known financial disclosures were false.<br><br>No particularized allegations that Audit Committee had notice of alleged accounting irregularities. |
| John F. Akers<br>John D. Macomber | Allegedly received backdated options and/or RSUs. ¶ 40.<br><br>Allegedly signed false financial disclosures. ¶ 104.<br><br>Member of Compensation Committee, 1997 to present. ¶ 56. | No particularized allegations as to timing of director options/RSUs; grants made only on scheduled dates.<br><br>No particularized allegations as to how or why directors would have known financial disclosures were false.<br><br>No particularized allegations imputing knowledge to Compensation Committee. |