# EXHIBIT C

USDC SDNY /August, 5.
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/07

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
LAURI COHEN BADER,

                 Plaintiff,

v.

MICHAEL AINSLIE, JOHN F. AKERS,
ROGER S. BERLIND, THOMAS H.
CRUIKSHANK, MARSHA JOHNSON
EVANS, RICHARD FULD, JR., SIR
CHRISTOPHER GENT, ROLAND A.
HERNANDEZ, HENRY KAUFMAN, JOHN
D. MACOMBER, and LEHMAN
BROTHERS HOLDINGS INC.,

                 Defendants.
-----------------------------------------------------------x

Civ. No. 06 CV 5884 (WHP)

SO OR_____:

_____
WIL_____ III U.S.D.J.

5/1/07

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement dated as of January 10, 2007 (the "Stipulation") is made and entered into by and among Plaintiff Lauri Cohen Bader ("Plaintiff") on behalf of herself and derivatively on behalf of Nominal Defendant Lehman Brothers Holdings Inc. ("Lehman"), and Defendants Michael Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Richard Fuld, Jr., Sir Christopher Gent, Roland A. Hernandez, Henry Kaufman, and John D. Macomber (collectively, the "Individual Defendants," and together with Nominal Defendant Lehman, the "Defendants"), by and through their counsel of record. This Stipulation is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims on and subject to the terms and conditions set forth herein.

## RECITALS

**WHEREAS,** on August 3, 2006, Plaintiff Lauri Cohen Bader commenced this action by filing a Verified Complaint in the United States District Court for the Southern District of New York, entitled *Bader v. Ainslie, et al.*, 06 CV 5884 (the "Action");

**WHEREAS,** the Action is brought derivatively by Lauri Cohen Bader (a Lehman stockholder) on behalf of Lehman against members of Lehman's board of directors;

**WHEREAS,** Plaintiff generally alleges that Lehman's proxy statements for 2002 through 2006 contained misstatements related to its executive compensation and purported to assert two causes of action – a claim under the Securities Exchange Act of 1934 and a claim under other, unspecified federal and state laws;

**WHEREAS,** Plaintiff did not seek money damages, but rather various types of equitable and injunctive relief;

**WHEREAS,** on September 20, 2006, Lehman sent a letter to the Court requesting a pre-motion conference on a motion to dismiss the Verified Complaint, which would be based on Plaintiff's failure to make a demand on Lehman's board of directors and failure to state a claim upon which relief could be granted;

**WHEREAS,** on September 26, 2006, Plaintiff sent a letter to the Court requesting a pre-motion conference on a motion for partial summary judgment on Plaintiff's claims that Lehman's 2006 proxy statement contained materially false or misleading statements, omitted material facts, and incorrectly estimated the value of unexercised options granted to certain Lehman executives;

2

**WHEREAS**, beginning in September 2006, the Parties began extensive settlement discussions in the Action and continued those discussions until reaching an agreement in principle on or about October 18, 2006 to settle the Action on the terms set forth herein;

**WHEREAS**, Plaintiff, through her counsel, has conducted a thorough factual and legal investigation (which investigation is continuing) relating to the claims alleged in the Complaint and reviewed Lehman's public filings, press releases and other public documents, which investigation has provided Plaintiff's counsel with an adequate and satisfactory basis for the evaluation of and agreement to the Settlement described herein;

**WHEREAS**, the Parties have engaged in substantial arm's length negotiations in an effort to resolve all derivative claims that have been or could have been asserted in this Action, including in-person meetings and numerous telephone conferences where the terms of the agreements detailed herein were extensively debated and negotiated;

**WHEREAS**, Plaintiff, through her counsel, has carefully considered and evaluated, *inter alia*, the relevant legal authorities and evidence to support the claims asserted against the Defendants, the likelihood of prevailing on those claims, and the likely appeals and subsequent proceedings necessary if Plaintiff did prevail against the Defendants, and has concluded that the Settlement set forth herein is in the best interests of Lehman;

**WHEREAS**, the Defendants have denied and continue to deny each and every allegation of liability and wrongdoing on their part and assert that the claims asserted against them are without merit and fail to state a cause of action; deny that they breached any duty, violated any law or engaged in wrongdoing in any form; and believe that they have strong factual and legal defenses to all claims alleged. The Defendants have agreed to this Stipulation and the

3

Settlement provided herein solely in order to fully and finally settle and dispose of all claims that have been or could have been raised in the Action; and

**WHEREAS**, the Parties and their counsel believe that the terms and conditions contained in this Stipulation are fair, reasonable and adequate, and in the best interests of Lehman;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and among the Parties that, subject to approval of the Court and the satisfaction of the conditions of the Settlement as set forth herein, each of the Released Claims (as hereinafter defined) shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of this Stipulation as follows:

1.  **DEFINITIONS**

    As used in this Stipulation, the following terms shall have the meanings specified below:

    1.1   "Complaint" means the Verified Complaint filed by Plaintiff Lauri Cohen Bader in the Action.

