UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE LEHMAN BROTHERS HOLDINGS, INC.
DERIVATIVE LITIGATION

ECF Case
Case No. 07-cv-2990 (DAB)

**MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL
DEFENDANTS' MOTION TO DISMISS THE VERIFIED
CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile:  (212) 808-7897

*Attorneys for Individual Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

SUMMARY OF ALLEGED FACTS ............................................................................. 3

ARGUMENT .................................................................................................................. 5

I.      PLAINTIFFS LACK STANDING TO ASSERT CLAIMS ARISING FROM OR
        RELATED TO OPTIONS GRANTED BEFORE THEY OWNED LEHMAN
        STOCK ............................................................................................................... 5

II.     PLAINTIFFS' CLAIMS SHOULD ALSO BE DISMISSED FOR FAILURE TO
        SATISFY THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(b) AND
        FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P.
        12(b)(6) ............................................................................................................. 7

        A.      Plaintiffs Fail To Allege Any Facts To Support Any Claims Based On The
                Issuance Of Restricted Stock Units ("RSU's") ...................................... 9

        B.      Plaintiffs' Allegations Supporting All Other Claims Fail To Meet The
                Particularity Requirements Of Rule 9(b) ........................................... 10

        C.      Plaintiffs Fail To State A Claim For Misrepresentation Or Fraudulent
                Concealment ....................................................................................... 18

        D.      Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty ........................ 19

                1.      Plaintiffs Do Not State A Claim For Breach Of The Duty Of
                        Loyalty ................................................................................... 20

                2.      Plaintiffs Do Not State A Claim For Breach Of The Duty Of Care ........ 21

        E.      Plaintiffs Fail To State A Claim For Gross Mismanagement And
                Misappropriation Or Waste Of Corporate Assets ................................ 23

        F.      Plaintiffs' Unjust Enrichment And *Ultra Vires* Claims Should Be
                Dismissed ............................................................................................ 24

III.    PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF
        LIMITATIONS ................................................................................................ 25

CONCLUSION ............................................................................................................ 27

# TABLE OF AUTHORITIES

**Page**

## CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................................17

*Amfesco Indus., Inc. v. Greenblatt*,
  172 A.D.2d 261, 568 N.Y.S.2d 593 (N.Y. App. Div. 1991) ...................................................24

*Bankers Nat'l Corp. v. Barr*, 7 F.R.D. 305 (S.D.N.Y. 1945) .........................................................6

*Bell Atlantic v. Twombly*, __ U.S. __, 127 S. Ct. 1955 (2007) ........................................................7

*CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*,
  No. 03 Civ. 7936 (DAB), 2007 WL 2915181 (S.D.N.Y. Oct. 3, 2007) ...................................7

*Certainteed Corp. v. Celotex Corp.*, No. Civ.A. 471,
  2005 WL 217032 (Del. Ch. Jan. 24, 2005) ...............................................................................26

*Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004) ...............................................................................23

*Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989) ...........................................................................8

*Crescent/Machine I Partners, L.P. v. Turner*, 846 A.2d 963 (Del. Ch. 2000) .............................22

*Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982) ....................................................14

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) ........................................................7, 12, 14

*DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242 (2d Cir. 1987) ...............................9

*Duncan v. Pencer*, No. 94 Civ. 0321 (LAP),
  1996 WL 19043 (S.D.N.Y. Jan. 18, 1996) ...............................................................................15

*Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618 (S.D.N.Y. 2004)................................16

*Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759 (S.D.N.Y. 2006)........................................................15

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ...........................................................19, 20, 21

*Halpern v. Barran*, 313 A.2d 139 (Del. Ch. 1973).......................................................................26

*Highland Legacy Ltd. v. Singer*, No. Civ.A. 1566-N,
  2006 WL 741939 (Del. Ch. Mar. 17, 2006)..............................................................................24

*In re BP P.L.C. Deriv. Litig.*, 507 F. Supp. 2d 302 (S.D.N.Y. 2007) ...............................................6

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ...................................20, 21

*In re Dean Witter Partnership Litig.*, No. Civ. A. 14816,
    1998 WL 442456 (Del. Ch. July 17, 1998)........................................................................25, 26

*In re Ditech Networks, Inc. Deriv. Litig.*,
    No. C 06-5157 JF, 2007 WL 2070300 (N.D. Cal. July 16, 2007) .........................8, 13, 17, 25

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
    No. 97 Civ. 1865 (HB), 1998 WL 283286 (S.D.N.Y. June 1, 1998).......................................14

*In re New Valley Corp. Deriv. Litig.*, No. C.A. 17649-NC,
    2004 WL 1700530 (Del. Ch. May 12, 2004) ...........................................................................6

*In re Openwave Sys. Sec. Litig.*, No. 07 Civ. 1309 (DLC),
    2007 WL 3224584 (S.D.N.Y. Oct. 31, 2007) ...................................................................12, 17

*In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041 (DLC),
    2000 WL 1234601 (S.D.N.Y. Aug 31, 2000) ..........................................................................14

*In re Verisign Inc., Deriv. Litig.*, No. C. 06-4165 PJH,
    2007 WL 2705221 (N.D. Cal. Sept. 14, 2007) .................................................................12, 16

*In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693 (Del. Ch. 2005).........................................19

*In re Wheelabrator Techs., Inc. S'holders Litig.*, C.A. No. 11495,
    1992 WL 212595 (Del. Ch. Sept. 1, 1992) .............................................................................23

*In re WorldCom, Inc. Sec. Litig.*, 336 F. Supp. 2d 310 (S.D.N.Y. 2004) .................................15

*In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986 (N.D. Cal. 2007).................................7, 25

*Layton v. Allen*, 246 A.2d 794 (Del. 1968) ...............................................................................18

*Lewis v. Anderson*, 477 A.2d 1040 (Del. 1984) ...........................................................................6

*Malpiede v. Townson*, 780 A.2d 1075 (Del. 2001) ...............................................................22, 23

*Manzo v. Rite Aid Corp.*, No. Civ. A. 18451-NC,
    2002 WL 31926606 (Del. Ch. Sept. 6, 2002) ........................................................................18

*McMillan v. Intercargo Corp.*, 768 A.2d 492 (Del. Ch. 2000)...................................................23

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir.1993).................................................8, 14

*O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674 (2d Cir. 1991) .......................................9

*PPI Enterprises (U.S.) Inc. v. Del Monte Foods Co.*,
    No. 99 Civ. 3794 (BSJ), 2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003).................................6

*Primavera Familienstiftung v. Askin*, 173 F.R.D. 115 (S.D.N.Y. 1997) ......................................16

*Rahl v. Bande*, 328 B.R. 387 (S.D.N.Y. 2005) ............................................................................7

*Rattner v. Bidzos*, No. Civ.A. 19700, 2003 WL 22284323 (Del. Ch. Oct. 7, 2003) ...................21

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) .........................................................................7

*Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007).......................................................................6, 7

*Sample v. Morgan*, 914 A.2d 647 (Del. Ch. 2007) ....................................................................24

*Seybold v. Groenink*, No. 06 Civ. 772 (DLC),
    2007 WL 737502 (S.D.N.Y. March 12, 2007) ......................................................................6

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ...........................................14, 17

*State of Sao Paolo of Federative Republic of Brazil v. America Tobacco Co.*,
    919 A.2d 1116 (Del. 2007) .................................................................................................24

*Steamfitters Loc. Union No. 420 Welfare Fund v. Phillip Morris, Inc.*,
    171 F.3d 912 (3d Cir. 1999)................................................................................................24

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) ...........................................................................19, 20

*Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415 (S.D.N.Y. 1978).............................................8

*Tomczak v. Morton Thiokol, Inc.*, Civ. A. No. 7861,
    1990 WL 42607 (Del. Ch. Apr. 5, 1990) .............................................................................22

