UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
:
:
:
IN RE LEHMAN BROTHERS HOLDINGS, INC.   :  Case No.: 07-CV-2990 (DAB/HBP)
DERIVATIVE LITIGATION                  :  ECF Case
:
:
-----------------------------------------------------------------x

_____

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF
NOMINAL DEFENDANT'S MOTION TO DISMISS THE VERIFIED
CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**
_____

SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502
E-mail: mchepiga@stblaw.com

*Attorneys for Nominal Defendant
Lehman Brothers Holdings, Inc.*

# TABLE OF CONTENTS

**Page**

I. Plaintiffs Concede that a Majority of the Board Is Disinterested with Respect to Their Claims that the Company Backdated Stock Options ........ 1

II. The Audit Committee Directors Are Disinterested with Respect to Plaintiffs' Claims that the Company Disseminated False Financial Statements ........ 2

A. *Rales* Is the Appropriate Standard, But Plaintiffs' "False Statement" Claims Also Fail to Establish Demand Futility Under *Aronson* ........ 3

B. The Consolidated Complaint Does Not Allege that the Audit Committee Directors Had "Clear Notice" of Accounting Irregularities ........ 4

1. SEC releases and a "level of controversy . . . in the corporate world" do not provide sufficient notice of accounting irregularities at Lehman ........ 6

2. The August 2006 action relating to Lehman's disclosures about its options valuations is also not sufficient notice of accounting irregularities ........ 6

III. The Delaware Cases Cited by Plaintiffs Do Not Address Whether "False Statement" Claims in a Backdating Case Render an Audit Committee Interested ........ 7

IV. The Compensation Committee Directors Are Disinterested ........ 8

V. Plaintiffs Lack Standing to Pursue Claims Relating to Three of the Nine Allegedly Backdated Grants ........ 10

CONCLUSION ........ 10

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) .................................................................. 2, 3, 4

*Conrad ex rel. Staples, Inc. v. Blank*, 940 A.2d 28 (Del. Ch. 2007) .................................. 4, 7, 8, 9

*David B. Shaev Profit Sharing Account v. Armstrong*, No. 1449, 2006 WL 391931 (Del. Ch. Feb. 13, 2006) ............................................................................... 6

*Desimone ex rel. Sycamore Networks, Inc. v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) ................................................................................................................. 3, 8, 9

*Guttman ex rel. Nvidia Corp. v. Huang*, 823 A.2d 492 (Del. Ch. 2003) ........................ 3

*In re Caremark International Inc. Derivative Litigation*, 698 A.2d 959 (Del. Ch. 1996) ................................................................................................................ 4

*In re Tyson Foods, Inc. Consolidated Shareholder Litigation*, 919 A.2d 563 (Del. Ch. 2007) ...................................................................................................... 8

*Rales v. Blasband*, 634 A.2d 927 (Del. 1993) .................................................................. 2, 3

*Rattner v. Bidzos*, No. 19700, 2003 WL 222284323 (Del. Ch. Sept. 30, 2003) ................................................................................................................................. 3

*Roth ex rel. Metal Management, Inc. v. Jennings*, 489 F.3d 499 (2d Cir. 2007) .......................................................................................................................... 5

*Ryan ex rel. Maxim Integrated Products, Inc. v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) .......................................................................................................... 4, 7, 9

*Stoll ex rel. Glenayre Technologies, Inc. v. Ardizzone*, No. 07-CV-608, 2007 WL 2982250 (S.D.N.Y. Oct. 9, 2007) ................................................................. 5

*Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362 (Del. 2006) .................. 4

*White v. Panic*, 793 A.2d 356 (Del. Ch. 2000) ................................................................ 5

**Federal Rule**

Federal Rule of Civil Procedure 23.1 ................................................................................ 1

Plaintiffs concede that three of Lehman's ten directors—Messrs. Hernandez and Kaufman and Ms. Johnson Evans—are *disinterested* and *independent* for demand futility purposes. Opposition ("Opp.") at 4, 12. Plaintiffs differentiate these three admittedly disinterested directors from four other Lehman directors solely on the basis of those directors' service on Lehman's Audit Committee. If those four Audit Committee Directors are disinterested (Plaintiffs concede that all nine outside directors are independent), then a majority of the Board can properly consider a demand. Therefore, the Court need only answer a single question to determine if the Consolidated Complaint should be dismissed for failure to make a demand on Lehman's Board: are the four Audit Committee Directors disinterested? They are and the Consolidated Complaint should be dismissed.[1]

