UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE LEHMAN BROTHERS HOLDINGS, INC.
DERIVATIVE LITIGATION

ECF Case
Case No. 07-cv-2990 (DAB)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
INDIVIDUAL DEFENDANTS' MOTION TO DISMISS THE VERIFIED
CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**

KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile:  (212) 808-7897

*Attorneys for Individual Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 2

I.      PLAINTIFFS CONCEDE THAT THEY LACK STANDING TO ASSERT
        CLAIMS BASED ON PRE-OCTOBER 19, 1999 TRANSACTIONS ............................ 2

II.     PLAINTIFFS' OPPOSITION CONFIRMS THEY CANNOT
        MEET THE REQUIREMENTS OF RULE 9(b) ............................................................ 3

        A.      Rule 9(b) Applies To All Of Plaintiffs' Claims ...................................................... 3

        B.      Plaintiffs Have Failed To Satisfy Rule 9(b) ........................................................... 5

III.    ABSENT FRAUD, THE STATUTE OF LIMITATIONS
        WAS NOT TOLLED AND PLAINTIFFS' CLAIMS ARE
        STALE ............................................................................................................................ 8

IV.     ADDITIONAL REASONS PLAINTIFFS' CLAIMS
        SHOULD BE DISMISSED ............................................................................................. 8

CONCLUSION ......................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

## CASES

*Desimone v. Barrows*, 924 A.2d 908 (Del. Ch. 2007) .................................................................5, 6

*Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759 (S.D.N.Y. 2006) ..........................................................7

*In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996) ...........................................8

*In re Ditech Networks, Inc. Deriv. Litig.*,
    No. C 06-5157 JF, 2007 WL 2070300 (N.D. Cal. July 16, 2007) ............................................5

*In re In-Store Adver. Sec. Litig.*, 878 F. Supp 645 (S.D.N.Y. 1995) .........................................3, 4

*In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) ...............................3

*In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309 (8th Cir. 1997) ...........................................3, 4

*In re Openwave Sys. Sec. Litig.*, No. 07 Civ. 1309 (DLC),
    2007 WL 3224584 (S.D.N.Y. Oct. 31, 2007) ...........................................................................5

*In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27 (Del. Supr. 2006) ...............................................9

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ........................................................3

*Nelson v. Paramount Commc'ns, Inc.*, 872 F. Supp. 1242 (S.D.N.Y. 1994) .............................3, 4

*O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674 (2d Cir. 1991) .......................................3

*Rahl v. Bande*, 328 B.R. 387 (S.D.N.Y. 2005) ...............................................................................4

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ......................................................................1, 4

*Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007) .....................................................................8, 9, 10

*Stone v. Ritter*, 911 A.2d 362 (Del. 2006) .....................................................................................9

## STATUTES

8 DEL. C. § 102(b)(7) ........................................................................................................................9

## RULES

FED. R. CIV. P. 9(b) ............................................................................................................... *passim*

## PRELIMINARY STATEMENT

Plaintiffs argue that they do not have to comply with Rule 9(b) with respect to their claims as to which proof of fraud is not an essential element. Plaintiffs rely on several district court cases, but fail to acknowledge that the Second Circuit in *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), has rejected their argument, along with the authorities they cite. The *Rombach* court expressly held that Rule 9(b) does apply to claims that "sound in fraud," not just to claims that are labeled as fraud claims. Plaintiffs' claims—all of which are based on alleged "unlawful backdating of the stock options" and "signing and publicly disseminating false financial statements" (Pls.' Opp. at 6)—sound in fraud. As such, the law in this Circuit requires Plaintiffs' entire Complaint to satisfy the heightened pleading requirements of Rule 9(b).

Beyond misstating the applicable law, Plaintiffs' opposition largely ignores the Individual Defendants' arguments. They offer no excuse for their failure to even attempt to put the Individual Defendants on notice, or clarify for the Court, what *each* Individual Defendant is alleged to have done in connection with the alleged backdating and concealment. Plaintiffs also fail to justify their reliance on "group pleading," which lumps all the Individual Defendants together, or their use of "and/or" allegations. As a consequence of these deficiencies, it is impossible to differentiate which claims and allegations are being asserted against which Individual Defendants. The generalized, conclusory allegations of the Complaint are simply insufficient to satisfy Rule 9(b) because they fail to set forth how each Individual Defendant participated in, or had actual or even constructive knowledge of, the alleged fraud.