    1.2.  "Court" means the United States District Court for the Southern District of New York.

    1.3.  "Defendants" means the Individual Defendants and Lehman.

    1.4.  "Defendants' Counsel" means Michael J. Chepiga, James G. Gamble, Jessica A. Murzyn and Simpson Thacher & Bartlett LLP (counsel to Lehman).

    1.5.  "Effective Date" means the date of completion of the following: (a) entry of an Order and Final Judgment substantially in the form of the proposed order submitted contemporaneously herewith, which approves in all material respects: (1) the dismissal of the

claims that have been made in this Action and (2) the releases provided for in the Stipulation; and (b) either (1) expiration of the time to appeal or otherwise seek review of the Order and Final Judgment which approves, in all material respects, the settlement of this Action as provided herein, without any appeal having been taken or review sought, or (2) if an appeal is taken or review sought, the expiration of five (5) days after an appeal or review shall have been dismissed or finally determined by the highest court before which such appeal or review is sought and which affirms the material terms of such appealed settlement and/or Order and Final Judgment and is not subject to further judicial review.

1.6. "Final" means no longer subject to review upon appeal or review in connection with a Petition for Writ of Certiorari or other similar writ, whether by exhaustion of any possible appeal, lapse of time or otherwise.

1.7. "Notice" means the Notice of Pendency and Settlement of Derivative Action, substantially in the form submitted contemporaneously herewith.

1.8. "Order and Final Judgment" means an order and final judgment substantially in the form of submitted contemporaneously herewith.

1.9. "Person" means a natural person, individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint venture, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and any spouse, heir, legatee, executor, administrator, predecessor, successor, representative or assign of any of the foregoing.

1.10. "Plaintiff" means Lauri Cohen Bader and her heirs, executors, administrators, successors and assigns.

5

1.11. "Plaintiff's Counsel" means A. Arnold Gershon, Gloria Kui, and Barrack, Rodos & Bacine.

1.12. "Preliminary Order" means an order substantially in the form of the Preliminary Order Approving Settlement and Notice submitted contemporaneously herewith.

1.13. "Related Persons" means, with respect to any Person, such Person's present and former parent entities, subsidiaries (direct or indirect) and affiliates, and each of their respective present and former shareholders, general partners, limited partners, affiliates, divisions, joint ventures, partnerships, officers, directors, employees, agents, representatives, attorneys, insurers, excess insurers, experts, advisors, investment advisors, underwriters, fiduciaries, trustees, auditors, accountants, representatives, spouses and immediate family members, and the predecessors, heirs, legatees, successors, assigns, agents, executors, devisees, personal representatives, attorneys, advisors and administrators of any of them, and the predecessors, successors, and assigns of each of the foregoing, and any other Person in which any such Person has or had a controlling interest or which is or was related to or affiliated with such Person, and any trust of which such Person is the settler or which is for the benefit of such Person or member(s) of his or her family.

1.14. "Released Claims" means any statutory or common law claims, rights, demands, suits, matters, issues or causes of action under federal, state, local, foreign law, or any other law, rule or regulation that were, could have been, or might have been asserted against the Released Parties by Plaintiff or any other holder of Lehman securities, derivatively on behalf of Lehman or any of Lehman's Related Persons, in any court of competent jurisdiction or any other adjudicatory tribunal, in connection with, arising out of, related to, based upon, in whole or in part, directly or indirectly, in any way, the facts, transactions, events, occurrences, acts,

6

disclosures, oral or written statements, representations, filings, publications, disseminations, press releases, presentations, accounting practices or procedures, omissions or failures to act which were or which could have been alleged in this Action. The "Released Claims" include but are not limited to, any and all claims for injunctive relief, corrective disclosure, damages, penalties, disgorgement, restitution, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liability whatsoever, whether based on federal, state, local, foreign, statutory, common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-liquidated, at law or in equity, matured or un-matured, including both known claims and unknown claims that were or that could have been alleged in the Action.