*Travelers Indemnity Co. of Illinois v. CDL Hotels USA, Inc.*,
    322 F. Supp. 2d 482 (S.D.N.Y. 2004)....................................................................................9

*Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v.
    De-Con Mech. Contractors, Inc.*, 896 F. Supp. 342 (S.D.N.Y. 1995)....................................9

*White v. Panic*, 783 A.2d 543 (Del. 2001)................................................................................24

*York Linings v. Roach*, No. 16622-NC, 1999 WL 608850 (Del. Ch. July 28, 1999) ..................23

## STATUTES

8 Del. C. § 102(b)(7)................................................................................................22

8 Del. C. § 327........................................................................................................6

10 Del. C. § 8106....................................................................................................25

## RULES

Del. Ch. Ct. R. 23.1 ...............................................................................................6

Fed. R. Civ. P. 8(a)(2).............................................................................................10

Fed. R. Civ. P. 9(b) .......................................................................................... passim

Fed. R. Civ. P. 23.1 ...............................................................................................5

Fed. R. Evid. 201(b)(2)............................................................................................23

## OTHER AUTHORITY

Restatement (Second) of Conflict of Laws § 309.................................................6

Defendants Richard S. Fuld, Jr., Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Roland A. Hernandez, John D. Macomber, Jeremy Isaacs, Bradley H. Jack, Henry Kaufman, Michael F. McKeever, Dina Merrill, Jeffrey Vanderbeek, Jonathan Beyman, John L. Cecil, David Goldfarb, Joseph M. Gregory, Christopher O'Meara, and Thomas A. Russo (collectively the "Individual Defendants"), by and through their attorneys Kelley Drye & Warren LLP, submit this memorandum of law, together with the Declaration of John M. Callagy, dated March 4, 2008, in support of their motion to dismiss with prejudice Plaintiffs' Verified Consolidated Shareholder Derivative Complaint (the "Complaint").

## PRELIMINARY STATEMENT

Without having made the requisite pre-suit demand on Nominal Defendant Lehman Brothers Holdings, Inc. ("Lehman" or the "Company"),[1] Plaintiffs Robert L. Garber ("Garber"), the Saginaw Police & Fire Pension Board ("Saginaw"), and the International Brotherhood of Electrical Workers Local No. 38 Pension Fund ("IBEW") (collectively "Plaintiffs") seek to assert derivative claims on behalf of Lehman related to alleged backdating of stock option grants. Armed with nothing more than conjecture that the timing of these grants reveal "statistical anomalies," Plaintiffs raced to the courthouse, indiscriminately charging all of Lehman's officers and directors during the relevant time period with wrongdoing, and claiming hypothetical damages that the Company has yet to, and arguably will never, incur. Plaintiffs point to nine grant dates from 1997 through 2002 and conclude that, because these grants were

---

[1]     Plaintiffs admit that they did not make a demand on the Company's board to prosecute this action, claiming this would have been futile. (Compl. ¶ 95.) The Individual Defendants hereby join in Lehman's March 4, 2008 motion to dismiss based on, *inter alia,* Plaintiffs' failure to have made such a demand and incorporate by reference the statements, arguments and authorities set forth therein.

issued on dates that coincided with monthly trading lows or near-lows, backdating must have occurred.

The Complaint asserts common law claims against the Individual Defendants, who are current and former officers and directors of the Company, for alleged *ultra vires* acts, breaches of fiduciary duty, gross mismanagement, misappropriation and/or waste of corporate assets, unjust enrichment, and misrepresentation/fraudulent concealment. Plaintiffs' claims are premised solely upon boilerplate and conclusory allegations about the Individual Defendants' supposed participation in, or knowledge or oversight of, the granting of these options, and their issuance of financials allegedly containing misstatements related to the grants.

As a threshold matter, Plaintiffs lack standing to bring claims for alleged actionable transactions that occurred prior to the date(s) when they became shareholders. Thus, Plaintiffs Saginaw and Garber lack standing to bring *any* of the claims asserted in the Complaint and their claims should be dismissed. All of Plaintiff IBEW's claims related to options granted prior to October 19, 1999—the date IBEW first purchased Lehman stock—should also be dismissed.

Moreover, this purports to be a fraud case. The underpinnings of Plaintiffs' fiduciary duty, mismanagement, misappropriation/waste and misrepresentation and concealment claims are an alleged fraudulent backdating scheme and a subsequent series of alleged fraudulent misrepresentations made to conceal the backdating. Plaintiffs' claims, to the extent they have standing to bring them, are therefore subject to the strict pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. But Plaintiffs fail to plead any facts setting forth any of the Individual Defendants' role in, or knowledge of, the alleged backdating of options or filing of false financial statements. Accordingly, the Complaint should be dismissed.

Plaintiffs' Complaint suffers from additional infirmities which also require dismissal. First, Plaintiffs' breach of fiduciary duty, and subsidiary gross mismanagement and misappropriation/waste claims should be dismissed because (a) the Director Defendants are statutorily and contractually immune from liability for duty of care violations; and (b) Plaintiffs have otherwise failed to plead facts sufficient to pursue breach of duty claims against any of the Individual Defendants. Second, Plaintiffs' equitable claims based on the Individual Defendants' unjust enrichment and their alleged *ultra vires* activities fail because Plaintiffs have not alleged facts sufficient to support even the traditional tort claims for which Plaintiffs seek to recover. Finally, Plaintiffs' claims are barred by the applicable three-year statute of limitations. The most recent of the allegedly backdated grants was made in 2002, more than five years before Plaintiffs commenced suit, and Plaintiffs' tolling argument is unsupported by specific factual allegations needed to sustain it.

## SUMMARY OF ALLEGED FACTS

Defendant Lehman is a Delaware corporation that "offers an array of equities and fixed income sales, trading, and research, investment banking services, and investment management and advisory services." (Compl. ¶ 15.) Individual Defendants Fuld, Gregory, Isaacs, Russo, Vanderbeek, O'Meara, Jack, Cecil and Goldfarb (the "Officer Defendants") are current and former officers of Lehman (Compl. ¶¶ 19-27), while Individual Defendants Ainslie, Akers, Berlind, Cruikshank, Kaufman, Macomber, Evans, Gent, Hernandez and Merrill (the "Director Defendants") are current and former directors of the Company.[2] (Compl. ¶¶ 30-39.)

---

[2]    Individual Defendant McKeever is named as a defendant in Paragraph 1 and is referred to in the charts on pp. 31-35 of the Complaint, but he is not identified as an officer or director, and is never otherwise discussed in the Complaint. Individual Defendant Beyman is also named as a defendant in Paragraph 1 of the Complaint, but again, is not identified as either an officer or director and is not otherwise discussed in the Complaint. All claims against Individual Defendants McKeever and Beyman should therefore be dismissed.

Defendant Fuld has served as Chairman of the Lehman Board of Directors since 1994.  (Compl. ¶ 19.)  While Plaintiffs have generally claimed that "more than half of the Director Defendants" received option grants (Compl. ¶ 40), no facts are alleged showing that any of the Director Defendants received options on any of the nine highlighted dates (the "Grant Dates"),[3] or on any other dates.  (Compl. ¶¶ 19, 75-83.)  It is also alleged, in large measure without relevance, that many of the Individual Defendants served on the Company's Audit, Compensation, Governance and Executive Committees at various times from 1997 through 2007.  (Compl. ¶¶ 19-27, 30-39, 56, 61, 69, 71.)

The Complaint alleges that Lehman's Compensation Committee, which, during the relevant time period, was composed exclusively of Defendants Akers, Macomber and Merrill (Compl. ¶ 56), was the only Board Committee charged with awarding stock option grants, specifically on the nine highlighted Grant Dates (Compl. ¶ 73), to some or all of the Officer Defendants.  (Compl. ¶¶ 75-83.)  Plaintiffs have attached to the Complaint the option plan document which sets forth the duties of the Compensation Committee in administering the plan. (Compl. Ex. A.)