## I. Plaintiffs Concede that a Majority of the Board Is Disinterested with Respect to Their Claims that the Company Backdated Stock Options

Plaintiffs argue that the Consolidated Complaint contains two discrete sets of claims: "(1) unlawful backdating of the stock options; and (2) signing and publicly disseminating false financial statements." Opp. at 6. Plaintiffs do not allege that the Audit Committee Directors (Messrs. Ainslie, Berlind, Cruikshank and Gent) had any role in the options-granting process that purportedly led to the backdating. In fact, the Consolidated Complaint affirmatively alleges that the Compensation Committee, and not the Audit Committee, was responsible for granting options. *See* Consol. Compl. ¶¶ 45–46; Lehman's Motion to Dismiss (the "Motion" or "Mot.") at 8. Moreover, in their Opposition, Plaintiffs state that only "three of the Board members" are interested "because they either received the

---

[1] Plaintiffs spend substantial space in their Opposition leveling conclusory personal attacks at Lehman's directors without providing a shred of factual support for their claims. These statements are insufficient to plead demand futility under Federal Rule of Civil Procedure 23.1.

backdated options themselves or approved the backdated stock option grants." Opp. at 4. Those "three" are the two Compensation Committee Directors, Messrs. Akers and Macomber, and Lehman's Chairman and Chief Executive Officer, Mr. Fuld. Plaintiffs' only claim about the Audit Committee Directors is that they "knowingly or recklessly chose to sign" allegedly false financial statements. Opp. at 4. Therefore, Plaintiffs have conceded that seven of the ten Lehman directors are disinterested with respect to their claims relating to "unlawful backdating of stock options." Accordingly, those claims should be dismissed.

II.     **The Audit Committee Directors Are Disinterested with Respect to Plaintiffs' Claims that the Company Disseminated False Financial Statements**

Plaintiffs' remaining set of claims is that the Audit Committee Directors "sign[ed] and publicly disseminat[ed] false financial statements." Opp. at 6. Plaintiffs first argue that *Aronson* is the applicable standard in "false statement" cases and therefore they can satisfy their demand futility pleading requirements by raising a reasonable doubt that the filing of the financial statements was a valid exercise of business judgment. *Id*. at 7. Plaintiffs are wrong. *Rales* is the applicable test as discussed in the Motion. Mot. at 7–9. Even the Delaware cases that Plaintiffs endorse make clear that *Rales* rather than *Aronson* applies.

Next, Plaintiffs argue that they also prevail under *Rales*. Opp. at 12. Plaintiffs concede that to sustain their claims under *Rales*, the Consolidated Complaint must adequately allege that the Audit Committee Directors "had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation." Opp. at 17 (citing Mot. at 18). Plaintiffs point to three items that purportedly provided "clear notice" to the Audit Committee Directors: (1) the *Bader* lawsuit relating to Lehman's disclosures about its options valuations, which was filed in August 2006; (2) two SEC releases from July and August 2006 relating to disclosures about options grants; and (3) the "level of controversy that the

2

[options backdating] practice was generating in the corporate world" in the 2006 time period. *Id.* at 17–18. However, none of these items provides notice of any "accounting irregularity" at Lehman.

> **A.** ***Rales* Is the Appropriate Standard, But Plaintiffs' "False Statement" Claims Also Fail to Establish Demand Futility Under *Aronson***

Plaintiffs argue that *Aronson* applies to their "false statement" claims because the filing of allegedly false financial statements was "an affirmative decision that was made by at least half of the directors on the current Board." Opp. at 7. Plaintiffs are wrong. Courts have consistently applied *Rales* in cases relating to options backdating where a majority of the board did not approve the option grants. *See, e.g.*, *Desimone ex rel. Sycamore Networks, Inc. v. Barrows*, 924 A.2d 908, 913–14 (Del. Ch. 2007); *see also* Mot. at 8.