Moreover, Plaintiffs are not entitled to any toll of the statute of limitations. This issue highlights the prejudice resulting from Plaintiffs' pleading failures. There can be no tolling as to any specific defendant absent evidence of fraudulent concealment on the part of such

defendant.  Yet no such evidence is pled.  Plaintiffs should not be able to nonetheless extend the

statute of limitations "across the board" by generalized allegations.

## ARGUMENT

### I.    PLAINTIFFS CONCEDE THAT THEY LACK STANDING TO ASSERT CLAIMS BASED ON PRE-OCTOBER 19, 1999 TRANSACTIONS_____

The Individual Defendants pointed out Plaintiffs' lack of standing in their Moving

Memorandum.  While Plaintiffs make various admissions in this regard, they refuse to accept the

full significance of their admissions.  For example, Plaintiffs concede that none of them owned

Lehman shares until, at the earliest, October 19, 1999.[1]  (Pls.' Opp. at 33-34.)  The law is clear

that they cannot seek recovery based on earlier options grants.  But, in an effort to avoid the

significance of their concessions, they claim they can still pursue a recovery based on the

issuance of false financial statements reflecting any effect of the pre-October 19, 1999 grants to

the extent these financial statements were filed after they became stockholders.  (Pls.' Opp. at

34.)  Even putting aside this disputed and unsupported legal position and Plaintiffs' failure to

identify any such financial statements, Plaintiffs' position does little to relieve their standing

problem.

Cutting through Plaintiffs' verbiage, at best, Plaintiffs Garber and Saginaw only

have standing to assert claims based on financial statements issued after their January 2007

purchases of Lehman shares.  All nine of the challenged option grants occurred long before their

purchases.  Plaintiff IBEW, which purchased Lehman shares on October 19, 1999, only has

standing to assert claims based on post-October 19, 1999 options grants and financial statements

issued after October 19, 1999.

---

[1]    Individual Defendant Russo is alleged to have been granted options only on January 8, 1997 and December 11, 1997 (Compl. ¶¶ 75, 76)—before any of the Plaintiffs held Lehman shares—and the Complaint contains no other particularized allegations against him.  Accordingly, all claims against him should be dismissed.

## II.    PLAINTIFFS' OPPOSITION CONFIRMS THEY CANNOT MEET THE REQUIREMENTS OF RULE 9(b)

Rule 9(b) requires that, to provide each defendant with fair notice of fraud-based claims being asserted against him, a complaint must provide the "who," "what," "where," "when" and "how" detailing alleged fraudulent wrongdoing. It cannot be based on general and conclusory allegations. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). The Individual Defendants argued in their moving brief that Plaintiffs failed to meet Rule 9(b)'s heightened pleading requirements by failing to plead with particularity any facts setting forth any of the Individual Defendants' role in, or knowledge of, the alleged backdating of options or filing of false financial statements. Plaintiffs responded with two arguments. First, even though all of their claims are based on alleged fraudulent backdating of stock options and issuance of false financial statements, Plaintiffs assert that they need not satisfy Rule 9(b) where proof of fraud is not an element of the specific claim in which the allegations appear. (Pls.' Opp. at 22-24.) Second, conceding at least that they do have to satisfy Rule 9(b) in connection with their traditional fraud claims, i.e., misrepresentation and fraudulent concealment, Plaintiffs argue that such claims have been adequately pled. (Pls.' Opp. at 29-30.) Plaintiffs, however, are wrong on both counts.

### A.    Rule 9(b) Applies To All Of Plaintiffs' Claims

Plaintiffs rely on three Southern District of New York cases and one Eighth Circuit case[2]—all of which were decided prior to *Rombach*—in support of their position that

---

[2]    *See* Pls.' Opp. at 23 (citing *In re In-Store Adver. Sec. Litig.*, 878 F. Supp 645, 650 (S.D.N.Y. 1995); *Nelson v. Paramount Commc'ns, Inc.*, 872 F. Supp. 1242, 1246 (S.D.N.Y. 1994); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 341-42 (S.D.N.Y. 2003); and *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 315 (8th Cir. 1997)).

they need not comply with Rule 9(b) and challenge the Individual Defendants for purportedly

relying "on a single, unreported case from the Northern District of California." (Pls.' Opp. at 22-

23.) In doing so, they turn a blind eye to controlling Second Circuit precedent, *Rombach*, 355

F.3d 164, and a more recent Southern District of New York case, *Rahl v. Bande*, 328 B.R. 387

(S.D.N.Y. 2005), also relied on by the Individual Defendants. (*See* Moving Mem. at 7-8.)

       In *Rombach*, the Second Circuit explicitly rejected Plaintiffs' instant arguments.