1.15. "Released Parties" means the Defendants and their Related Persons.

1.16. "Settlement" means the settlement and compromise of the Action as provided for herein.

1.17. "Settlement Hearing" means the hearing or hearings at which the Court will review the adequacy, fairness and reasonableness of the settlement.

1.18. "Stipulation" means this Stipulation of Settlement.

2. SETTLEMENT OF ACTION

2.1 <u>Defendants' Denial of Liability.</u> The Defendants have denied, and continue to deny, that they have any liability as a result of any and all allegations that have been or could have been made in the Action. The Defendants are entering into the Settlement in order to dispose of this matter and to eliminate the burden, distraction, expense and uncertainty of further litigation.

2.2. <u>Reliance Upon Own Knowledge.</u> Plaintiff expressly represents and warrants that, in entering into the Settlement, she relied upon her own knowledge and investigation (including the knowledge of and investigation performed by counsel), and not upon any promise, representation, warranty or other statement made by or on behalf of any of the Defendants or their Related Persons not expressly contained in this Stipulation.

2.3. <u>Additional Disclosures.</u> Defendants will cause Lehman to make, or have already caused Lehman to make, the following disclosures its Proxy Statement in connection with its 2007 Annual Meeting of Stockholders (the "2007 Proxy") and in the circumstances discussed in the specific paragraphs below, in proxy statements issued in connection with annual meetings of stockholders in subsequent years ("Post-2007 Proxy Statements") regarding its executive compensation plan:

    A. Prior year disclosures regarding the Black-Scholes option pricing model stating "The model is premised on immediate exercisability and transferability of the options, neither of which was true for the options granted to the named executive officers at the time of grant" will not be included in the 2007 Proxy, which will instead include a statement similar in substance to the following: "The options granted to the named executive officers were not immediately exercisable or transferable at the time of grant." Post-2007 Proxy Statements shall contain substantially similar disclosure language unless: (i) Lehman ceases to use the Black-Scholes option pricing model; (ii) there are other changes in the factual circumstances relating to Lehman's executive compensation plans that would render such language inaccurate or misleading; or (iii) changes in applicable law or regulation would render such disclosure unnecessary or inappropriate.

8

B. With respect to both the expected life applied and any discounting of the option value based on particular characteristics, the expected life and any discount will be the same for purposes of the 2007 Proxy as those used for purposes of the published, audited financial statements for the fiscal year 2006. Post-2007 Proxy Statements shall conform to this agreement unless: (i) there are changes in the factual circumstances relating to Lehman's executive compensation plans that would render such language inaccurate or misleading; or (ii) changes in applicable law or regulation would render such disclosure unnecessary or inappropriate.

C. To the extent that valuation assumptions used in the 2007 Proxy differ materially from those in prior year disclosures, the 2007 Proxy will provide an explanation as to the effect of the changes.

D. Prior year disclosures regarding the values presented for the options stating "These hypothetical present values are presented pursuant to SEC rules even though there is no assurance that such values will ever be realized" will not be included in the 2007 Proxy, which will instead include a statement similar in substance to the following: "The Black-Scholes model is used to determine the cost of the options to the Company as of the grant date, which is reported in its financial statements and is reported in its proxy statements and referred to therein as the "Grant Date Present Value." The amount actually realized upon exercise by the individual receiving the options may be greater or less than the reported Grant Date Present Value. There is no out-of-pocket cost to the company for the grant of the options, but there is an accounting expense which is generally realized

9

during the fiscal years in which the individual is required to provide service in exchange for the grant." Post-2007 Proxy Statements shall contain substantially similar disclosure language unless: (i) Lehman ceases to use the Black-Scholes option pricing model; (ii) there are other changes in the factual circumstances relating to Lehman's executive compensation plans that would render such language inaccurate or misleading; or (iii) changes in applicable law or regulation would render such disclosure unnecessary or inappropriate.

2.4    Option Pricing Model Review. Defendants agree to cause Lehman to review the decision to report their Grant Date Present Value based on the Black-Scholes option pricing model instead of a lattice, or binomial, option pricing model and to consult with its appropriate advisers regarding the preferred valuation methodolodgy.

2.5.    Notice. Defendants shall be responsible for the cost of printing and mailing appropriate court-directed individual notice to the shareholders of Lehman entitled to receive such notice, substantially in the form of the Notice Of Proposed Settlement Of Stockholder Derivative Action And Settlement Hearing submitted contemporaneously herewith, and also shall be responsible for any other court directed notice to be made by publication.