Plaintiffs allege that the Grant Dates were not the actual dates on which the Compensation Committee made each of the stock option awards.  According to Plaintiffs, "[t]he stock option grants were back-dated in order to have the stock options issued at an exercise or 'strike' price below the closing price of the shares at the true time of the grant" (Compl. ¶ 4), and such selective dating awarded the recipient executives "hundreds of millions of dollars in unlawful windfall" compensation "at the expense of the Company" (Compl. ¶¶ 3, 4).  Options

---

[3]    The Grant Dates are January 8, 1997, December 11, 1997, December 14, 1998, December 1, 1999, February 18, 2000, December 1, 2000, September 20, 2001, December 3, 2001 and July 23, 2002.  (Compl. ¶ 73.)  The chart attached hereto as Appendix A sets forth which Individual Defendants are alleged to have received options and on which Grant Dates.

backdating also allegedly "exposed" Lehman to heightened tax and civil/criminal liability (Compl. ¶¶ 4, 6), though Plaintiffs do not allege that Lehman has actually incurred any such liability.

Plaintiffs rely solely on their recent analysis of Lehman's stock option grants which they believe reveals a "highly improbable statistical anomaly." (Compl. ¶ 10.) Plaintiffs allege that "all but one of the grants was dated on the date when Lehman's stock price was trading at its lowest or second lowest point during the entire month," which, according to Plaintiffs, has a more than 18 billion to one chance of occurring randomly. (Compl. ¶ 10.)

Plaintiffs' Complaint asserts six common law causes of action against the Individual Defendants. All arise from either the Individual Defendants' alleged receipt of backdated option grants or active participation in the alleged backdating practice and subsequent issuance of alleged false and misleading statements and/or disregard of and/or failure to discover such alleged wrongful acts or omissions—the so-called oversight claim. In support of their oversight claim, Plaintiffs seek to charge some or all of the Individual Defendants with liability merely "[b]y reason of their positions as directors, officers and/or fiduciaries of Lehman and because of their ability and responsibility to control and/or monitor and oversee the business." (*See* Compl. ¶ 48; *see also* ¶¶ 28, 40.)

<u>**ARGUMENT**</u>

**I.    PLAINTIFFS LACK STANDING TO ASSERT CLAIMS ARISING FROM OR RELATED TO OPTIONS GRANTED BEFORE THEY OWNED LEHMAN STOCK**

To bring a derivative claim, Plaintiffs must allege that they were shareholders "*at the time of the transaction complained of . . . .*" FED. R. CIV. P. 23.1 (emphasis added); *see also*

DEL. CH. CT. R. 23.1; 8 DEL. C. § 327.[4]  But Plaintiff Saginaw first purchased Lehman stock on January 12, 2007, and, therefore, did not hold stock of Lehman on any of the Grant Dates. (Compl. ¶ 13.)  Accordingly, Saginaw lacks standing to bring any claims.  *See Ryan v. Gifford*, 918 A.2d 341, 359 (Del. Ch. 2007) ("The law here is settled.  Plaintiff may not assert claims arising before his ownership interest materialized . . . .").

Garber first purchased Lehman stock on November 8, 2001 (Compl. ¶¶ 12), so he similarly has no standing to bring claims based on the seven Grant Dates that pre-dated his first purchase.  However, Garber also suffers from an additional standing defect:  he fails to satisfy Delaware's "continuous ownership" requirement, under which a plaintiff must also establish that he owned stock continuously from the time of the complained-of transaction to and through the prosecution of the lawsuit.  *See Lewis v. Anderson*, 477 A.2d 1040, 1049 (Del. 1984) (holding that "[a] plaintiff who ceases to be a shareholder . . . loses standing to continue a derivative suit"); *In re New Valley Corp. Deriv. Litig.*, No. C.A. 17649-NC, 2004 WL 1700530, at *3 (Del. Ch. May 12, 2004).  While Garber purportedly re-invested in Lehman on January 23, 2007, he waived his right to bring a derivative action based on any of the Grants by selling all of his Lehman holdings on September 1, 2005.  (Compl. ¶ 12.)  *See In re New Valley*, 2004 WL 1700530, at *4 (dismissing a plaintiff from the litigation who attempted to similarly "'buy back' into the litigation").

---

[4]    A shareholder's standing to maintain a derivative action is determined by the Company's state of incorporation, in this case Delaware.  *See Bankers Nat'l Corp. v. Barr*, 7 F.R.D. 305, 307 (S.D.N.Y. 1945).  Similarly, Delaware law applies to Plaintiffs' substantive common law claims because New York courts apply the law of the state of incorporation in matters relating to the internal affairs of a corporation.  *See PPI Enterprises (U.S.) Inc. v. Del Monte Foods Co.*, No. 99 Civ. 3794 (BSJ), 2003 WL 22118977, at *18 (S.D.N.Y. Sept. 11, 2003); *In re BP P.L.C. Deriv. Litig.,* 507 F. Supp. 2d 302, 308 (S.D.N.Y. 2007); *Seybold v. Groenink*, No. 06 Civ. 772 (DLC), 2007 WL 737502, at *5-7 (S.D.N.Y. March 12, 2007); RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309 cmt. a (1971).

IBEW first purchased Lehman stock on October 19, 1999. (Compl. ¶¶ 14.)  Thus, IBEW has no standing to bring claims based on the three Grants pre-dating October 19, 1999. *See Ryan*, 918 A.2d at 359; *Desimone v. Barrows*, 924 A.2d 908, 927 (Del. Ch. 2007) (holding that plaintiff "lacks standing to challenge all of the options Grants that occurred before he became a Sycamore stockholder"); *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1010-11 (N.D. Cal. 2007) ("Plaintiff cannot assert claims based on [allegedly backdated options] grants occurring before he acquired his stock.").

Accordingly, as a threshold matter, any of Plaintiff IBEW's claims related to the options granted prior to October 19, 1999 and all the claims of Plaintiffs Garber and Saginaw should be dismissed with prejudice.

## II.   PLAINTIFFS' CLAIMS SHOULD ALSO BE DISMISSED FOR FAILURE TO SATISFY THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 9(b) AND FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

"'[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . . .'" *CVC Claims Litig. LLC v. Citicorp Venture Capital Ltd.*, No. 03 Civ. 7936 (DAB), 2007 WL 2915181, at *2 (S.D.N.Y. Oct. 3, 2007) (quoting *Bell Atlantic v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1959 (2007)).  Moreover, where, as here, the claims sound in fraud, a plaintiff must satisfy the heightened pleading requirements of Rule 9(b).  *See Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004) (holding that the wording of Rule 9(b) is "cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action"); *Rahl v. Bande*, 328 B.R. 387, 412 (S.D.N.Y. 2005) ("It is undisputed that claims based on allegations of fraud trigger the heightened pleading standard of Rule 9(b).").

Plaintiffs allege that most or all of the Individual Defendants colluded to backdate options and then affirmatively concealed the improper scheme from shareholders in subsequent public disclosures. For those Individual Defendants who are not alleged to have knowingly participated in these activities, Plaintiffs nonetheless allege a "sustained and systematic" failure of oversight to uncover the wrongful scheme to benefit their enriched colleagues. Specifically, Plaintiffs assert:

> These claims arise from the actions of Individual Defendants . . . in engaging in, or in a sustained and systematic failure of oversight, permitting others to engage in the wrongful and deceptive practice of intentionally manipulating and falsely reporting Lehman's stock option and RSU grant dates between 1997 and August 2002 . . . in order to secure a huge financial windfall for themselves and others at the expense of Lehman. . . . Defendants also misstated Lehman's financial results by failing to properly report its true compensation expense and tax liabilities attributable to the grants of back-dated stock options and RSU's.