Plaintiffs seem to argue that the determination of whether *Rales* or *Aronson* applies turns on the number of directors to whom the allegation is directed. Not so. *Rales* applies where a plaintiff accuses a board of an omission rather than an affirmative act. *See Rales v. Blasband*, 634 A.2d 927, 933 (Del. 1993). Plaintiffs' Opposition argues that the Audit Committee Directors and the Board breached their duties because "neither the Board's Audit Committee nor the Board as a whole acted to review the readily available information on Lehman's backdating practices." Opp. at 7. This is an allegation of an omission—a failure to properly investigate or oversee—and is therefore governed by *Rales*. *See, e.g.*, *Guttman ex rel. Nvidia Corp. v. Huang*, 823 A.2d 492, 494, 499–500 (Del. Ch. 2003) (applying *Rales* to claims that directors and officers "engaged in a variety of misconduct related to [the company's] failure to accurately account for and disclose its financial results"); *Rattner v. Bidzos*, No. 19700, 2003 WL 22284323, at *2, *8 (Del. Ch. Sept. 30, 2003) (applying *Rales* to claims concerning "a failure to oversee properly the accounting practices" leading to "a series of allegedly misleading

3

[financial] statements"). The Delaware cases that Plaintiffs cite contradict their own position. The cases either apply *Rales* as the general rule in options backdating cases or apply *Aronson* for reasons unrelated to the fact that the plaintiff also alleged that financial statements were misstated. *See Conrad ex rel. Staples, Inc. v. Blank*, 940 A.2d 28, 37 (Del. Ch. 2007) (applying *Rales*); *Ryan ex rel. Maxim Integrated Prods., Inc. v. Gifford*, 918 A.2d 341, 353 (Del. Ch. 2007) (applying *Aronson* only due to the "unique fact" that the compensation committee comprised half of the board).

Moreover, even if *Aronson* applied, the Consolidated Complaint still fails to adequately plead demand futility with regard to Plaintiffs' financial statement claims. To show that the Audit Committee Directors did not exercise proper business judgment, under *Caremark*, Plaintiffs must show either that they utterly failed to implement internal controls or consciously failed to monitor these controls once established—"[i]n either case, imposition of liability requires a showing that the directors *knew* that they were not discharging their fiduciary obligations." *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (emphasis added); *see also In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 971 (Del. Ch. 1996); Mot. at 14–15. Put another way, Plaintiffs have to allege that the Audit Committee Directors knew or willfully ignored information that would have shown them that Lehman's financial disclosures were inaccurate. For the reasons discussed below, the Consolidated Complaint fails to make such allegations.

### B. The Consolidated Complaint Does Not Allege that the Audit Committee Directors Had "Clear Notice" of Accounting Irregularities

First, all of the facts to which Plaintiffs point to support their proposition that the Audit Committee Directors had notice of accounting irregularities arose in the latter part of 2006. Opp. at 17–18. As a result, the only financial statements for which Plaintiffs can claim that the

4

Audit Committee Directors had "clear notice" were false are the Year-End 2006 Form 10-K (filed with the SEC on February 13, 2007) and 2007 Proxy Statement (filed with the SEC on February 26, 2007). Opp. at 16–17. While Plaintiffs allege that these documents are false in a conclusory manner, they provide no specific allegations to support such a claim. The Year-End 2006 Form 10-K was approved by Lehman's auditors and includes a "clean" audit opinion on Lehman's internal controls. *See* Declaration of Michael J. Chepiga, dated May 1, 2008 ("Chepiga Decl."), Ex. 1 at 73.[2] The information in the 2007 Proxy is fully consistent with that in the Year-End 2006 Form 10-K. *See* Chepiga Decl., Ex. 2. This is important because all of the information that Plaintiffs point to as providing "clear notice" is public and was public at the time that the Year-End 2006 Form 10-K and the 2007 Proxy Statement were filed. Lehman's auditors, therefore, were aware of all of this information. To accept Plaintiffs' allegations requires that the Court infer that Lehman's auditors ignored the *Bader* suit and the publicity surrounding backdating and did nothing to satisfy themselves as to Lehman's accounting or controls relating to options. Plaintiffs have not made any such allegation and, tellingly, have not brought claims against the auditors. Accordingly, Plaintiffs have not even met the threshold requirement of pleading facts that would support a finding that there has been an "accounting irregularity." *See, e.g.*, *White v. Panic*, 793 A.2d 356, 363 (Del. Ch. 2000) ("In considering a motion to dismiss . . . for failure to make a presuit demand, . . . [the] court need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences.") (citations omitted). This alone is enough to find that Plaintiffs have not pled that the Audit Committee Directors are interested. But even if Plaintiffs had pled

---

[2]   In evaluating a motion to dismiss, the Court may take judicial notice of Lehman's SEC filings. *See, e.g.*, *Roth ex rel. Metal Mgmt., Inc. v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Stoll ex rel. Glenayre Techs., Inc. v. Ardizzone*, No. 07-CV-608, 2007 WL 2982250, at *3 (S.D.N.Y. Oct. 9, 2007).