While acknowledging that district courts in this Circuit had expressed different views, the court

rejected the holdings in *In re In-Store Adver. Sec. Litig.* and *Nelson v. Paramount Commc'ns,*

*Inc.* and the Eighth Circuit's holding in *In re NationsMart Corp. Sec. Litig.* and held:

> the heightened pleading standard of Rule 9(b) applies to . . . claims
> insofar as the claims are premised on allegations of fraud. By its
> terms, Rule 9(b) applies to "all averments of fraud." This wording
> is cast in terms of the conduct alleged, and is not limited to
> allegations styled or denominated as fraud or expressed in terms of
> the constituent elements of a fraud cause of action. Fraud is not an
> element or a requisite to a claim under Section 11 or Section
> 12(a)(2) [of the Securities Act]; at the same time, claims under
> those sections may be—and often are—predicated on fraud. . . .
> So while a plaintiff need allege no more than negligence to
> proceed [with these claims], claims that do rely upon averments of
> fraud are subject to the test of Rule 9(b).

*Rombach*, 355 F.3d at 170-171 & n.6 (internal citation omitted). While the plaintiffs in

*Rombach* argued that their Section 11 claim, which does not require proof of fraud, did not sound

in fraud, the court disagreed and applied Rule 9(b), holding that:

> the wording and imputations of the complaint are classically
> associated with fraud: that the Registration statement was
> "inaccurate *and* misleading;" that it contained "*untrue* statements
> of material facts;" and that "materially *false* and *misleading* written
> statements were issued.

*Id.* at 172 (emphasis in original). *See also Rahl,* 328 B.R. at 412 ("It is undisputed that claims

based on allegations of fraud trigger the heightened pleading standard of Rule 9(b)."); *In re*

*Ditech Networks, Inc. Deriv. Litig.*, No. C 06-5157 JF, 2007 WL 2070300, at *10 (N.D. Cal. July 16, 2007) (dismissing plaintiff's common law fiduciary duty claim for failure to meet Rule 9(b)'s pleading requirements after concluding that the claim, based on similar backdating allegations, sounded in fraud).

Notwithstanding the labels Plaintiffs have attached to their multiple claims, Plaintiffs cannot dispute that fraud is at the heart of their claims. Indeed, when it suits their purpose, Plaintiffs themselves have admitted as much by arguing that the statute of limitations should be tolled due to the pervasive fraudulent conduct of the Individual Defendants.

**B.    Plaintiffs Have Failed To Satisfy Rule 9(b)**

Plaintiffs' Complaint makes broad and bald assertions that some or all Individual Defendants backdated options, and either knowingly concealed the practice in public disclosures, or recklessly failed to discover, and publicly expose, the backdating. In their opposition, Plaintiffs mostly reiterate the unsubstantiated conclusions set forth in the Complaint, ignoring the Individual Defendants' arguments as to why their pleading is deficient.

Indeed, Plaintiffs continue to impermissibly lump all the Individual Defendants together and rely only on the supposed significance of their executive titles, the fact of committee memberships and/or their receipt of options. As the case law makes clear, this is insufficient to satisfy Rule 9(b). (*See generally* Moving Mem. at 10-17 (citing, *e.g.*, *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 251-52 (S.D.N.Y. 2007) (dismissing claims against executives and board members who were not charged with administering stock options); *Desimone v. Barrows*, 924 A.2d 908, 942 (Del. Ch. 2007) (rejecting the "contention that [certain directors] knew that stock options were being backdated simply because they served on [the company's] Audit Committee"); *In re Ditech Networks, Inc. Deriv. Litig.*, 2007 WL 2070300, at *10 (dismissing claims where there are no facts pled that the executive was aware the options

5

they received were backdated)).)  Plaintiffs also fail to excuse their impermissible "and/or"
pleading style, which does not put the Individual Defendants on notice as to the role each is
claimed to have played in the fraud, and which at least one Delaware court has called "spineless"
pleading and a "telling concession that [the plaintiff] cannot cross even the minimal Rule 11
threshold."  *Desimone*, 924 A.2d at 939.