2.6.    Attorneys Fees and Expenses. Defendants acknowledge that Plaintiff's counsel has a claim for attorneys' fees and reimbursement of expenses in this Action based upon the benefits which the Settlement has and will provide to Lehman, and that, rather than burdening the Court by litigating this issue, Plaintiff and Defendants (after negotiating the other elements of the Settlement) agreed that, subject to Court approval of the Settlement, Defendants will cause to be paid to Plaintiff's Counsel the sum of $500,000 in settlement of this claim for attorneys' fees and expenses. Defendants agree to cooperate to the extent reasonably necessary to effectuate

10

and implement this term, and all other terms, of the Settlement both at the trial court and on any appeal. The payment of this $500,000 amount in settlement of this claim for attorneys' fees and expenses will be made by or on behalf of Defendants within ten (10) business days of the Effective Date. At the time the fees are paid, they shall be paid by check made payable to Barrack, Rodos & Bacine. In the event that the Court purports to modify this term of the Parties' Settlement, Defendants shall comply with such modification and all other terms of this Stipulation shall remain in full force and effect.

2.7. <u>Releases.</u> Upon the Effective Date, Plaintiff on behalf of Lehman and all other stockholders of Lehman during the time of the events alleged in the Complaint will release all Released Claims against the Released Parties. Plaintiff will also release all claims against Defendants' Counsel related to the defense of this Action. The Defendants shall also release any claims they may have against Plaintiff and Plaintiff's Counsel related to their bringing and prosecuting the Action.

2.8. <u>Unknown Claims.</u> The Releases in paragraph 2.7 above shall apply to all claims, including unknown claims, and the Settling Parties and their counsel agree to waive the benefits of Section 1542 of the California Code of Civil Procedure (and the benefits of any other law (including any principle of common law) of any state or territory or other jurisdiction of the United States or of any jurisdiction outside of the United States that is similar, comparable or equivalent to Section 1542 of the California Code of Civil Procedure), which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his favor at the time of executing
> the release, which if known by him must have materially affected
> his settlement with the debtor.

11

3. **PRELIMINARY ORDER AND SETTLEMENT HEARING**

   3.1. <u>Application for Preliminary Order.</u> The Parties shall jointly submit this Stipulation together with its related documents to the Court and the Parties shall apply for an order (the "Preliminary Order") by filing proper notice and supporting papers with the Court on or before January 10, 2007:

   (a) Approving the form of the Notice of Pendency and Settlement of Derivative Action (the "Notice") substantially in the form of the notice submitted contemporaneously herewith;

   (b) Setting forth the method for providing notice to Lehman stockholders of the Settlement and Settlement Hearing;

   (c) Finding that the methods of providing notice set forth in the Preliminary Order constitute the best notice practicable under the circumstances and meet all requirements of Federal Rule of Civil Procedure 23.1 and due process; and

   (d) Setting a date for the Settlement Hearing on a date prior to the distribution of the 2007 Proxy Statement to determine whether the Settlement should be approved as reasonable, adequate and in the best interests of Lehman.

4. **EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION**

   4.1 The effectiveness of the Settlement shall be expressly conditioned upon the entry by the Court of an Order and Final Judgment substantially in the form of the [Proposed] Final Order and Judgment submitted contemporaneously herewith and such Order and Final Judgment having become Final without material modification on reargument or appeal.

   4.2 If the condition identified in paragraph 4.1 fails to occur, then any of Parties may terminate the Stipulation and withdraw from the Settlement by providing written notice of such action to undersigned counsel for all of the Parties within thirty (30) days after the failure of such condition. In the event that the Settlement is not approved or is terminated, the proposed Settlement and any actions taken in connection therewith shall be vacated and terminated and

shall become null and void for all purposes, and all negotiations, transactions, and proceedings connected with it: (i) shall be without prejudice to the rights of any Party hereto; (ii) shall not be deemed to be or construed as evidence of, or an admission by any Party of, any fact, matter, or thing; and (iii) shall not be admissible in evidence or be used for any purpose in any subsequent proceedings in the Action or any other action or proceeding. The Parties to this Stipulation shall be deemed to have reverted to their respective status in the Action as of the date and time immediately prior to the execution of this Stipulation, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Stipulation and any related Orders had not been entered.

5. **MISCELLANEOUS PROVISIONS.**

   5.1. <u>Cooperation of the Parties.</u> The Parties (a) acknowledge that it is their intent to consummate this Settlement and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable efforts to accomplish the foregoing terms and conditions of this Stipulation. The Parties will seek the Court's approval of the Preliminary Order and, when appropriate, the Final Order and Judgment.