(Compl. ¶ 2.) Thus, notwithstanding the labels that Plaintiffs have attached to the various claims in their blunderbuss Complaint—fiduciary duty, mismanagement, waste, or misrepresentation/ concealment—this purports to be a fraud case. Plaintiffs must, therefore, satisfy the heightened pleading requirements of Rule 9(b) for these claims. *See In re Ditech Networks, Inc. Deriv. Litig.*, No. C 06-5157 JF, 2007 WL 2070300, at *10 (N.D. Cal. July 16, 2007) (analyzing and dismissing a common law Delaware breach of fiduciary duty claim based on alleged backdating of options pursuant to the heightened pleading requirements of Rule 9(b) "because the options backdating sounds in fraud").

To satisfy Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993) (*quoting Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989)); *see also Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420-21 (S.D.N.Y.

1978).  While Rule 9(b) also provides that "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally," in order "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit," conclusory and speculative allegations are insufficient to meet Rule 9(b)'s specificity requirements.  *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991); *see also Travelers Indem. Co. of Illinois v. CDL Hotels USA, Inc.*, 322 F. Supp. 2d 482, 499-500 (S.D.N.Y. 2004).  Most definitively, a plaintiff may not allege fraud on the basis of "information and belief."  *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  Instead, a complaint must provide "a factual basis that gives rise to a strong inference of intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. De-Con Mech. Contractors, Inc.*, 896 F. Supp. 342, 346-47 (S.D.N.Y. 1995).

**A.     Plaintiffs Fail To Allege Any Facts To Support Any Claims Based On The Issuance Of Restricted Stock Units ("RSU's")**

Plaintiffs scatter throughout the Complaint allegations that the Individual Defendants received misdated RSU's and that Lehman's SEC filings falsely reported the cost to the Company of the RSU's.  Based on these allegations, Plaintiffs purport to "bring claims to declare that . . . restricted stock units . . . issued in violation of Lehman's stock plan are void and to set them aside."  (Compl. ¶ 2.)  However, Plaintiffs do not identify a single grant of RSU's to any particular Individual Defendant, or even an amount or a date upon which RSU's were granted.  Nor does the Complaint contain any allegations from which it could be inferred that any such RSU's were issued.

Thus, to the extent Plaintiffs' claims arise out of the granting of RSU's, such claims fail to meet even the basic pleading requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, much less the particularity requirements of Rule 9(b).

**B.**   **Plaintiffs' Allegations Supporting All Other Claims Fail To Meet The Particularity Requirements Of Rule 9(b)**

Plaintiffs' Complaint makes broad assertions of fact that some or all Individual Defendants colluded to backdate options, and knowingly concealed the practice in public disclosures, or recklessly failed to discover, and publicly expose the backdating.  So, by way of example, Plaintiffs claim that the Officer Defendants

> actively participated in or knowingly encouraged, sponsored or approved many of the wrongful acts or omissions complained of herein . . . by purposefully, recklessly and/or negligently disregarding these wrongful acts or omissions.  Because of their positions, and their own receipt of back-dated options and/or RSU's, they knew Lehman's executive compensation and accounting and public reporting practices, including via access to internal corporate documents, conversations and contacts with other corporate officers, directors, employees and outside auditors, tax professionals and attorneys, attendance at management and Board meetings, and via reports and other information provided to them in connection therewith.  During the Relevant Period, they participated in (or had responsibility for) the process by which stock options were improperly granted and back-dated as well as the issuance of false and/or misleading statements, including the approval of the false and/or misleading press releases, proxy statements, periodic financial statements, tax returns and SEC filings.

(Compl. ¶ 28.)

Plaintiffs similarly generally allege that, solely by virtue of their positions as directors and service on various Lehman board committees, the Director Defendants "knowingly or recklessly approved or permitted the approval of stock options . . . for prices that were less than fair market value."  (Compl. ¶ 40.)  For example, Plaintiffs assert:

> Because of their positions, these Directors knew (or recklessly disregarded) Lehman's executive incentive stock-based

10

> compensation, accounting and reporting practices, via access to internal corporate documents, conversations and connections with other corporate directors, officers, and employees, attendance at management, Board and Committee meetings, and via reports and other information provided to them in connection therewith. During the Relevant Period, more than half of the Director Defendants received back-dated stock options and/or RSU's, or through their membership on subcommittees of the Board of Directors, [they] participated in the process by which stock options were illegally granted, back-dated and approved and/or the process for the issuance of false and/or misleading statements, including the approval of the false and/or misleading press releases, proxy statements, periodic financial statements and SEC filings.

(Compl. ¶ 40.)

On its face, Plaintiffs' typical "and/or" pleading style highlights that Plaintiffs' case depends wholly on the nature of the positions the Individual Defendants occupied rather than any factual allegations regarding what any of the Individual Defendants actually did or failed to do, or knew or should have known.  Indeed, Plaintiffs' broad use of general and repetitive allegations to support many alternative theories of liability (*i.e.,* the Individual Defendants' backdated options *and/or* disregarded *and/or* failed to discover the practice (*see, e.g.,* Compl. ¶¶ 28, 40, 123)) fails to put the Individual Defendants on notice as to the role each is claimed to have played in the alleged backdating scheme and subsequent cover up.

Further, the fact that some allegations in their prolix Complaint undermine other allegations demonstrates the flaws in Plaintiffs' pleadings.  For example, in one allegation Plaintiffs charge Defendants Fuld, Cecil, Goldfarb, Gregory, Isaacs and Russo with having "engineered, authorized or permitted the award of [backdated] Lehman stock options."  (Compl. ¶ 3.)  Elsewhere, and in seeming contradiction, Plaintiffs allege that decisions regarding stock option grants were made by Lehman's Compensation Committee (composed of Defendants Akers, Macomber and Merrill during the relevant period).  (Compl. ¶¶ 45-46, 56.)

There is also a glaring absence of facts substantiating the alleged involvement of the Audit, Governance or Executive Committees in granting stock options or in their oversight. In fact, the Management Ownership Plan (Compl., Ex. A, § 5) specifically provides that the Plan is to be administered by the Compensation Committee, and does not reference any of these other Committees.

In the face of similar backdating claims, courts have dismissed claims against executives and members of board committees who were not charged with administering stock options. For example, in *In re Openwave Sys. Sec. Litig.*, No. 07 Civ. 1309 (DLC), 2007 WL 3224584, at *12 (S.D.N.Y. Oct. 31, 2007), the court dismissed claims against members of the audit committee because "it is impossible to discern whether [members of the audit committee] had any duty to monitor the dating of option grants, or whether [they] had access to meetings or documents that might have alerted [them] to the alleged backdating." Similarly, in *In re Verisign Inc., Deriv. Litig.*, No. C. 06-4165 PJH, 2007 WL 2705221, at *16 (N.D. Cal. Sept. 14, 2007), the court found that the plaintiffs' allegations were "wholly insufficient to support a claim of demand futility" where the court "was unable to locate any reference in the [Amended Complaint] to a connection between the activities of the Nominating and Corporate Governance Committee and the members thereof, and the alleged wrongdoing." Further, that court found "plaintiffs . . . attempted to blur the distinction between the Compensation Committee (responsibility for administering and approving option grants) and the Audit Committee (different responsibilities, but no role in option awards)." *Id.* The court also found that the complaint provided "no basis for inferring that the members of the Audit Committee had any knowledge of the alleged backdating, or any knowledge of deficiencies in the Company's public filings." *Id.* at *16. In *Desimone,* 924 A.2d at 942, the court rejected the plaintiff's "contention that [certain directors] knew that stock options were being backdated simply because they served

on [the company's] Audit Committee" and held that "[a]lthough Audit Committee members play a more active role in ensuring the accuracy of the company's financial statements, the fact that [the company] accounted for the backdated options grants incorrectly does nothing to suggest any conscious wrongdoing on the part of the Audit Committee."