5

that there were "accounting irregularities," they have not pled that the Audit Committee Directors had "clear notice."

### 1. SEC releases and a "level of controversy . . . in the corporate world" do not provide sufficient notice of accounting irregularities at Lehman

Plaintiffs allege that the Audit Committee Directors received "clear notice" of accounting irregularities from the SEC's publication of information concerning backdating and the "level of controversy that the practice was generating in the corporate world and the investment community" in late 2006. Opp. at 9–11, 16–18. Plaintiffs' argument is that a board must have breached its fiduciary duties if it did not engage in a massive, public investigation of its options granting practices because of the SEC's general public statements and an amorphous "level of controversy . . . in the corporate world," none of which made any specific mention of Lehman. Such conclusory allegations are insufficient to establish that Lehman's Audit Committee Directors are not disinterested. *See, e.g.*, *David B. Shaev Profit Sharing Account v. Armstrong*, No. 1449, 2006 WL 391931, at *5 (Del. Ch. Feb. 13, 2006) (dismissing for failure to make a demand where plaintiff's *Caremark* claim was premised on no specific facts but on unsupported allegation that "only a board violating its fiduciary duties could possibly have remained ignorant of" what plaintiff described as the "elephants in the room," specifically Citigroup's allegedly corrupt relationships with Enron and WorldCom).

### 2. The August 2006 action relating to Lehman's disclosures about its options valuations is also not sufficient notice of accounting irregularities

Plaintiffs also allege that the filing of the *Bader* action in August 2006 should have put Lehman's directors on notice of the wrongdoing alleged here. Opp. at 10–11, 17–18. First, Plaintiffs do not explain how the mere filing of that action is sufficient to put Lehman's Audit Committee Directors in fear of a substantial likelihood of liability resulting from alleged

6

misconduct in which they had no involvement that occurred prior to 2003. In fact, Plaintiffs disingenuously argue that, while the *Bader* action should have put Lehman's directors on notice of alleged options backdating, the release in the *Bader* settlement does not extinguish their claims or remove any risk of liability to Lehman's directors. Opp. at 21. To the extent that the *Bader* action is sufficiently related to the claims presented here to serve as a "red flag" to Lehman's directors, then *Bader*'s allegations and the release of those claims are sufficiently related to Plaintiffs' claims to preclude them. To the extent that Plaintiffs argue that their claims are sufficiently distinct from those raised in *Bader* that they were not released, then there is no reason why the *Bader* action should have put Lehman's directors on notice of the alleged problems that are the basis of Plaintiffs' claims. Simply put, Plaintiffs cannot have it both ways.

Further, as Lehman shareholders of record as of February 12, 2007, Plaintiffs received notice of the *Bader* settlement prior to initiating this action. Gamble Decl., Ex. D; Consol. Compl. ¶¶ 12–14. Tellingly, Plaintiffs did not see fit to include any allegations that the *Bader* action should have put Lehman's directors on notice of the wrongdoing alleged here in the Consolidated Complaint or in any of the three complaints that led to this consolidated action.

**III.    The Delaware Cases Cited by Plaintiffs Do Not Address Whether "False Statement" Claims in a Backdating Case Render an Audit Committee Interested**

The Delaware caselaw cited by Plaintiffs does not support their argument that the Audit Committee Directors are incapable of considering a demand. The court in *Ryan* did not reach the question of whether the audit committee members were disinterested or independent, finding demand excused because three of the company's six directors were members of the compensation committee. 918 A.2d at 356. Similarly, in *Conrad*, the court found that demand was excused where five of ten directors either received options or served on the company's compensation committee, without addressing whether the audit committee members were

7

interested. 940 A.2d at 40. Plaintiffs here do not dispute Lehman's argument that none of the outside directors (including the four Audit Committee Directors) received backdated options, and only two of Lehman's nine outside directors served on the Compensation Committee. Mot. at 10–12; Opp. at 12. Finally, in *In re Tyson Foods, Inc. Consolidated Shareholder Litigation*, the court made no mention of the company's audit committee in analyzing the demand futility issue. 919 A.2d 563, 581–84 (Del. Ch. 2007). By contrast, in *Desimone*, the one Delaware Chancery Court backdating decision to reach the question, the court found the audit committee directors capable of disinterestedly considering a demand. 924 A.2d at 940 ("Here, Desimone has not alleged any facts to suggest that Sycamore's internal controls were deficient, much less that the board, the Audit Committee, or Sycamore's auditors had any reason to suspect that they were or that backdating was occurring."). The same is true here.