Plaintiffs also ignore almost all of the specific deficiencies raised by the
Individual Defendants.  For example, Plaintiffs do not address how their claims remain viable
without reciting any factual allegations substantiating the alleged involvement or knowledge of
individual members of the Audit, Governance or Executive Committees in granting backdated
stock options.  Nor do Plaintiffs offer any specific allegations reflecting the Compensation
Committee's actual participation in backdating any stock options, altering any paperwork or
even discussing these practices.  Plaintiffs further ignore the undisputed fact that Hernandez,
Evans and Gent were not even on the Lehman Board at any time the alleged backdating
occurred.  Moreover, having conceded that Hernandez, Evans and Kaufman are disinterested and
independent in their demand futility argument (*see* Pls.' Opp. at 4, 12-13), Plaintiffs must also
concede that they cannot pursue the claims asserted against these defendants and that the claims
against them should therefore be dismissed.  Plaintiffs also ignore the Individual Defendants'
argument that many of the defendants (*i.e.,* Ainsle, Akers, Berlind, Cruikshank, Evans, Gent,
Kaufman, Macomber and Merrill) are not alleged to have received option grants.  Finally, they
ignore that the Individual Defendants have pointed to the total absence of allegations against
Beyman and O'Meara.

Similarly, while Plaintiffs continue to pursue claims based on allegedly backdated
RSU's, they merely restate the conclusions in their Complaint that RSU's were backdated

without addressing the Individual Defendants' argument that they have failed to identify any particular Individual Defendant who granted or received such RSU's or even when such RSU's were granted.

Plaintiffs argue that the Individual Defendants, at a minimum, are liable for fraudulent concealment for recklessly failing to discover the backdating.  To support this, Plaintiffs contend that the Individual Defendants must have been "on notice" of backdating because the occurrence of backdating at other corporations was discussed in published articles, the SEC issued rules requiring further disclosures related to option grants, and the *Bader* lawsuit against Lehman involved informational disclosures about option valuations in proxy statements. These "atmospheric notice" allegations are unavailing.  Nowhere do Plaintiffs allege that the Individual Defendants had information that backdating occurred *at Lehman*.  *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 775 (S.D.N.Y. 2006) (holding plaintiff did not satisfy pleading obligations "without specific allegations of reasonably available facts that should have put [defendant] on notice that the reported financial results were false").  Plaintiffs do not allege that any of the published articles or SEC rules implicated Lehman and Plaintiffs themselves admit that "[t]here is no mention of backdating of stock options, nor of false financial reporting in *Bader*."  (Pls.' Opp. at 30.)

Plaintiffs' inability to cite to any relevant facts pertinent to Lehman highlight that their allegations are based on nothing more than hindsight—a single statistical analysis performed years after the alleged backdating occurred.  Because Plaintiffs believe they can prove the occurrence of backdating through some undisclosed statistical analysis, they believe that the Individual Defendants should be liable because they should have discovered and disclosed what Plaintiffs' *post hoc* analysis reflects.  Without accompanying historical facts, *post hoc* analyses

are not, however, particular enough to satisfy Rule 9(b).[3]  Accordingly, Plaintiffs' claims should be dismissed.

## III.    ABSENT FRAUD, THE STATUTE OF LIMITATIONS WAS NOT TOLLED AND PLAINTIFFS' CLAIMS ARE STALE

Plaintiffs rely on *Ryan v. Gifford,* 918 A.2d 341 (Del. Ch. 2007), to support their argument that the statute of limitations should be tolled.  In that case, however, the court made clear that the statute of limitations may be tolled only "where plaintiff alleges that defendants intentionally falsified public disclosures."  *Id.* at 360.  Yet, nowhere have Plaintiffs identified any facts demonstrating that any Individual Defendant *intentionally* falsified disclosures.  Put simply, absent well pled fraud, Plaintiffs are not entitled to toll the statute of limitations and their Complaint, based on transactions from 1997 through 2002 and therefore filed long after the expiration of the applicable three-year statute of limitations, should be dismissed as time-barred.

## IV.    ADDITIONAL REASONS PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

Plaintiffs ignore most of the Individual Defendants' arguments as to why their fiduciary duty claims should be dismissed.  For example, Plaintiffs do not address the Individual Defendants' argument that their breach of fiduciary duty claim based on the Individual Defendants' alleged failure to exercise oversight or implement appropriate internal controls should be dismissed pursuant to *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch.

---

[3]    As the Company has pointed out in its submission, while in *Ryan v. Gifford* the court allowed Plaintiffs to rely on empirical data to support their claims of backdating and fraudulent disclosures, in that case, the plaintiffs relied on an analysis conducted by Merrill Lynch which "measured the aggressiveness of timing of option grants by examining the extent to which stock price performance subsequent to options pricing events diverges from stock price performance over a longer period of time. 'Specifically, it looked at annualized stock price returns for the twenty day period subsequent to options pricing in comparison to stock price returns for the calendar year in which the options were granted.'" *Ryan v. Gifford*, 918 A.2d 341, 346-47 (Del. Ch. 2007).  Here, Plaintiffs rely only on a chart that purports to show a "Total Odds Ratio" of "18,956,063,070" for nine of Lehman's stock option grant dates with no explanation as to how Plaintiffs even arrived at that number.  (*See* Compl. Ex. B.)