   5.2. <u>Acknowledgment of Adequate Consideration.</u> The Parties acknowledge, represent and warrant to each other that the terms of this Settlement are such that each of the Parties is to receive adequate consideration for the consideration given.

   5.3. <u>No Admissions.</u> Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of the validity or lack of validity of any Released Claim, or any wrongdoing or liability of the Parties or

any of their Related Persons; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Parties or any of their Related Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; or (c) is or may be alleged or mentioned so as to contravene clause (a) above in any litigation or other action unrelated to the enforcement of this Stipulation. Notwithstanding the foregoing, the Parties may file this Stipulation or any judgment or order of the Court related hereto in any action that may be brought against them in order to support a defense or a counterclaim based on res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

    5.4.    <u>Confidentiality Agreements.</u> All agreements made during the course of the negotiations relating to the confidentiality of information shall survive this Stipulation and the Settlement.

    5.5.    <u>Costs.</u> Except as otherwise expressly provided herein, the Parties shall bear their own costs.

    5.6.    <u>Entire Agreement.</u> This Stipulation and all documents executed pursuant hereto constitute the entire agreement between the Parties with respect to the settlement of the Action and supersede any and all prior negotiations, discussions, agreements or undertakings, whether oral or written, with respect to the settlement of the Action.

    5.7.    <u>Counterparts.</u> This Stipulation may be executed in one or more counterparts and all such counterparts together shall be deemed to be one and the same instrument.

    5.8.    <u>Binding Effect.</u> This Stipulation shall be binding upon, and inure to the benefit of all Parties. This Stipulation is not intended, and shall not be construed, to create rights in or confer benefits on any other Persons, and there shall not be any third party beneficiaries hereto

except as expressly provided hereby with respect to such aforementioned Persons who are not Parties hereto.

5.9. <u>Judicial Enforcement.</u> The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Stipulation and the Settlement, and the Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of the Stipulation and Settlement.

5.10. <u>Choice of Law.</u> This Stipulation shall be governed by the laws of the State of Delaware, excluding its choice of law provisions.

5.11. <u>Warrant of Authority.</u> Each counsel or person executing the Stipulation or any of the related documents on behalf of any Party hereto hereby warrants that such Person has the full authority to do so.

5.12. <u>Waiver of Breach.</u> The Parties may not waive or vary any right hereunder except by an express written waiver or variation. Any failure to exercise or any delay in exercising any of such rights, or any partial or defective exercise of such rights, shall not operate as a waiver or variation of that or any other such right. The waiver by one Party of any breach of this Stipulation by another Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

5.13. <u>Fair Construction.</u> This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

15

5.14. <u>No Assignment of Claims.</u> Plaintiff hereby represents and warrants that she has not assigned any rights, claims or causes of action that were asserted or could have been asserted in connection with, under or arising out of any of the claims being settled or released herein.

5.15. <u>Facsimile Signatures.</u> Any signature to this Stipulation, to the extent signed and delivered by means of a facsimile machine, shall be treated in all manner and respects as an original signature and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of a Party to this Stipulation, any other Party to this Stipulation so executing and delivering this document by means of a facsimile machine shall reexecute original forms thereof and deliver them to the requesting Party. No Party to this Stipulation shall raise the use of a facsimile machine to deliver a signature or the fact that any signature or agreement was transmitted or communicated through the use of a facsimile machine as a defense to the formation or the enforceability of this Stipulation and each such Person forever waives any such defense.

5.16. <u>Extensions of Time.</u> Without further order of the Court, the Parties hereto may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

The Parties have caused this Stipulation to be duly executed and delivered by their counsel of record:

BARRACK, RODOS & BACINE                Date: *Jan. 10, 2007*

*[signature]*

Alexander Arnold Gershon (AG 3809)
Gloria Kui (GK 5661)
1350 Broadway, Suite 1001
New York, New York 10018
Telephone: (212) 688-0782

*Of Counsel:*
Daniel E. Bacine
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
Phone: (215) 963-0600
Fax: (215) 963-0838

*Attorneys for Plaintiff*

SIMPSON THACHER & BARTLETT LLP

*[signature]*

Michael J. Chepiga (MC 4168)         Date: 1/10/07
James G. Gamble (JG 6286)
Jessica A. Murzyn (JM 7805)
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000

*Attorneys for Defendants*          **SO ORDERED:**

_____
U.S.D.J.

17