At best, Plaintiffs' allegations are targeted at the Lehman Compensation Committee, as alleged administrators of the Plan. However, claims against this committee similarly fail for a lack of pleading particularity. Plaintiffs' collective accusations of culpability against Compensation Committee members Evans and Gent are blatantly deficient—neither executive was even on the Lehman Board when the alleged backdating took place. (Compl. ¶¶ 36-37; Appendix A.) By Plaintiffs' own admission, Evans and Gent did not join Lehman until approximately one to two years *after* the last alleged backdated option was granted.[5] (Compl. ¶¶ 36-37; Appendix A.)

Even with respect to Defendants Akers, Macomber and Merrill—the only Director Defendants alleged to have actually served on the Compensation Committee during the relevant time period—Plaintiffs plead no particular facts describing their role in any alleged backdating. For instance, Plaintiffs do not allege that these Individual Defendants discussed changing grant dates or altered any paperwork during the relevant time. Presumably Plaintiffs

---

[5]    Defendant Evans has been a director since 2004, a member of the Governance Committee since 2004, and a member of the Compensation Committee from 2006 through 2007. (Compl. ¶¶ 36, 56, 69.) Defendant Gent has been a director since 2003 and a member of the Compensation and Audit Committees since 2004. (Compl. ¶¶ 37, 56, 61.)

In addition to Defendants Evans and Gent, Plaintiffs have asserted claims against a third director—Defendant Hernandez—who did not join the Lehman Board until after the alleged backdating. Defendant Hernandez has been a director since 2005 and is not alleged to have been on any Board Committees. (Compl. ¶ 38.)

Based on Plaintiffs' own allegations, Defendants Evans, Gent and Hernandez cannot have been involved in the alleged granting of backdated options and all claims against them should, therefore, be dismissed. *See In re Ditech*, 2007 WL 2070300, at *6-7 (dismissing federal securities law claims because "[t]he Complaint alleges no *facts* that give rise to a strong inference that . . . the directors who joined after the final alleged backdated grant participated in the backdating scheme").

will seek to create a supportive record by taking depositions. But lawsuits are not properly

brought merely as a pretext to pursue discovery. Instead of basing their claims on facts,

Plaintiffs are apparently content to rest solely on their recent analysis showing a "statistical

anomaly." (Compl. ¶¶ 10, 74.) This is simply not enough to satisfy Rule 9(b)'s mandate that

Plaintiffs provide the "who," "what," "when," "where," or "how" reflecting Defendants Akers's,

Macomber's or Merrill's direct involvement in any fraudulent wrongdoing. *See Mills*, 12 F.3d at

1175; *see also Desimone,* 924 A.2d at 942 (finding that complaint fails to plead demand futility

where the court could "infer that the Compensation Committee approved the amount . . . of the

Officer Grants" but could "infer nothing from the pled facts about whether and to what extent

any director was involved in the mechanics by which the options were issued or the dates on

which that administrative task was carried out").

Plaintiffs also conclusorily assert that, because of their respective senior positions,

and, therefore, because they allegedly had access to inside information, the Individual

Defendants either knew of, or recklessly disregarded, the backdating practices in connection with

the issuance and approval of false and/or misleading statements, including "misleading press

releases, proxy statements, periodic financial statements and SEC filings." (Compl. ¶ 40; *see

also* ¶ 28.) Yet, these types of allegations do not satisfy Rule 9(b). Such allegations are "so

broad and conclusory as to be meaningless." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124,

1129 (2d Cir. 1994); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 119-20 (2d Cir. 1982).

"[B]oilerplate allegations that defendants knew or should have known of fraudulent conduct

based solely on their board membership or executive positions are insufficient" to satisfy Rule

9(b)'s pleading requirements. *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041

(DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug 31, 2000); *see also In re Health Mgmt. Sys.,

Inc. Sec. Litig.*, No. 97 Civ. 1865 (HB), 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998)

("[C]ourts have routinely rejected the attempt to plead scienter based on allegations that because of defendants' board membership . . . they had access to information concerning the company's adverse financial outlook."); *Duncan v. Pencer*, No. 94 Civ. 0321 (LAP), 1996 WL 19043, at *14 (S.D.N.Y. Jan. 18, 1996).

Nowhere in the Complaint do Plaintiffs specifically explain the role that any Individual Defendant played in connection with particular false statements. Instead, Plaintiffs make sweeping allegations that the Individual Defendants, by virtue of their positions and the unnamed information to which they "must have" had access, participated in or knew of the practices. Telling of Plaintiffs' deficiencies, these allegations are also made against those Individual Defendants who were not even affiliated with Lehman when most of such documents were publicly filed or released.

Merely citing to unparticularized financial statements issued while the Individual Defendants were officers and directors of Lehman can never be enough to support a claim that any defendant actually participated in any alleged misstatements. Plaintiffs must provide specific factual allegations showing that relevant committees were given information that should have alerted the Individual Defendants thereon to the alleged backdating, and to the fact that the company's statements in SEC filings and public disclosures were false. *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 775 (S.D.N.Y. 2006); *see also In re WorldCom, Inc. Sec. Litig.*, 336 F. Supp. 2d 310, 315 n.14 (S.D.N.Y. 2004) (dismissing complaint against audit committee members where it did not describe with particularity how audit committee failed to review documents or perform its duties). It is not enough to simply allege that a particular defendant signed or filed a misleading statement. *See Goplen*, 453 F. Supp. 2d at 775 (holding that allegations that defendant "signed the SEC filing—without specific allegations of reasonably available facts that should have put him on notice that the reported financial results were false"

do not satisfy a plaintiffs' pleading obligations); *In re Verisign*, 2007 WL 2705221, at *30

(dismissing securities claims where plaintiffs did not "specify the roles . . . each of the director

defendants played in the alleged backdating scheme or in the alleged scheme to issue false

financial reports").

Finally, Plaintiffs attempt to satisfy Rule 9(b)'s heightened pleading requirements

by alleging that "more than half of the Director Defendants," and all of the Officer Defendants,

received alleged backdated stock options.  (Compl. ¶¶ 19-28, 40.)  But Plaintiffs provide

absolutely no facts demonstrating that Director Defendants Ainslie, Akers, Berlind, Cruikshank,

Evans, Gent, Hernandez, Kaufman, Macomber or Merrill received option grants on the Grant

Dates or on any other dates.  *See* Appendix A.  With regard to the remaining Individual

Defendants identified as receiving options on the Grant Dates[6] (Defendants Fuld, Gregory,

Isaacs, Russo,[7] Vanderbeek, Jack, Cecil[8] and Goldfarb (Compl. ¶¶ 75-83)), the mere allegation

that a party received backdated options without particularized factual allegations that the

recipient participated in any alleged backdating does not satisfy the requirements of Rule 9(b).

*See Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 643 (S.D.N.Y. 2004) (holding that

allegations that defendants benefited from fraud of others are insufficient); *Primavera*

*Familienstiftung v. Askin*, 173 F.R.D. 115, 124 (S.D.N.Y. 1997) ("Although the desire to

---

[6]     While named as an Officer Defendant (Compl. ¶ 24), Defendant O'Meara is not alleged
to have received option grants.  Thus, Plaintiffs have failed to state any claim against him
arising out of or relating to the receipt of backdated options.

[7]     Defendant Russo is alleged to have received options only on January 8, 1997 and
December 11, 1997.  (Compl. ¶¶ 75, 76.)  Since all Plaintiffs lack standing to assert
claims based on any options granted prior to October 19, 1999, *see* Section I *supra*,
Plaintiffs are precluded from asserting any claim against Defendant Russo based on his
receipt of options.