**IV.   The Compensation Committee Directors Are Disinterested**

Because the Audit Committee Directors are disinterested, seven of the ten current Board members (the three concededly disinterested directors, Messrs. Hernandez and Kaufman and Ms. Johnson Evans, and the four Audit Committee Directors, Messrs. Ainslie, Berlind, Cruikshank and Gent) are capable of considering a demand. As a result, the Compensation Committee Directors are irrelevant for demand futility purposes. Nevertheless, the Compensation Committee Directors are also disinterested. The cases Plaintiffs cite to support their argument to the contrary are not on point. While *Ryan* and *Conrad* both held that the compensation committee members who approved backdated stock option grants in those cases are not disinterested, Opp. at 14–15, those cases are inapposite. In *Conrad*, the court noted that (1) "plaintiff has provided the court with a statistical analysis to bolster the inference that grants were deliberately backdated" and (2) "[p]erhaps most importantly, [the company's] public

8

statements [disclosing options-backdating problems] support the plaintiff's argument." 940 A.2d at 35, 39 ("[Plaintiff] calculated the performance of the allegedly backdated option grants in relation to the return of the common stock over the same period. According to the plaintiff, the dramatically higher performance of these options in comparison to the common stock suggests that the option grant dates, that Staples admits to incorrectly dating, were deliberately backdated to boost the value of the options."). In *Ryan*, the plaintiff supported his allegations with a detailed analysis performed by Merrill Lynch. 918 A.2d at 346–47, 355–56 ("The Merrill Lynch analysis measured the extent to which stock price performance subsequent to options pricing events diverged from stock price performance over a longer period of time to measure the aggressiveness of the timing of option grants and found that Maxim's average annualized return of 243% on option grants to management was almost ten times higher than the 29% annualized market returns in the same period.").

By contrast, Plaintiffs here provide only a single-page chart purporting to show an "odds ratio" for each grant date. Consol. Compl., Ex. B. This one page document, which provides no basis for Plaintiffs' claim that the odds against the Lehman grant dates being chosen at random are "18 billion to one," Opp. at 14, is far from the type of analysis the *Ryan* and *Conrad* courts relied on. More importantly, Lehman has made no public statements admitting to options backdating. As the Delaware Chancery Court pointed out in *Desimone*, vague and conclusory statements that compensation committee members engaged in alleged options backdating, without more, are insufficient to create reasonable doubt as to their interestedness. 924 A.2d at 938; Mot. at 19–20. Similarly here, Plaintiffs' baseless allegations, bolstered only by a cryptic and self-serving chart, are not adequately particularized to establish reasonable doubt as to the disinterestedness of Messrs. Akers or Macomber.

9

## V. Plaintiffs Lack Standing to Pursue Claims Relating to Three of the Nine Allegedly Backdated Grants

Plaintiffs concede that they do not have standing to pursue claims related to the granting of stock options prior to October 19, 1999. Opp. at 34. This concession therefore eliminates their claims concerning three of the nine grants alleged to have been backdated. *See* Mot. 22–23.

## CONCLUSION

In sum, neither Plaintiffs' Consolidated Complaint nor their Opposition casts doubt on the ability of a majority of Lehman's directors to disinterestedly or independently consider a demand. Therefore, Lehman respectfully requests that the Court enter an order dismissing this action with prejudice and granting any other relief the Court deems appropriate.

Dated: New York, New York  
       May 1, 2008

SIMPSON THACHER & BARTLETT LLP

By: /s/ Michael J. Chepiga

Michael J. Chepiga  
James G. Gamble  
Eric M. Albert  
Amanda G. Motsinger

425 Lexington Avenue  
New York, New York 10017-3954  
Telephone: (212) 455-2000  
Facsimile: (212) 455-2502  
E-mail: mchepiga@stblaw.com

*Attorneys for Nominal Defendant Lehman Brothers Holdings, Inc.*

10