1996), because Plaintiffs have failed to allege particularized facts demonstrating that the defendants "knew that they were not discharging their fiduciary obligations." (Moving Mem. at 20 (citing *Stone v. Ritter*, 911 A.2d 362, 270 (Del. 2006)).) Nor do Plaintiffs address Section 102(b)(7) of Delaware's General Corporation Law, which permits a corporation's charter, as Lehman's does, to insulate directors from personal liability for non-intentional breaches of fiduciary duty. Finally, Plaintiffs ignore the Individual Defendants' argument that Plaintiffs fail to allege facts sufficient to show that the non-director defendants acted with the reckless indifference or deliberate disregard required to establish a breach of the duty of care under Delaware law. (*See* Moving Mem. § II.D.)

Further, while Plaintiffs concede that their claim for gross mismanagement is actually a claim for breach of fiduciary duty (*see* Pls.' Opp. at 26 (citing *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 64-66 (Del. Supr. 2006))), they wholly fail to respond to the Individual Defendants' argument that their claim for misappropriation and waste of corporate assets is merely a recasting of these same claims.

Plaintiffs' argument in support of their breach of fiduciary duty claim consists almost entirely of quotations from *Ryan v. Gifford* in which that court found that the "well-pleaded allegations" of "deliberate violation of a shareholder approved stock option plan and false disclosures, obviously intended to mislead shareholders" that apparently appeared in the *Ryan* pleading were sufficient to state a claim for breach of the duty of loyalty. (Pls.' Opp. at 25 (quoting *Ryan,* 918 A.2d at 357-58).) Simply citing to the decision in *Ryan,* which dealt with a different complaint, cannot cure the defects in the Complaint before this Court. As the Individual Defendants have repeatedly noted, Plaintiffs fail to point to a single allegation that could support a finding that any of the Individual Defendants deliberately backdated options or

made false disclosures.  (*See* § II.B., *supra*; Moving Mem. §§ II.B. and II.D.1.)  Thus, Plaintiffs' Complaint does not contain the "well-pleaded allegations" that were found to be present in the *Ryan v. Gifford*, and Plaintiffs' fiduciary duty claim should be dismissed.[4]

Plaintiffs' citation to the definition of an *ultra vires* act (Pls.' Opp. at 28) does not change the fact that Plaintiffs' claim is nothing more than a request that this Court invalidate the alleged backdated stock options and RSU's and, thus, is not an independent cause of action but rather a form of a remedy.  (*See* Moving Mem. § II.F.)

As for their unjust enrichment claim, Plaintiffs again rely solely on *Ryan v. Gifford*.  (*See* Pls.' Opp. at 27-28.)  Though the *Ryan* court found the complaint there had stated a claim for unjust enrichment, Plaintiffs cannot avoid the fact that where, as here, a complaint fails to allege facts sufficient to sustain any traditional tort claims, parallel equitable claims such as unjust enrichment must also be dismissed.  (*See* Moving Mem. § II.F.)

## <u>CONCLUSION</u>

For the foregoing reasons, the Individual Defendants respectfully request that this Court grant their motion to dismiss the Complaint with prejudice.

---

[4]     At a minimum, Plaintiffs argue that the current Board was on notice of the alleged backdating prior to "the issuance of Lehman's recent Form 10-K and proxy statement" (i.e., the Form 10-K for FY November 30, 2006, (filed on February 13, 2007) and its proxy statement (filed February 26, 2007) (*see* Pls.' Opp. at 9)).  (*See* Pls.' Opp. at 25.) As set forth in Section II.B. *supra*, however, Plaintiffs' allegations related to press reports, SEC rules, and the *Bader* case are insufficient to have put the current Board on notice that any backdating had occurred at Lehman.  In fact, Plaintiffs have no evidence that backdating actually occurred but rather have only theorized as much based on *post hoc* statistical analysis.

DATED:   New York, New York          Respectfully submitted,
         May 1, 2008
                                     KELLEY DRYE & WARREN LLP


                                     By:   ___s/John M. Callagy_____
                                           John M. Callagy
                                           Don D. Buchwald
                                           Robert W. Schumacher
                                           Christine S. Poscablo
                                           101 Park Avenue
                                           New York, New York 10178
                                           Telephone:  (212) 808-7800
                                           Facsimile:  (212) 808-7897

                                           *Attorneys for Individual Defendants*