[8]     Defendant Cecil resigned from Lehman on February 29, 2000 (Compl. ¶ 26) and none of
the Plaintiffs have standing to assert claims based on any actions that occurred prior to
October 19, 1999.  *See* Section I *supra*.  Accordingly, Defendant Cecil can be liable for,
at most, his acts or omissions between October 19, 1999 and February 29, 2000, none of
which Plaintiffs have plead with the requisite particularity for a finding of liability.

enhance income may motivate a person to commit fraud, allegations that a defendant stands to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)."); *see also Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ("[I]ncentive compensation can hardly be the basis on which an allegation of fraud is predicated.").  Here, Plaintiffs have not pled any facts showing that any Individual Defendant was even aware that any options he or she received were the product of a purported backdating scheme.  *See In re Ditech*, 2007 WL 2070300, at *6-7 (dismissing federal securities law claims because, *inter alia*, "[t]he Complaint alleges no *facts* that give rise to a strong inference that the non-director defendants knew that the options they received were backdated . . . ."); *see also Shields*, 25 F.3d at 1129 (rejecting the legitimacy of alleging "fraud by hindsight").[9]

Indeed, the generalized, conclusory allegations of the Complaint are inadequate to support a strong inference that each Individual Defendant participated in, or had actual or constructive knowledge of, the alleged fraud.  This lack of factual particularity as to the Individual Defendants' respective roles and knowledge mandates dismissal of all of Plaintiffs' claims.

---

[9]     In *In re Openwave*, the court considered a claim under Section 10(b) of the Exchange Act against defendants who were alleged to have received backdated options and found that the plaintiffs had adequately pled scienter "by alleging *with specificity* that [the defendants] received backdated options."  2007 WL 3224584, at *10 (emphasis added). In that case, the company issued a press release actually confirming that "the measurement dates for financial accounting purposes for certain stock option grants differ from recorded grant dates for certain awards."  *Id.* at *3.  Thus, the court was able to find that the "defendants received options, the exercise or strike prices of which did not match the actual date on which defendants received them."  *Id.* at *10.

However, where a complaint "alleges *no facts* that give rise to a strong inference that the non-director defendants knew that the options they received were backdated," at least one court has found that the complaint fails to sufficiently allege scienter.  *In re Ditech*, 2007 WL 2070300, at *6-7.  Indeed, the *Ditech* court observed that "many explanations other than options backdating exist for the coincidence of the grants and a low share price."  *Id.* at 7.

**C.    Plaintiffs Fail To State A Claim For Misrepresentation Or Fraudulent Concealment**

The underpinnings of Plaintiffs' misrepresentation and fraudulent concealment claim is that the Individual Defendants either "signed or caused to be signed" public filings "that made knowing misrepresentations about the dates and amounts of stock-based compensation granted to Lehman executives, and omitted facts about Lehman's back-dating practices." (Compl. ¶ 141.)  Plaintiffs claim that, as a result, they "failed to act to remedy the excessive and illegal compensation practices (including by filing timely derivative actions) and authorized increases in Directors' authority to grant stock-based compensation to Lehman's executives." (Compl. ¶ 142.)

These allegations fail to state a claim for fraudulent concealment and misrepresentation under Delaware law.  Actual knowledge and requisite intent are essential elements of fraudulent concealment.  *See Layton v. Allen*, 246 A.2d 794, 798 (Del. 1968) (determining that the doctrine of fraudulent concealment does not apply where there are no allegations of actual knowledge or affirmative concealment of the wrong committed and refusing to equate negligent concealment with fraudulent concealment).  Misrepresentation also requires a showing of intent and either actual knowledge or reckless indifference to the truth.  *See Manzo v. Rite Aid Corp.*, No. Civ. A. 18451-NC, 2002 WL 31926606, at *3 (Del. Ch. Sept. 6, 2002).  As set forth above, Plaintiffs' Complaint is devoid of any allegations that the Individual Defendants knew of the alleged backdating practices or intended to prevent Plaintiffs, Lehman or the market from discovering the alleged practices.  Nor are there any allegations that the Individual Defendants were privy to, and recklessly disregarded, information that should have alerted them to wrongdoing.  *See* Section II.B. *supra*.

**D.**    **Plaintiffs Fail To State A Claim For Breach Of Fiduciary Duty**

In support of their claim for what they call breach of fiduciary duty, Plaintiffs do

not distinguish between the Officers and Directors, or among them, but rather conclusorily allege

that all of the Individual Defendants "violated and breached their fiduciary duties of care,

loyalty, reasonable inquiry, oversight, good faith and supervision by, *inter alia,* (i) approving or

permitting the issuance of stock options in violation of the Plan, and the back-dating of the

awards to conceal the violations, (ii) the knowing or reckless disregard with which they

published the financial statements of Lehman that contained misrepresentations and violated

GAAP; (iii) the knowing or reckless disregard with which they supervised the audits and reviews

of Lehman's financial statements and internal controls and procedures; and (iv) the violation of

their duties of loyalty in failing to investigate, detect, prevent and/or disclose Lehman accounting

misstatements, and the weaknesses in the internal controls and procedures of the Company, as

previously described herein." (Compl. ¶ 123.)

Delaware law only recognizes a claim for breach of what their courts refer to as

duties of care and loyalty. *See In re Walt Disney Co. Deriv. Litig.,* 907 A.2d 693, 746 n.400

(Del. Ch. 2005). The obligation to act in good faith does not create an independent fiduciary

duty but rather "'is a subsidiary element[,]' i.e., a condition, 'of the fundamental duty of

loyalty.'" *Stone v. Ritter,* 911 A.2d 362, 369-70 (Del. 2006) (quoting *Guttman v. Huang,* 823

A.2d 492, 506 n.34 (Del. Ch. 2003)). Plaintiffs' recitation of breaches of the duties of reasonable

inquiry, oversight, and supervision amount to nothing more than an alleged breach of the duty of

loyalty under Delaware law. *See id.* ("It follows that because a showing of bad faith conduct . . .

is essential to establish director oversight liability, the fiduciary duty violated by that conduct is

the duty of loyalty."). Any such breach must be assessed in accordance with the instructions of

Delaware case law.

### 1.    Plaintiffs Do Not State A Claim For Breach Of The Duty Of Loyalty

Plaintiffs' claim for breach of the duty of loyalty appears to be premised on (1) allegations that the Individual Defendants failed to exercise oversight or to implement appropriate internal controls to assure that stock-based compensation was properly paid and truthfully reported in accordance with law and with Lehman's stock plans (Compl. ¶¶ 28, 40), and (2) allegations that the Individual Defendants participated in or had responsibility for the process by which the stock options were improperly granted and/or the process for the issuance of false and/or misleading statements (Compl. ¶¶ 28, 40).

The standard for a claim for failure to adequately oversee a company's business and performance has been articulated in *In re Caremark Int'l Inc. Deriv. Litig.,* 698 A.2d 959 (Del. Ch. 1996). It is described as being one of, if not the most, difficult theories upon which to prevail. *Id.* at 967; *see also Guttman,* 823 A.2d at 505-06. Under *Caremark,* to adequately plead directorial oversight liability, a plaintiff must allege particularized facts demonstrating: "(a) the directors utterly failed to implement any reporting or information system or controls; *or* (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Stone,* 911 A.2d at 370. "In either case, imposition of liability requires a showing that the directors knew that they were not discharging their fiduciary obligations." *Id.*

Here, there are no allegations whatsoever regarding *what* any Director or Officer *knew* about the Company's internal controls or *when* they knew it. Indeed, absent from the Complaint are necessary particulars such as "how often and how long [the committees] met, who advised the committee[s], and whether the committee[s] discussed and approved of the allegedly improper [] practices." *Guttman,* 823 A.2d at 498.

20

It is well-settled that conclusory allegations of knowledge of wrongdoing based on status as an officer or director—which, as discussed above in analyzing Rule 9(b) sufficiency, is all Plaintiffs plead—are insufficient in this context as well. *See Rattner v. Bidzos,* No. Civ.A. 19700, 2003 WL 22284323, at *10 n.53 (Del. Ch. Oct. 7, 2003) (allegations of director knowledge based on "access to internal corporate documents . . . conversations and connections with other corporate officers and employees, attendance at management and Board of Directors['] meetings and committees thereof" cannot support a finding of the knowledge of wrongdoing required for the imposition of oversight liability); *see also Guttman*, 823 A.2d at 507 (finding that plaintiffs' allegations that the directors were in a position to know of the improper accounting practices were not sufficient to sustain a *Caremark* claim where the complaint lacked "the kind of fact pleading that is critical to a *Caremark* claim, such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation").

Plaintiffs' duty of loyalty claim based on the Individual Defendants' alleged participation in or responsibility for the process by which the stock options were improperly granted and/or the process for the issuance of false and/or misleading statements fares no better. Plaintiffs have failed to allege with the requisite particularity the role of each Individual Defendant in the alleged backdating or issuance of false and/or misleading statements. *See* Section II.B. *supra.*

### 2.    Plaintiffs Do Not State A Claim For Breach Of The Duty Of Care

Without the well-pleaded factual allegations necessary to support a claim for breach of the duty of loyalty under Delaware law, Plaintiffs are left with, at most, a claim for

breach of the duty of care. That claim also fails. To state a claim for breach of fiduciary duty based on a violation of the duty of care, a plaintiff must allege facts sufficient to support a finding that the defendant was grossly negligent. *See Malpiede v. Townson*, 780 A.2d 1075, 1089 (Del. 2001). In the corporate context, gross negligence means "reckless indifference to or a deliberate disregard of the whole body of stockholders or actions which are without the bounds of reason." *Tomczak v. Morton Thiokol, Inc.,* Civ. A. No. 7861, 1990 WL 42607, at \*12 (Del. Ch. Apr. 5, 1990) (citations omitted).

As discussed above, Plaintiffs have failed to plead with the requisite particularity any Individual Defendant's role in the alleged backdating or issuance of false or misleading statements. *See* Section II.B. *supra.* Thus, Plaintiffs have failed to allege facts sufficient to support a finding that the Individual Defendants acted with the reckless indifference or deliberate disregard required to establish a duty of care violation under Delaware law. *See Crescent/Mach I Partners, L.P. v. Turner,* 846 A.2d 963, 985 (Del. Ch. 2000) (dismissing claim where plaintiff failed to plead any "specific factual allegation" amounting to breach of duty of care).

Moreover, Section 102(b)(7) of Delaware's General Corporation Law permits corporations to adopt a provision in its certificate of incorporation insulating directors from personal liability for non-intentional breaches of fiduciary duty, such as due care violations. 8 DEL. C. § 102(b)(7).[10] Article 10.1 of Lehman's Certificate of Incorporation includes such a provision:

---

[10]    Section 102(b)(7) of Delaware's General Corporation Law provides that a certificate of incorporation may contain:

> A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) for any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in

> A director shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director; provided that this sentence shall not eliminate or limit the liability of a director (i) for any breach of his duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law, (iii) under Section 174 of the GCL, or (iv) for any transaction from which the director derives an improper personal benefit.

*See* Restated Certificate of Incorporation of Lehman Brothers Holdings Inc. at Art. 10.1, attached as Exhibit A to the Declaration of John M. Callagy, submitted herewith.[11]  As a result, Plaintiffs are barred from pursuing a breach of the duty of care claim against the Director Defendants.  *See Malpiede*, 780 A.2d at 1094; *McMillan*, 768 A.2d at 501-02.

### E.    Plaintiffs Fail To State A Claim For Gross Mismanagement And Misappropriation Or Waste Of Corporate Assets

Plaintiffs' attempt to claim gross mismanagement and misappropriation or waste of corporate assets is merely a recasting of Plaintiffs' breach of fiduciary duty allegations under different headings.  Thus, the claims should be dismissed for the reasons set forth in Section II.D.  *See*, *e.g.*, *York Linings v. Roach*, No. 16622-NC, 1999 WL 608850, at *2 (Del. Ch. July 28, 1999) (recognizing that gross mismanagement is a means of establishing breach of fiduciary duty and is, therefore, contained within a claim for breach of the fiduciary duty); *Clark v. Lacy,* 376 F.3d 682, 686-87 (7th Cir. 2004) (finding claims for gross mismanagement and waste of corporate assets were "premised on the defendants' alleged breach of their fiduciary duties" and

---

good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 of this title; or (iv) for any transaction from which the director derived an improper personal benefit.

8 DEL. C. § 102(b)(7).

[11]    "The Court may take judicial notice of an exculpatory charter provision in resolving a motion addressed to the pleadings."  *McMillan v. Intercargo Corp.*, 768 A.2d 492, 501 n.40 (Del. Ch. 2000) (citing *In re Wheelabrator Techs., Inc. S'holders Litig.*, C.A. No. 11495, 1992 WL 212595, at *11 (Del. Ch. Sept. 1, 1992)); *see also Malpiede*, 780 A.2d at 1090 & n.47 (citing Delaware Rules of Evidence, Rule 201); FED. R. EVID. 201(b)(2).

consisted of simply "repackaging the same issues under different causes of action"); *Amfesco Indus., Inc. v. Greenblatt,* 172 A.D.2d 261, 264-65, 568 N.Y.S.2d 593, 596-97 (N.Y. App. Div. 1991) (categorizing claims of waste and mismanagement of corporate assets as breaches of fiduciary duty).

Plaintiffs' claim for misappropriation or waste of corporate assets also fails because it is insufficiently pled. To plead a claim for waste, a plaintiff must meet an "extreme," "rarely satisfied" test. *See Highland Legacy Ltd. v. Singer,* No. Civ.A. 1566-N, 2006 WL 741939, at *7 (Del. Ch. Mar. 17, 2006). Delaware law requires a plaintiff to "allege facts showing that no person of ordinary sound business judgment could view the benefits received in the transaction as a fair exchange for the consideration paid by the corporation." *Sample v. Morgan,* 914 A.2d 647, 670 n.72 (Del. Ch. 2007). "As a practical matter, a stockholder plaintiff must generally show that the board irrationally squandered corporate assets—for example, where the challenged transaction served *no corporate purpose* or where the corporation received *no consideration at all.*" *White v. Panic*, 783 A.2d 543, 554 (Del. 2001) (emphasis added). Plaintiffs have not alleged—because they cannot—that the Company received *no* consideration for the options granted. Thus, Plaintiffs cannot state a claim for misappropriation or waste. *See id.*

## F. Plaintiffs' Unjust Enrichment And *Ultra Vires* Claims Should Be Dismissed

"[A]n unjust enrichment claim is essentially another way of stating a traditional tort claim." *State of Sao Paolo of Federative Republic of Brazil v. Am. Tobacco Co.,* 919 A.2d 1116, 1124-25 (Del. 2007). Once "traditional tort claims" are dismissed, analogous equitable claims such as unjust enrichment must also be dismissed. *Steamfitters Loc. Union No. 420 Welfare Fund v. Phillip Morris, Inc.,* 171 F.3d 912, 937 (3d Cir. 1999) ("We can find no justification for permitting plaintiffs to proceed on their unjust enrichment claim once we have

determined that the District Court properly dismissed the traditional tort claims because of the remoteness of plaintiffs' injuries from defendants' wrongdoing.").  Thus, because Plaintiffs have failed to state a claim for misrepresentation/fraudulent concealment, breach of fiduciary duty, gross mismanagement, and misappropriation/waste, Plaintiffs' claim for unjust enrichment must be dismissed as well.

Additionally, Plaintiffs' claim for *ultra vires* acts is actually a claim for invalidating stock options and RSU's.  Such a claim is not an independent cause of action but rather a form of a remedy equivalent to rescission and should be dismissed for that reason.  *In re Zoran*, 511 F. Supp. 2d at 1019 (dismissing rescission claim as a "form of remedy, not a claim under the law"); *see also In re Ditech*, 2007 WL 2070300, at *10 (holding, "the Court agrees with Defendants that Plaintiffs should include accounting and rescission as remedies in any amended complaint").

## III.     PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

The statute of limitations for Plaintiffs' claims is three years.  10 Del. C. § 8106 ("no action . . . arising out of contractual or fiduciary relations . . . shall be brought after the expiration of 3 years from the accruing of the cause of such action").  In this case, the Complaint alleges that the Individual Defendants engaged in "a sustained and systemic failure of oversight, permit[ted] others to engage in the wrongful and deceptive practice of intentionally manipulating and falsely reporting Lehman's stock options and RSU grants between 1997 and August 2002" and then subsequently misstated Lehman's financial results by failing to properly report Lehman's compensation expense in various financial reports.  (Compl. ¶ 2.)  Accordingly, the limitations period began to run—at the latest—in 2002, even if Plaintiffs were unaware of the conduct.  *See In re Dean Witter P'ship Litig.*, No. Civ. A. 14816, 1998 WL 442456, at *4 (Del. Ch. July 17, 1998) (observing that "the cause of action accrues, at the time of the alleged

wrongful act, even if the plaintiff is ignorant of the cause of action"). Thus, claims arising out of or relating to stock grants that occurred from 1997 through 2002 are barred by the three-year statute of limitations.

While Plaintiffs attempt to plead that the three-year statute of limitations has been tolled because certain tolling exceptions apply (Compl. § VI, ¶¶ 90[sic] and 112-116), they "bear the burden of pleading *specific facts* to demonstrate that the statute of limitations was, in fact, tolled." *In re Dean Witter P'ship Litig.*, 1998 WL 442456, at *6 (emphasis added). Where, as here, a plaintiff fails to meet that burden, the court "must dismiss the complaint if filed after expiration of the limitations period." *Certainteed Corp. v. Celotex Corp.*, No. Civ.A. 471, 2005 WL 217032, at *6 (Del. Ch. Jan. 24, 2005).

Plaintiffs assert that, due to the fraudulent concealment by the Individual Defendants, Plaintiffs were unable to discover the alleged backdating practices until 2006. However, a plaintiff must plead fraudulent concealment with particularity, "and the mere use of the word 'fraud' or its equivalent is not a sufficiently particular statement . . . ." *Halpern v. Barran*, 313 A.2d 139, 143 (Del. Ch. 1973) (holding that fiduciary duty claims were time barred because plaintiff failed to assert fraudulent concealment with sufficient particularity to toll the statute of limitations). As set forth above, Plaintiffs have failed to state a claim for fraudulent concealment and misrepresentation under Delaware law. *See* Sections II.B. and II.C. *supra.* These pleading deficiencies also render tolling inapplicable as a matter of law. Accordingly, the Complaint was filed long after the expiration of the three-year statute of limitations.

## <u>CONCLUSION</u>

For the foregoing reasons, the Individual Defendants respectfully request that this Court grant their motion to dismiss the Complaint with prejudice.

DATED:  New York, New York        Respectfully submitted,
          March 4, 2008

                                     KELLEY DRYE & WARREN LLP

                                     By:    <u>s/John M. Callagy</u>
                                          John M. Callagy
                                          Don D. Buchwald
                                          Robert W. Schumacher
                                        Christine S. Poscablo
                                        101 Park Avenue
                                        New York, New York 10178
                                        Telephone:  (212) 808-7800
                                        Facsimile:  (212) 808-7897

                                       *Attorneys for Individual Defendants*

27

**APPENDIX A**

| Defendant | Officer / Director | Committee | Length/Capacity Of Service | Date(s) Options Granted (¶¶ 75-83) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1/8/97 | 12/11/97 | 12/14/98 | 12/1/99 | 2/18/00 | 12/1/00 | 9/20/01 | 12/3/01 | 7/23/02 |
| Fuld | Officer | Exec.<br>Gov. | 1997-2007 (Chairman) (¶ 71)<br>1997-2001 (Chairman) (¶ 69) | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| Gregory | Officer | Exec. | Not Alleged (¶ 71) | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| Isaacs | Officer | Exec. | Not Alleged (¶ 21) | | | | | | ✓ | | ✓ | |
| Russo | Officer | Exec. | Not Alleged (¶ 71) | ✓ | ✓ | | | | | | | |
| Vanderbeek | Officer | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| O'Meara | Officer | | | | | | | | | | | |
| Jack | Officer | | | | ✓ | ✓ | ✓ | ✓ | ✓ | | ✓ | |
| Cecil | Officer | | | | ✓ | ✓ | ✓ | | | | | |
| Goldfarb | Officer | Exec. | Not Alleged (¶ 71) | | | | | | ✓ | ✓ | ✓ | ✓ |
| Ainslie | Director | Audit | 1997-2007 (¶ 61) | | | | | | | | | |
| Akers | Director | Comp. | 1997-2003 (Member) (¶ 56)<br>2004-2007 (Chairman) (¶ 56) | | | | | | | | | |
| Berlind | Director | Audit | 1997-2002 (Chairman) (¶ 61)<br>2003-2007 (Member) (¶ 61) | | | | | | | | | |

| Defendant | Officer / Director | Committee | Length/Capacity Of Service | Date(s) Options Granted (¶¶ 75-83) | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 1/8/97 | 12/11/97 | 12/14/98 | 12/1/99 | 2/18/00 | 12/1/00 | 9/20/01 | 12/3/01 | 7/23/02 |
| Cruikshank | Director | Audit | 1997-2002 (Member) (¶ 61) | | | | | | | | | |
| | | | 2003-2007 (Chairman) (¶ 61) | | | | | | | | | |
| | | Gov. | 2002-2007 (Member) (¶ 69) | | | | | | | | | |
| Kaufman | Director | Gov. | 1997-2001 (Member) (¶ 69) | | | | | | | | | |
| Macomber | Director | Comp. | 1997-2003 (Chairman) (¶ 56) | | | | | | | | | |
| | | | 2004-2007 (Member) (¶ 56) | | | | | | | | | |
| | | Gov. | 1997-2007 (Member) (¶ 69) | | | | | | | | | |
| | | Exec. | 1997-2007 (Member) (¶ 71) | | | | | | | | | |
| Evans | Director | Comp. | 2006-2007 (Member) (¶ 56) | | | | | | | | | |
| | | Gov. | 2004 (Member) (¶ 69) | | | | | | | | | |
| | | | 2005-2007 (Chairman) (¶ 69) | | | | | | | | | |
| Gent | Director | Comp. | 2004-2007 (Member) (¶ 56) | | | | | | | | | |
| | | Audit | 2004-2007 (Member) (¶ 61) | | | | | | | | | |
| Hernandez | Director | | | | | | | | | | | |
| Merrill | Director | Comp. | 1997-2005 (Member) (¶ 56) | | | | | | | | | |
| | | Gov. | 1997-2001(Member) (¶ 69) | | | | | | | | | |
| | | | 2002-2004 (Chairman) (¶ 69) | | | | | | | | | |
| | | | 2005 (Member) (¶ 69) | | | | | | | | | |
| Beyman | Not Alleged | | | | | | | | | | | |
| McKeever | Not Alleged | | | ✓ | ✓ | ✓ | ✓ | ✓ | | | | |